## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **SCOTTSDALE CAPITAL ADVISORS CORPORATION**<br>7170 E. McDonald Drive, Ste. 6<br>Scottsdale, AZ 85253<br><br>**JOHN J. HURRY**<br>1466 Pittman Terrace<br>Glenbrook, NV 89413<br><br>**TIMOTHY B. DIBLASI**<br>14797 W. Pershing Street<br>Surprise, AZ 85379<br><br>**DARREL MICHAEL CRUZ**<br>6823 W. Fremont Road<br>Laveen, AZ 85339,<br><br>      **Plaintiffs,**<br><br>   **v.**<br><br>**FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.**<br>15201 Diamondback Drive, Ste. 250<br>Rockville, MD 20850<br>Montgomery County,<br><br>      **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **Case No.** _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Scottsdale Capital Advisors Corporation, John J. Hurry, Timothy B. DiBlasi, and Darrel Michael Cruz (collectively, "Plaintiffs") file this complaint for declaratory and injunctive relief against the Financial Industry Regulatory Authority, Inc. ("FINRA") and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action for injunctive and declaratory relief to prevent FINRA from further proceeding against them with a disciplinary action premised on claims that exceed

the organization's expressly limited authority under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     FINRA is a registered securities association and self-regulatory organization that operates as a private regulatory body for broker-dealers.  As a practical matter, any broker-dealer that desires to conduct business in the United States is required to register with FINRA.

3.     Plaintiffs are a FINRA-registered broker-dealer (Scottsdale Capital Advisors Corporation ("SCA")), its founder (Mr. Hurry), and two of its officers (Mr. DiBlasi and Mr. Cruz). FINRA has initiated a disciplinary proceeding against Plaintiffs (FINRA Case No. 2014041724601), raising allegations premised on supposed violations of Section 5 of the Securities Act of 1933 (the "Securities Act"), which generally prohibits the public distribution of unregistered securities absent an applicable exemption.  The Section 5 allegations are the predicate for charged violations of FINRA Rule 2010, which states that "[a] member, in the conduct of its business, shall observe high standards of commercial honor and just and equitable principles of trade."  FINRA R. 2010.

4.     FINRA's disciplinary authority is derived from, and governed by, Sections 15A and 19 of the Exchange Act.  Together, these provisions empower the organization to discipline its members for violations of "this chapter," "the rules and regulations thereunder," and FINRA's own rules.  Because the Exchange Act occupies a different chapter in the United States Code from the Securities Act, the plain and unambiguous text of FINRA's enabling legislation forecloses disciplinary actions premised upon alleged violations of the Securities Act or federal securities laws other than the Exchange Act.

5.      Before seeking relief from this Court, Plaintiffs raised this jurisdictional argument to the FINRA Hearing Officer assigned to their disciplinary proceeding.  On February 26, 2016, the Hearing Officer, an attorney employed by FINRA, rejected Plaintiffs' argument and adopted FINRA's view that the organization can confer upon itself jurisdiction to enforce any law it chooses, despite the explicit textual limitations in the Exchange Act, as long as the conduct it aims to regulate relates to trade.  This disregard of the statutory limits on FINRA's jurisdiction renders the disciplinary proceeding ultra vires and necessitates this Court's intervention.

6.      The FINRA disciplinary proceeding is scheduled for a two-week hearing commencing June 13, 2016, in Los Angeles, California.  Preparation for the hearing, including the completion of witness and exhibit lists and the submission of pre-hearing briefing, will begin imminently, with deadlines approaching in mid-April.

7.      Declaratory and injunctive relief is necessary to prevent Plaintiffs from being compelled to submit to an ultra vires administrative proceeding and from suffering irreparable reputational and financial harm—all without meaningful judicial review.

## PARTIES

8.      SCA is a corporation organized and existing under the laws of the State of Arizona and having its principal place of business in Arizona.  SCA is a full-service broker-dealer and registered investment-advisor firm focused on serving the over-the-counter ("OTC") securities market.

