**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **SCOTTSDALE CAPITAL ADVISORS CORPORATION, et al.,** )<br>)<br>)<br>**Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,** )<br>)<br>)<br>**Defendant.** )<br>) | **Case No. 8:16-cv-860** |

**EXHIBIT A – Henry Diekmann Declaration**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **SCOTTSDALE CAPITAL ADVISORS CORPORATION, et al.,** )<br>)<br>)<br>)<br>**Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,** )<br>)<br>)<br>)<br>**Defendant.** )<br>) | **Case No. _____** |

## DECLARATION OF HENRY DIEKMANN

I, **HENRY DIEKMANN**, of Scottsdale Capital Advisors Corp., 7170 E. McDonald Dr., Ste. 6, Scottsdale, AZ 85253, make this declaration and affirm and declare as follows:

1. I am over 18 years of age and am qualified to make this Declaration.

2. I submit this declaration in support of Plaintiffs' Complaint for Declaratory and Injunctive Relief and Plaintiffs' Motion for Preliminary Injunction and Permanent Injunction.

3. I declare that the following statements are true and correct to the best of my knowledge and set forth facts as would be admissible in federal court.

4. Scottsdale Capital Advisors Corp. ("SCA") is a full-service broker-dealer and registered investment-advisor firm focused on serving the over-the-counter ("OTC") securities market.

5. I am the President of SCA, and have held that role since January 2015. I have been employed by SCA since March 2010 and have held multiple positions at SCA prior to my

appointment as President, including most recently, manager of SCA's Rule 144 Compliance Department. Prior to joining SCA, I worked as a financial advisor at Morgan Stanley and Northwestern Mutual. I graduated with a BA in History from Arizona State University in 2008.

6. John and Justine Hurry formed SCA under the laws of the State of Arizona in 2001. Since that time, SCA has become a market leader in microcap-securities trading. Microcap-securities trading generally involves stock that trades at a relatively low price and market capitalization in the OTC market. Such stock may be in the form of physical stock certificates or electronic journal transfers directly from the issuer's transfer agent.

7. Mr. Hurry is one of SCA's directors.

8. Timothy DiBlasi is SCA's Chief Compliance Officer, and he has held this position continuously since the period relevant to this proceeding.

9. In 2013, Mr. Hurry established Cayman Securities Clearing and Trading SEZC Ltd. ("CSCT") in the Special Economic Zone of the Cayman Islands. CSCT is a Cayman Islands-incorporated broker-dealer.

10. CSCT became a customer of SCA and, through its account there, deposited and liquidated penny stocks on behalf of CSCT's own customers.

11. The Financial Industry Regulatory Authority ("FINRA") is a registered securities association and self-regulatory organization authorized under the Securities Exchange Act of 1934 (the "Exchange Act"). FINRA operates as a private regulatory body for the securities industry.

12. On May 15, 2015, FINRA commenced disciplinary proceedings against SCA, Mr. Hurry, Mr. DiBlasi, and D. Michael Cruz, SCA's former President (collectively "Plaintiffs"). In its complaint (FINRA Case No. 2014041724601), FINRA alleges that (i) certain transactions that

CSCT routed through SCA violated Section 5 of the Securities Act of 1933 (the "Securities Act") and (ii) SCA's supervisory processes and procedures were not reasonably designed to detect and prevent violations of Section 5 of the Securities Act.

13. FINRA's complaint uses these purported Securities Act violations as the predicate for a charged violation of FINRA's catch-all ethical rule, Rule 2010, which requires members to "observe high standards of commercial honor and just and equitable principles of trade."

14. On December 11, 2015, Plaintiffs moved for summary disposition before the FINRA Hearing Officer assigned to the case. Plaintiffs argued, among other things, that FINRA's statutory authority under the Exchange Act does not extend to enforcement of the Securities Act, such that the disciplinary proceeding exceeded FINRA's powers.

15. On February 26, 2016, the Hearing Officer denied Plaintiffs' motion, essentially holding that FINRA can use Rule 2010 to enforce any of the federal securities laws despite the contrary text of the Exchange Act.

16. A two-week hearing on the merits is scheduled before FINRA in Los Angeles, California, starting on June 13, 2016. Plaintiffs have retained the law firm of Norton Rose Fulbright US LLP to represent them in the hearing.

17. If FINRA continues its unlawful enforcement action and is unsuccessful, Plaintiffs would suffer the following harms: (i) substantial legal fees and expenses that must be incurred during the hearing and all subsequent appeals; and (ii) significant disruption of Plaintiffs' business operations caused by the required participation of key officers in a two-week-long hearing in an inconvenient, out-of-state forum. The time and resources necessary to participate in this hearing will be substantial. I understand that the legal fees and expenses alone required to represent Plaintiffs at the hearing are likely to be in the hundreds of thousands of

dollars. Even if Plaintiffs are successful at the hearing, these harms are not reparable because, as I understand it, Plaintiffs have no meaningful opportunity to recover their legal fees and expenses and no opportunity to remedy the disruption to Plaintiffs' business operations.

18. If FINRA continues its unlawful enforcement action and is successful, Plaintiff would suffer the following additional harms: (i) monetary sanctions that can be imposed by FINRA; (ii) restrictions that can be imposed by FINRA on individual Plaintiffs' ability to associate with broker-dealers; (iii) loss of business and goodwill that would result from any sanctions or restrictions imposed by FINRA; and (iv) reputational damage that would result from having been found by FINRA to have violated the Securities Act and the resulting sanctions or restrictions imposed by FINRA. These harms, and particularly the loss of business and goodwill and reputational damage, would be irreparable given that, once a finding of liability is made by FINRA, there is no way to turn back time and erase such a finding in the minds of the public.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 21, 2016

By: _____
Henry Diekmann