9.      Mr. Hurry is a natural person and a citizen and resident of Nevada.  Mr. Hurry is one of SCA's founders and he presently serves as one of its directors.

10.     Mr. DiBlasi is a natural person and a citizen and resident of Arizona.  He is SCA's Chief Compliance Officer.

11.     Mr. Cruz is a natural person and a citizen and resident of Arizona.  Mr. Cruz was the company's President at the time of the transactions at issue in the FINRA disciplinary proceeding.

12.     FINRA is a registered securities association and self-regulatory organization.  It is organized as a corporation existing under the laws of the state of Delaware and having its principal place of business in Rockville, Maryland (Montgomery County).

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 78aa and 28 U.S.C. §§ 1331, 1337, 1651, and 2201 because this suit arises under federal law—namely, the Exchange Act.

14.     This Court's jurisdiction is unaffected by the Exchange Act's administrative review scheme.  The Exchange Act states that the disciplinary decisions of self-regulatory organizations like FINRA are subject to review, first by the SEC and then by a federal court of appeals.  *See* 15 U.S.C. §§ 78s(d), 78y(a).  If FINRA prevails in the hearing, Plaintiffs is required to navigate FINRA's internal appellate process before seeking SEC review.  According to FINRA's rules, a party may appeal the FINRA Hearing Officer's decision to the FINRA National Adjudicatory Council ("NAC"), FINRA R. 9311, or the NAC may initiate a review of the decision sua sponte, FINRA R. 9312.  If no appeal is sought, or if the appeal is denied, then the decision becomes final unless the FINRA Board of Governors independently calls for review. FINRA R. 9349, 9351.  The FINRA Board "may affirm, modify, or reverse" the NAC's

decision; "affirm, modify, reverse, increase, or reduce any sanction . . . , or impose any other fitting sanction"; or "remand the disciplinary proceeding with instructions."  FINRA R. 9351(d). After the decision becomes final within FINRA, the defendant may petition the SEC for review. 15 U.S.C. § 78s(d)(2).  After the SEC process is concluded ,and the SEC enters a "final order," the defendant "may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit."  *Id.* § 78y(a)(1).

15.     Under the Supreme Court's reasoning in the *Thunder Basin* line of cases, an administrative review scheme will divest federal district courts of jurisdiction only if there is a clear congressional intent to address the type of claim at issue exclusively within that scheme. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207–16 (1994); *see also, e.g.*, *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 489–91 (2010).   This narrow exception to original federal jurisdiction has no application here for each of the reasons set forth in *Thunder Basin* and its progeny: first, without judicial review at this stage, meaningful judicial review of Plaintiffs' claims will be foreclosed; second, Plaintiffs' claims are wholly collateral to the review provisions of the Exchange Act; and third, Plaintiffs' claims are not within the particular expertise of FINRA or the SEC.

16.     The Exchange Act's procedures for appealing a self-regulatory organization's sanctions do not provide for meaningful judicial review of Plaintiffs' claims. Plaintiffs contend that FINRA's in-house disciplinary action against them exceeds FINRA's statutory authority under the Exchange Act, rendering the entire proceeding ultra vires. Although Plaintiffs ultimately may obtain federal appellate review of this claim after several administrative appeals,

this belated judicial intervention will not be meaningful, as submission to an unlawful proceeding constitutes the very harm that Plaintiffs seek to avoid.

17.   Plaintiffs' claims are wholly collateral to the review provisions in the Exchange Act. Plaintiffs contest FINRA's statutory authority to prosecute this specific disciplinary action, not FINRA's interpretation of a substantive securities law, its factual findings, or its choice of adjudicative forum and any resulting constitutional implications.  In contrast with a challenge to an agency's factual or legal conclusions or a dispute over the constitutionality of a statute or hearing, the threshold question of agency jurisdiction cannot await resolution in a later proceeding, as "an action taken by an agency lacking jurisdiction is a nullity," *United States v. Members of Estate of Boothby*, 16 F.3d 19, 21 n.1 (1st Cir. 1994) (citing *Manual Enters. v. Day*, 370 U.S. 478, 499 n.5 (1962)).  In short, Plaintiffs' jurisdictional challenge is not the type of claim that Congress intended to be reviewed within the administrative scheme.

18.   Plaintiffs' claims are not within the particular expertise of FINRA or the SEC. FINRA's expertise concerns the liability provisions of the Exchange Act and related issues affecting broker-dealers.  The SEC's expertise concerns the substantive portions of the federal securities laws.  Plaintiffs here assert claims regarding the proper interpretation of the scope of FINRA's enabling legislation, a subject implicating general principles of statutory interpretation and ascertainment of congressional intent.  These principles bear no relation to the substantive expertise of FINRA or the SEC; to the contrary, they are within the core competence of the federal judiciary.

19.   Moreover, Plaintiffs are not required to exhaust their administrative remedies before bringing this suit because several settled exceptions to the exhaustion doctrine apply here.

20.     First, exhaustion is not required when "the dispute is a matter of statutory construction." *McDonald v. Centra, Inc.*, 946 F.2d 1059, 1063 (4th Cir. 1991); *see also Philip Morris, Inc. v. Block*, 755 F.2d 368, 369 (4th Cir. 1985) (exhaustion is excused and "judicial intervention is authorized when an agency acts in 'brazen defiance' of its statutory authorization"); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979) (exhaustion is excused when there is a "clear and unambiguous statutory . . . violation" arising from the proceeding).   This is just such a matter.   Plaintiffs maintain that FINRA's disciplinary proceeding plainly exceeds the agency's authority under the Exchange Act.  The issues before this Court are entirely unrelated to the substantive legal issues in dispute in the disciplinary action.   Indeed, the relief Plaintiffs seek is limited to (i) declarations that FINRA's enabling legislation forecloses the prosecution of disciplinary actions premised on alleged violations of the Securities Act and (ii) an injunction against the conduct of a disciplinary action that violates this statutory restriction.

21.     Second, exhaustion is not required when "the utilization of administrative procedures would cause irreparable injury," *McDonald*, 946 F.2d at 1063, or "the available administrative remedies would be insufficient," *Mohamed v. Holder*, 995 F. Supp. 2d 520, 533 (E.D. Va. 2014).   Forcing Plaintiffs to take part in an ultra vires proceeding, and then, in the event they lose at the hearing, to appeal through multiple levels of administrative review before presenting a federal court with the fundamental question of whether the underlying proceeding lacked statutory authority, would work an irreparable injury.  *See, e.g.*, *Cont'l Can Co., U.S.A. v. Marshall*, 603 F.2d 590, 597 (7th Cir. 1979) (holding that administrative exhaustion was excused where the plaintiff company alleged that the defendant Secretary of Labor's "duplicative"

hearings were "vexatious" and "harassing," and explaining that "[i]f Continental is forced to defend the numerous prosecutions on the merits before the Commission prior to seeking a judicial determination that the prosecutions were unwarranted, the injury will have already been complete and uncorrectable"); *see also, e.g.*, *Morgan Keegan and Co., Inc. v. Louise Silverman Trust*, No. JFM-11-2533, 2012 WL 113400, at *5 (D. Md. Jan. 12, 2012) (holding that forcing a plaintiff to expend resources that cannot later be recovered to participate in an arbitration that the plaintiff never agreed to is per se irreparable injury).  Further, in the likely scenario that Plaintiffs succeed on the merits in the disciplinary hearing, FINRA's ultra vires conduct will evade review altogether, forever depriving Plaintiffs of any remedy for the harm associated with submission to an unlawful proceeding.  *See Cont'l Can Co.*, 603 F.2d at 597.

22.     Third, exhaustion is not required when "resort to administrative procedures would be futile."  *McDonald*, 946 F.2d at 1063.  The futility of administrative exhaustion is evidenced by the nature of Plaintiffs' harm and FINRA's demonstrated institutional incapacity to neutrally assess the limits of its own statutory jurisdiction.   Indeed, the FINRA-appointed personnel involved in the hearing and appellate process cannot be expected to resolve a statutory question of first impression in a way that limits FINRA's jurisdiction, especially when FINRA itself has taken the view that it has boundless authority to enforce any of the federal securities laws.

23.     Fourth, as the above paragraphs demonstrate, requiring exhaustion here would not serve the purposes of the doctrine.  Administrative exhaustion is intended to "giv[e] the agency an opportunity to develop a factual record, permit[] it to exercise its discretion or to apply its expertise, and promot[e] efficiency by barring the premature interruption of the administrative process."  *Touche Ross & Co. v. SEC*, 609 F.2d 570, 576 (2nd Cir. 1979).  As in *Touche Ross*,

where the Second Circuit excused exhaustion in a challenge to the SEC's statutory authority to institute an administrative proceeding, *id.* at 574–77, Plaintiffs here raise a question of pure statutory interpretation that requires neither the agency's expertise nor a factual record, and deciding the essential jurisdictional question now will not cause inefficiencies.

24.     Finally, courts have endorsed immediate judicial intervention when a regulator acts beyond its statutory authority.  *See, e.g.*, *Leedom v. Kyne*, 358 U.S. 184, 189–90 (1958) (recognizing original federal jurisdiction over a suit to vacate an NLRB action that clearly violated the NLRA and explaining that "[t]his Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers"); *accord Block*, 755 F.2d at 369–70; *First Jersey Sec.*, 605 F.2d at 696.  Where, as here, an agency acts contrary to the plain text of its enabling legislation, "the courts will not wait for the underlying proceedings to run their course"; "[r]ather, the[y] will intervene to preserve the status quo, prevent the infringement of substantial rights that might otherwise be sacrificed, and protect against the subversion of congressional policy." *Mayor & City Council of Balt. v. Mathews*, 562 F.2d 914, 920 (4th Cir. 1977) (en banc), *vacated on other grounds*, 571 F.2d 1273 (4th Cir. 1978) (en banc).

25.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because FINRA is subject to this Court's personal jurisdiction by virtue of its headquarters in Maryland and its substantial, continuous, and systematic contacts with this district.

## BACKGROUND

### The FINRA Proceeding

26.     Since SCA's formation in 2001, the firm has become a market leader in microcap-securities trading.

27.     In 2013, Mr. Hurry organized Cayman Securities Clearing and Trading SEZC Ltd. ("CSCT") in the Special Economic Zone of the Cayman Islands to serve as an offshore broker for foreign clients.  CSCT became a customer of SCA and, through its account there, deposited and liquidated penny stocks on behalf of CSCT's own customers.

28.     On May 15, 2015, FINRA commenced a disciplinary proceeding against Plaintiffs.  In brief, FINRA's complaint alleges that (i) certain transactions that CSCT routed through SCA on behalf of specified CSCT customers violated Section 5 of the Securities Act and (ii) Plaintiffs' supervisory processes and procedures were not reasonably designed to detect and prevent violations of Section 5.  As a result of these purported Section 5 violations, the Complaint charges Plaintiffs with violating FINRA Rule 2010, which requires members to "observe high standards of commercial honor and just and equitable principles of trade."

29.     In its complaint, FINRA requests that the Hearing Officer order one or more of the sanctions listed in FINRA Rule 8310.  Rule 8310(a) authorizes FINRA to impose a variety of penalties on its members, including censure, fines, suspension of FINRA membership or registration, expulsion from FINRA, cancellation or revocation of FINRA membership, suspension from or bars on association with FINRA members, entry of temporary or permanent cease-and-desist orders, and "any other fitting sanction."  FINRA R. 8310(a).

30.     On December 11, 2015, Plaintiffs moved for summary disposition before the FINRA Hearing Officer assigned to their disciplinary proceeding.  Plaintiffs' submission rested principally on the jurisdictional argument advanced in this Complaint.

31.     On February 26, 2016, the Hearing Officer, a FINRA-employed attorney, denied Plaintiffs' motion, holding, in effect, that FINRA can use its general ethical rule to enforce any of the federal securities laws, notwithstanding the contrary text in FINRA's enabling legislation.

### FINRA's Enabling Legislation

32.     As a registered national securities association and self-regulatory organization, FINRA's authority to sanction member firms and their associated persons is governed by Sections 15A and 19 of the Exchange Act.  With respect to the federal securities laws, Sections 15A(b), 15A(h), and 19(g) expressly limit FINRA's disciplinary authority to violations of the Exchange Act.  Congress did not grant FINRA the authority to police member firms for alleged noncompliance with the Securities Act or with federal securities laws other than the Exchange Act; it reserved that power to the SEC.

33.     Concerning registered securities associations, Section 15A(h) provides: "A determination by the association to impose a disciplinary sanction shall be supported by a statement setting forth . . . the specific provision of *this chapter*, the rules or regulations thereunder, . . . or the rules of the association which any such act or practice, or omission to act, is deemed to violate."  15 U.S.C. § 78o-3(h)(1)(B) (emphasis added).  Section 15A(b) contains an identical grant of disciplinary authority.  *See id.* § 78o-3(b)(2) (requiring a registered securities association to have sufficient capacity "to enforce compliance by its members and

persons associated with its members, with the provisions of *this chapter*, the rules and regulations thereunder, . . . and the rules of the association (emphasis added)).

34.      Concerning self-regulatory organizations, Section 19(g) obligates a qualifying body to "comply with the provisions of *this chapter*, the rules and regulations thereunder, and its own rules" and empowers it to "enforce compliance[,] in the case of a registered securities association [such as FINRA], with *such provisions* . . . by its members." *Id.* § 78s(g)(1)(B) (emphasis added).

35.      The term "this chapter" in Sections 15A(b), 15A(h), and 19(g) refers to the chapter of the United States Code where FINRA's enabling legislation appears: Chapter 2B of Title 15 of the Code—the Exchange Act.  This conclusion is confirmed by the original text of the Exchange Act and the amendments that added the language now codified in 15 U.S.C. §§ 78o-3 and 78s: all contain the phrase "this title" in place of "this chapter," referring to Title I of the Exchange Act.  *See* Securities Exchange Act of 1934, Pub. L. No. 73-291, ch. 404, tit. I, 48 Stat. 881, 881; *see also* Securities Act Amendments of 1975, Pub. L. No. 94-29, sec. 12(2), (4), § 15A(b)(2), (7), (h)(1)(B), 89 Stat. 97, 127–28, 130; *id.* sec. 16, § 19(g)(1)(B), 89 Stat. at 152.

36.      Further, Section 19(h) specifically designates the SEC as the sole regulatory agency with authority to sanction members of registered securities associations for violations of the Securities Act and other federal securities laws.  *See* 15 U.S.C. § 78s(h)(3) (authorizing "[t]he appropriate regulatory agency for . . . a registered securities association," defined in § 78c(a)(34)(E) as the SEC, to discipline "any person" for violating "any provision of the Securities Act of 1933," among other laws).  In addition to listing the Securities Act by name in Section 19(h), *id.*, the Exchange Act also includes the Securities Act among several federal

statutes falling under the defined term "securities laws," *id.* § 78c(a)(47).  Neither reference to

the Securities Act appears in any provision relating to FINRA's disciplinary authority, further

demonstrating that the SEC's jurisdiction over the Securities Act is exclusive.

37.     While FINRA contends that the Exchange Act's references to an association's

authority to enforce its own rules sweeps broadly, the provision delineating the permissible scope

of an association's rules presents a clear limiting principle: the rules cannot be "designed to . . .

regulate by virtue of any authority conferred by this chapter matters not related to *the purposes of*

*this chapter* or the administration of the association."  *Id.* § 78o-3(b)(6) (emphasis added).

**The Rule of Strict Construction Applicable to FINRA's Statutory Basis of Authority**

38.     As described above, the Exchange Act, by its plain terms, authorizes FINRA to

enforce only the Exchange Act itself, the rules and regulations issued thereunder by the SEC, and

FINRA's own rules, which themselves must be related to the purposes of the Exchange Act.

*See, e.g.*, *Nat'l Ass'n of Sec. Dealers, Inc. v. SEC*, 431 F.3d 803, 804 (D.C. Cir. 2005) (finding

that the National Association of Securities Dealers ("NASD"), which later became FINRA, has

statutory authority to adjudicate actions against members accused of violating the Exchange Act

or SEC regulations issued pursuant thereto).   As a non-governmental administrative body,

FINRA's enabling legislation must be strictly construed.  *See, e.g.*, *Walker v. Luther*, 830 F.2d

1208, 1211 (2d Cir. 1987) ("As a matter of statutory construction, statutes granting power to

administrative agencies are strictly construed as conferring only those powers granted expressly

or by necessary implication."); *see also* 3 Norman J. Singer et al., *Sutherland Statutes and*

*Statutory Construction* § 65:2 (7th ed. 2015) (explaining that this "general rule" of strict

construction is founded on the recognition that "administrative agencies are purely creatures of legislation without inherent or common-law powers").

39.     In contrast with the references to "this chapter" and "this title" in the Exchange Act provisions prescribing FINRA's authority, Section 19(h) clearly and unequivocally identifies the SEC as the entity responsible for disciplining broker-dealers and associated persons for violations of the Securities Act.  *See* 15 U.S.C. §§ 78c(a)(34)(E), 78s(h)(3) (identifying the SEC as "the appropriate regulatory agency" for registered securities associations like FINRA and authorizing the SEC to enforce FINRA members' compliance with "any provision of the Securities Act of 1933").  "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks omitted).  FINRA's contrary interpretation, which deprives the unique language in Sections 15A and 19(h) of all meaning, violates a tribunal's fundamental "duty to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks omitted).

40.     FINRA's statutory authority to promulgate rules protective of trade and the public interest may be wide-ranging, but it cannot be interpreted to give FINRA unilateral authority to expand its disciplinary power beyond the clear limits established in the Exchange Act and to police statutes over which the SEC alone has disciplinary authority.  FINRA Rule 2010 states, in its entirety: "A member, in the conduct of its business, shall observe high standards of commercial honor and just and equitable principles of trade."   As FINRA and SEC administrative decisions make clear, far from sanctioning a functionally limitless police power

over the federal securities laws, the Rule simply enables FINRA to address generally "unethical" conduct that either (i) is rooted in violations of the Exchange Act or (ii) otherwise would evade securities-industry regulatory oversight.  *See, e.g.*, *Keilen Dimone Wiley*, Exchange Act Release No. 76558 (Dec. 4, 2015) (converting firm funds); *Blair Alexander West*, Exchange Act Release No. 74030 (Jan. 9, 2015) (misusing customer funds); *Dep't of Enf't v. Shvarts*, Compl. No. CAF980029 (NASD NAC June 2, 2000) (failing to pay attorney's fees in contempt of court). Rule 2010 cannot be interpreted more broadly because doing so would violate the Exchange Act's mandate that FINRA's rules cannot be "designed to . . . regulate by virtue of any authority conferred by this chapter matters not related to *the purposes of this chapter* or the administration of the association."  15 U.S.C. § 78o-3(b)(6) (emphasis added).

41.     FINRA cannot use its general ethical rule to enforce a statute that is beyond the scope of its enabling legislation and, in fact, has been placed under the exclusive disciplinary authority of the SEC.  *See Fed. Mar. Comm'n v. Seatrain Lines, Inc.*, 411 U.S. 726, 745 (1973) ("[A]n agency may not bootstrap itself into an area in which it has no jurisdiction by repeatedly violating its statutory mandate.").  The fact that FINRA has previously invoked Rule 2010 as a basis for punishing broker-dealers for violating Section 5 of the Securities Act is of no moment. As the Supreme Court recently explained, in the context of rejecting the distinction between "jurisdictional" and "nonjurisdictional" agency interpretations: "Both [agencies'] power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires. . . . [T]he question—whether framed as an incorrect application of agency authority or an assertion

of authority not conferred—is always whether the agency has gone beyond what Congress has permitted it to do . . . ."  *City of Arlington, Tex. v. FCC*, 133 S. Ct. 1863, 1868–69 (2013).

### FINRA's Incapacity to Develop a Factual Record on Securities Act Section 5 Issues

42.     In addition to reflecting the text of FINRA's enabling legislation and conforming to settled canons of construction, the notion that Congress has denied FINRA the authority to enforce the Securities Act is rooted in common sense as well: the Securities Act concerns issuances of securities, and FINRA lacks jurisdiction over corporate issuers.  *See Self-Regulatory Organizations*, Exchange Act Release No. 62434, 75 Fed. Reg. 39603, 39604 (July 1, 2010) (observing that FINRA "maintains no formal relationship with, or direct jurisdiction over, issuers" and recognizing "FINRA's lack of privity with issuers of OTC Securities").

43.     The capacity to fully develop a record as to whether a securities distribution satisfied Section 5 and its numerous exemptions depends on substantial amounts of information that FINRA has no power to collect.  In contrast, the SEC can collect such information through its expansive governmental subpoena powers.  Accordingly, FINRA cannot be expected to generate a fulsome factual record and conduct a fair and adequate hearing on Section 5 issues.

44.     In light of the foregoing, FINRA's effort to compel Plaintiffs to submit to a disciplinary proceeding premised on alleged violations of the Securities Act contravenes the organization's foundational statute, which reserves that power to the SEC.

### Irreparable Harm, the Balance of Equities, and the Public Interest

45.     Absent injunctive relief from this Court, Plaintiffs will be required to endure an ultra vires proceeding.  This will cause an irreparable injury to Plaintiffs.  Even if Plaintiffs prevail on the merits in the FINRA hearing, the damage cannot be undone; the parties cannot be

restored to their position before the action commenced.  Once the proceeding has taken place, the offending act is complete and cannot be reversed.  *See Cont'l Can Co.*, 603 F.2d at 597 (remarking that "[i]f Continental is forced to defend the numerous prosecutions on the merits before the Commission prior to seeking a juridical determination that the prosecutions were unwarranted, the injury will have already been complete and uncorrectable").  Plaintiffs' requested relief would also be rendered moot, as a court of appeals cannot enjoin a proceeding that has already occurred.  *See, e.g.*, *Martin–Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

46.     Moreover, if FINRA were to prevail in its own ultra vires hearing, the resulting damage to Plaintiffs would be catastrophic and irreparable.  For example, FINRA seeks sanctions including limits on the individual Plaintiffs' ability to freely associate with broker-dealers and to work in the securities industry, and there is no guarantee that any such sanctions would be stayed during the entirety of the numerous levels of appeal that precede federal judicial review.  *See* 15 U.S.C. §§ 78s(d)(2), 78y(c)(2) (granting the SEC and the court of appeals, respectively, the discretion to stay disciplinary sanctions).  Nor, for that matter, is there a mechanism to restore Plaintiffs' damaged reputations and resulting loss of business.  Indeed, SCA's very survival, not to mention the individual Plaintiffs' livelihoods, could be jeopardized.

47.     Conversely, if Plaintiffs succeed on the merits in the FINRA hearing, FINRA's ultra vires conduct would evade review altogether.  This deprives Plaintiffs of any remedy for the harm caused by the hearing, including, at the very least, the disruption of the firm's business owing to the compelled participation of its key officers in an unlawful, two-week-long

proceeding in an inconvenient, out-of-state forum.  Plaintiffs also would have no meaningful opportunity to recover the substantial attorneys' fees and expenses that they will be required to incur to defend the hearing.  And, insofar as FINRA and its predecessor have argued, with some success, that self-regulatory organizations are immune from damages in connection with the discharge of their regulatory duties, *see, e.g.*, *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011), Plaintiffs very well may be unable to recover damages from FINRA for the substantial harm inflicted upon them.

48.     Moreover, Plaintiffs' challenge to FINRA's statutory authority to bring disciplinary actions predicated on violations of the Securities Act presents a question of first impression.  And, critically, the potential consequences of simply assuming that FINRA has jurisdiction in this context are too severe to bear.

49.     In contrast, FINRA will suffer no harm from an injunction that, by definition, enforces the statutory limits on its disciplinary authority.

50.     The public, and especially the broker-dealers that comprise FINRA's membership, would benefit from a careful judicial review of FINRA's statutory authority. Permitting the ultra vires proceeding to move forward, with the concomitant risk that the vital question of FINRA's jurisdiction could continue to evade judicial scrutiny, would disserve the public and cause irremediable harm to Plaintiffs.

## COUNT ONE: APPLICATION FOR INJUNCTIVE RELIEF

51.     Plaintiffs repeat and re-allege paragraphs 1–50 as if set forth in full.

52.     Plaintiffs' rights, reputation, and business will be irreparably harmed if a preliminary and permanent injunction is not issued with respect to FINRA's in-house

disciplinary hearing against Plaintiffs (FINRA Case No. 2014041724601). Plaintiffs have a substantial likelihood of success on the merits of their claim. Plaintiffs will be irreparably injured without injunctive relief, as described above, and the harm to Plaintiffs, absent such relief, far outweighs any harm to FINRA. Lastly, the grant of an injunction will serve the public interest in the protection of the rights of broker-dealers subject to FINRA regulation and in the conclusive determination of the reach of FINRA's disciplinary authority.

## COUNT TWO: DECLARATORY JUDGMENT

53.     Plaintiffs repeat and re-allege paragraphs 1–52 as if set forth in full.

54.     Plaintiffs request a declaratory judgment, pursuant to 28 U.S.C. § 2201, that (i) FINRA lacks statutory authority under the Exchange Act to bring disciplinary proceedings against member firms or their associated persons predicated on alleged violations of the Securities Act; and (ii) FINRA's disciplinary proceeding against Plaintiffs (FINRA Case No. 2014041724601) is ultra vires and may not lawfully continue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and relief as follows:

A.     An order and judgment preliminarily and permanently enjoining FINRA from continuing disciplinary proceeding against Plaintiffs (FINRA Case No. 2014041724601).

B.     An order and judgment declaring that FINRA lacks statutory authority under the Exchange Act to bring disciplinary proceedings against member firms or their associated persons premised upon alleged violations of the Securities Act.

C.     Such other and further relief as this Court may deem just and proper, including reasonable attorneys' fees and the costs of this action.

Dated: March 22, 2016

/s/ Matthew H. Kirtland

_____

Matthew H. Kirtland (Bar No. 26089)
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, D.C. 20001-4501
Telephone: (202) 662-0200
Facsimile: (202) 662-4643
matthew.kirtland@nortonrosefulbright.com

Of Counsel:
Kevin Harnisch
Vijay Rao
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, D.C. 20001-4501

Ryan Meltzer
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd., Suite 1100
Austin, TX 78701

*Attorneys for Plaintiffs Scottsdale Capital Advisors Corporation, John J. Hurry, Timothy B. DiBlasi, and D. Michael Cruz*