**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION (GREENBELT)**

| | |
|---|---|
| SCOTTSDALE CAPITAL ADVISORS CORP., et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 8:16-cv-00860-DKC |
| FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., | |
| Defendant. | |

**COMBINED BRIEF OF DEFENDANT
FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.
IN SUPPORT OF MOTION TO DISMISS AND IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Terri L. Reicher, Bar No. 04029
1735 K Street, N.W.
Washington, D.C.  20006
Telephone: (202) 728-8967
Facsimile: (202) 728-8894
Terri.Reicher@finra.org

Timothy W. Mountz
*Pro Hac Vice* Pending
1735 K Street, N.W.
Washington, D.C.  20006
Telephone: (202) 728-8210
Facsimile: (202) 728-8894
Timothy.Mountz@finra.org

Attorneys for Defendant,
FINANCIAL INDUSTRY REGULATORY
AUTHORITY, INC.

## TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT .................................................1

II.     BACKGROUND ..................................................................................................................2

        A.      FINRA and Its Role in Securities Regulation ..........................................................2

        B.      The FINRA Disciplinary Action Against the Plaintiffs ..........................................5

III.    ARGUMENT ........................................................................................................................8

        A.      Motion to Dismiss Standards ...................................................................................8

        B.      Plaintiffs' Failure to Pursue the Exchange Act's Exclusive Review
                Process Deprives this Court of Subject Matter Jurisdiction to
                Enjoin an Ongoing FINRA Disciplinary Proceeding ..............................................9

                1.      Exhaustion of Prescribed Administrative Remedies ................................10

                2.      The Exchange Act's Exclusive Process for Administrative
                        and Judicial Review of FINRA Disciplinary Proceedings ...................... 10

                        a.      Courts Have Uniformly Held the Exchange Act's
                                Administrative Review Process Is Jurisdictional .........................11

                        b.      The Exchange Act's Exclusive Review Process
                                Provides for Meaningful Review ...................................................13

                3.      No Exception Applies to the Exchange Act's Exclusive
                        Review Process ........................................................................................17

                        a.      Clear and Unambiguous Constitutional or Statutory
                                Violation .......................................................................................17

                        b.      Irreparable Injury/Futility ............................................................18

                        c.      FINRA Administrative Process Provides Effective
                                Relief ............................................................................................20

        C.      The Complaint Fails to State A Claim Under Rule 12(b)(6) ................................21

        D.      Plaintiffs Fail to Meet Requirements for Injunctive Relief ..................................22

                1.      Standards in 4th Circuit .......................................................................... 22

                2.      Plaintiffs Cannot Prevail on the Merits Because FINRA is
                        Acting within its Regulatory Jurisdiction ..................................................23

a.      The Broad Grant of Authority to FINRA ......................................23

b.      Violations of Section 5 of the Securities Act Have
        Previously Been Held to Constitute Violations of
        FINRA Rule 2010 .......................................................................25

3.      Plaintiffs Will Not Suffer Irreparable Harm  ............................................27

4.      The Balance of Equities Favor FINRA, Not Plaintiffs  ............................28

5.      The Public Interest Favors FINRA, Not Plaintiffs ...................................29

IV.    CONCLUSION .............................................................................................................29

# TABLE OF AUTHORITIES

## CASES

*Alton v. NASD*, 1994 U.S. Dist. LEXIS 11312 (N.D. Cal. July 26, 1994) ............................ 13, 19

*Aslin v. FINRA. Inc.*, 704 F.3d 475, 476 (7th Cir. 2012) ................................................................ 6

*Barbara v. New York Stock Exch., Inc.*, 99 F. 3d 49 (2d Cir. 1996) ............................................ 12

*Bell Atlantic Corp. v. Twombly*, 540 U.S. 544 (2007) ................................................................... 9

*Brady v. Resolution Trust Corp.*, 14 F.3d 998 (4th Cir. 1994) ...................................................... 9

*Browne v. NASD*, 2006 U.S. Dist. LEXIS 35507 (N.D. Tex. May 31, 2006) ....................... 13, 19

*Charles Schwab & Co., Inc. v. FINRA Inc.*, 861 F. Supp. 2d 1063 (N.D. Cal.
   2012) ................................................................................................................................. *passim*

*Cleantech Innovations, Inc. v. NASDAQ Stock Market, LLC*, 2012 U.S. Dist.
   LEXIS 13707 (S.D.N.Y. Jan. 31, 2012) ................................................................................. 13

*Coleman v. NASD*, 1999 U.S. Dist. LEXIS 7172 (S.D.N.Y. May 14, 1999) .............................. 13

*D.L. Cromwell Inv., Inc. v. NASD Regulation, Inc.*, 279 F.3d 155 (2d Cir.
   2002) .......................................................................................................................................... 3

*Datek Sec. Corp. v. NASD*, 875 F. Supp. 230 (S.D.N.Y. 1995) ............................................ 13, 27

*Empire Fin. Group, Inc. v. FINRA, Inc.*, 2009 U.S. Dist. LEXIS 133643 (S. D.
   Fl. Jan. 15, 2009) ................................................................................................................... 5, 13

*First Jersey Sec., Inc. v. Bergen*, 605 F. 2d 690 (3d Cir. 1979) ........................................... *passim*

*Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477
   (2010) ....................................................................................................................................... 16

*GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543 (4th Cir. 2001) .......................... 9

*Hayden v. New York Stock Exch., Inc.*, 4 F. Supp. 2d 335 (S.D.N.Y. 1998) ...................... *passim*

*Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015) ............................................................................... 12

*Jones v. Calvert Group, Ltd.*, 551 F.3d 297 (4th Cir. 2009) ......................................................... 9

*Jones v. SEC,* 115 F.3d 1173 (4th Cir. 1997) ................................................................................ 2

*J.W. Gant & Associates, Inc. v. NASD*, 791 F. Supp. 1022 (D. Del. 1992) ................................ 13

*Krull v. SEC*, 248 F.3d 907 (9th Cir. 2001) ...................................................... 3, 4, 5, 20

*Kunz v. SEC*, 64 F. App'x 659 (10th Cir. 2003) ............................................ 26

*Kurz v. Fidelity Mgmt. & Research Co.*, 556 F.3d 639 (7th Cir. 2009) ........................................ 3

*League of Women Voters of N.C. v. North Carolina*, 769 F. 3d 224 (4th Cir. 2014) ................................................................................................... 22

*Marchiano v. NASD*, 134 F. Supp. 2d 90 (D. D.C. 2001) .......................................... 13

*Maschler v. NASD*, 827 F. Supp. 131 (E.D.N.Y. 1993) ............................................... 18

*McBride Cotton & Cattle Co. v. Veneman*, 290 F.3d 973 (9th Cir. 2002) ............................ 10, 14

*McCarthy v. Madigan*, 503 U.S. 140 (1992) ................................................ 10

*McGinn, Smith & Co., Inc. v. FINRA, Inc.*, 786 F. Supp. 2d 139 (D. D.C. 2011)............ 13, 19, 27

*McLaughlin Piven Vogel, Inc. v. NASD*, 733 F. Supp. 694 (S.D.N.Y. 1990)................................ 13

*Merrill Lynch, Pierce, Fenner & Smith v. NASD*, 616 F.2d 1363 (5th Cir. 1980) ............................................................................................ 11, 13

*Mister Discount Stockbrokers, Inc. v. SEC*, 768 F.2d 875 (7th Cir. 1985)................................ 5, 13

*Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938) ................................. 10, 28

*North v. Smarsh*, 2015 U.S. Dist. LEXIS 162551 (D. D.C. Dec. 4, 2015)............................ 13, 27

*Peterson  v. NASD*, No. 95-cv-3962-WMN (D. Md. Dec. 27, 1995) .............................. 11, 13, 20

*Pyramid Fin. Corp. v. FINRA, Inc.*, 2010 U.S. Dist. LEXIS 90543 (N.D. Cal. Aug. 27, 2010) ................................................................................ 12, 13, 16, 19

*Randall v. United States*, 30 F.3d 518 (4th Cir. 1994)................................................ 9

*Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90 (D.C. Cir. 1986) ................................................................................................ 10

*SEC v. Ralston Purina Co.*, 346 U.S. 119, 124 (1953) ................................................ 27

*Sorrell v. SEC*, 679 F.2d 1323 (9th Cir. 1982) ............................................ 26

*Swirsky v. NASD*, 124 F.3d 59 (1st Cir. 1997)................................................. 3, 4, 13

*Taylor v. Freeman*, 34 F. 3d 266 (4th Cir. 1994)....................................................... 22

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)...................................... *passim*

*Vail v. SEC*, 101 F.3d 37 (5th Cir. 1996) ................................................................... 24

*Waco Financial v. NASD*, 751 F.2d 386 (6th Cir. 1984) .............................................. 13

*World Trade Fin. Corp. v. SEC*, 739 F.3d 1243 (9th Cir. 2014) .................................. 26

## UNITED STATES CODE

15 U.S.C. § 77e .................................................................................................. 25, 26, 27

15 U.S.C. § 78a, *et seq.* ......................................................................................... *passim*

15 U.S.C. § 78o-3, *et seq.* ....................................................................................... *passim*

15 U.S.C. § 78o-3(b) ........................................................................................................ 3

15 U.S.C. § 78o-3(b)(6) .................................................................................................. 29

15 U.S.C. § 78o-3(h) ..................................................................................................... 3, 4

15 U.S.C. § 78s ........................................................................................................ 2, 3, 4, 11

15 U.S.C. § 78s(b) ............................................................................................................ 3

15 U.S.C. § 78s(c) ............................................................................................................ 3

15 U.S.C. § 78s(d) ............................................................................................................ 4

15 U.S.C. § 78s(e) ............................................................................................................ 4

15 U.S.C. § 78y ............................................................................................................ 2, 14

15 U.S.C. § 78y(a)(1) ....................................................................................................... 5

## SEC EXCHANGE ACT RELEASES

*ACAP Fin., Inc.*, Exchange Act. Rel. No. 70046, 2013 SEC LEXIS 2156 (July
    26, 2013) ................................................................................................................. 25

*Alvin W. Gebhart, Jr.*,  Exchange Act. Rel. No. 53136, 2006 SEC LEXIS 1133
    (Jan. 18, 2006) ........................................................................................................ 25

*Daniel Joseph Alderman*, Exchange Act Rel. No. 35997 1995 SEC LEXIS
    1823 (July 20, 1995), *aff'd*, 104 F.3d 285 (9th Cir. 1997) ...................................... 29

*DWS Sec. Corp.*, Exchange Act Rel. No. 33193, 1993 SEC LEXIS 3137 (Nov.
    12, 1993) ................................................................................................................. 23

*Emest A. Cipriani*, Exchange Act Rel. No. 33675, 1994 SEC LEXIS 506 (Feb. 24, 1994) ........................................................................................................... 24

*George R. Beall, Jr.*, Exchange Act Rel. No. 28059, 1990 SEC LEXIS 1121 (May 25, 1990) .................................................................................................... 25

*Henry E. Vail*, Exchange Act Rel. No. 35872, 1995 SEC LEXIS 1514 (June 20, 1995) .......................................................................................................... 24

*James A. Goetz*, Exchange Act Rel. No. 39796, 1998 SEC LEXIS 499 (March 25, 1998) .......................................................................................................... 24

*Keilen Dimone Wiley*, Exchange Act Rel. No. 76558, 2015 SEC LEXIS 4952 (Dec. 4, 2015).......................................................................................................... 24

*Leonard J. Ialeggio*, Exchange Act Rel. No. 37910, 1996 SEC LEXIS 3057 (Oct. 31, 1996) .................................................................................................... 25

*Mgmt. Fin., Inc.*, Exchange Act Rel. No. 12098, 1976 SEC LEXIS 2427 (Feb. 11, 1976) .......................................................................................................... 26

*Midas Sec., LLC*,  Exchange Act Rel. No. 66200, 2012 SEC LEXIS 199 (Jan. 20, 2012) ...................................................................................................... 25, 26

*Stephen Grivas*,  Exchange Act Rel. No. 77470, 2016 SEC LEXIS 1173 (March 29, 2016).......................................................................................................... 23

*Timothy L. Burkes*, Exchange Act Rel. No. 32142, 1993 SEC LEXIS 949 (Apr. 14, 1993) ...................................................................................................... 23, 25

*William F. Rembert*, Exchange Act Rel. No. 33202, 1993 SEC LEXIS 3146 (Nov. 16, 1993) .................................................................................................... 25

## RULES

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 1, 9

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 2, 9

Fed. R. Civ. P. 12(h)(3) ........................................................................................ 1, 9

FINRA Rule 0140(a) ................................................................................................ 23

FINRA Rule 2010 ............................................................................................ *passim*

FINRA Rule 9213 ...................................................................................................... 4

FINRA Rule 9231(b) .................................................................................................. 4

FINRA Rule 9311 ................................................................................................................ 4

FINRA Rule 9349 ................................................................................................................ 4

FINRA Rule 9351 ................................................................................................................ 4

NASD Rule 3010 ........................................................................................................... 5, 21

NASD Rule 3010(a) ..................................................................................................... 5, 6, 7

NASD Rule 3010(b) ......................................................................................................... 6, 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION (GREENBELT)**

| | |
|---|---|
| SCOTTSDALE CAPITAL ADVISORS CORP., et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 8:16-cv-00860-DKC |
| FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., | |
| Defendant. | |

**COMBINED BRIEF OF DEFENDANT**
**FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.**
**IN SUPPORT OF MOTION TO DISMISS AND IN OPPOSITION**
**TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") respectfully submits this Brief in Support of its Motion to Dismiss and in Opposition to Plaintiffs' Motion for Preliminary Injunction.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This is an action by a securities firm and its principals to enjoin an ongoing FINRA securities disciplinary proceeding based upon alleged FINRA rules violations arising from their sales of 74 million shares of unregistered, non-exempt "penny stock" securities, the profits of which were funneled through a Cayman Islands entity controlled by Plaintiff John Hurry. Scottsdale, Hurry, DiBlasi are, and Cruz was, registered to do business in the securities industry holding various FINRA licenses, making all of them subject to FINRA rules and procedures.

The Complaint must be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and 12(h)(3) because the Securities Exchange Act of 1934 (15 U.S.C. § 78a, *et*

*seq.*) ("Exchange Act") provides the exclusive judicial review process for challenges to FINRA disciplinary proceedings and requires Plaintiffs to exhaust their administrative remedies. 15 U.S.C. §§ 78s, y.  The Complaint should also be dismissed with prejudice for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

The Motion for Preliminary Injunction should be denied because Plaintiffs cannot meet their burden of establishing any of the requirements for injunctive relief.  The absence of subject matter jurisdiction and failure to state a claim under Rule 12(b)(6) mean that Plaintiffs cannot show a likelihood of prevailing on the merits of their claim; under well-settled law, requiring Plaintiffs to exhaust their administrative remedies does not constitute irreparable harm; and the balance of equities and public interest favor FINRA, not Plaintiffs.

## II.  BACKGROUND

### A.  FINRA and Its Role in Securities Regulation

FINRA is a private not-for-profit Delaware corporation and a self-regulatory organization ("SRO") registered with the Securities Exchange Commission ("SEC") as a national securities association pursuant to the Maloney Act of 1938,[1] 15 U.S.C. § 78o-3, *et seq.*, amending the Exchange Act.  *See Jones v. SEC*, 115 F.3d 1173, 1179 (4th Cir. 1997).  FINRA is part of the Exchange Act's interrelated and comprehensive mechanism for regulating the national securities markets.  *See Domestic Sec., Inc. v. SEC*, 333 F.3d 239, 242 (D.C. Cir. 2003).  The SEC must

---

[1]    FINRA's headquarters is in Washington, D.C., and its principal place of business is not in Maryland as Plaintiffs allege.  (Complaint ¶ 12.)

approve all FINRA rules, including the FINRA rules at issue in this case.[2]  15 U.S.C. § 78s(b) and (c).  The SEC cannot approve a FINRA rule or amendment without specifically finding that it is consistent with the Exchange Act and the rules and regulations promulgated thereunder.  15 U.S.C. § 78s(b).

FINRA exercises disciplinary authority over its members and is required to enforce compliance with securities laws and FINRA rules.  *See, e.g.*, 15 U.S.C. § 78o-3(b) and (h); § 78s; *D.L. Cromwell Inv., Inc. v. NASD Regulation, Inc.*,[3] 279 F.3d 155, 157 (2d Cir.) (FINRA is charged with "conducting investigations and commencing disciplinary proceedings against [FINRA] member firms and their associated member representatives relating to compliance with the federal securities laws and regulations"), *cert. denied*, 537 U.S. 1028 (2002).  FINRA rules "are part of the apparatus of federal securities regulation."  *Kurz v. Fidelity Mgmt. & Research Co.*, 556 F.3d 639, 641 (7th Cir. 2009).  The FINRA Code of Procedure, approved by the SEC, governs FINRA disciplinary proceedings against securities firms and registered representatives like Plaintiffs.

The Exchange Act provides for a "process of both administrative and judicial review of [FINRA] disciplinary proceedings."  *Swirsky v. NASD*, 124 F.3d 59, 61 (1st Cir. 1997); *see First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979); *Krull v. SEC*, 248 F.3d 907, 910-11 (9th Cir. 2001).  That process involves multiple tiers of review.  First, a FINRA Hearing

---

[2]    FINRA Rules are published by the SEC in the *Federal Register* when changes are proposed or approved; the current version of all FINRA Rules, including the Code of Procedure, is in the FINRA Manual and is publically available at http://finra.complinet.com/.

[3]    In July 2007, FINRA changed its corporate name from National Association of Securities Dealers, Inc. ("NASD").

Panel conducts a hearing "to determine whether a member . . . should be disciplined."  15 U.S.C. § 78o-3(h)(1).[4]  During that initial phase, the member has an opportunity to present its case before the FINRA Hearing Panel, which consists of a FINRA Hearing Officer and two industry members.  FINRA Rules 9213, 9231(b).  If the Hearing Panel determines there have been violations and imposes a sanction, the member may file an appeal of the Panel's written decision with FINRA's National Adjudicatory Council ("NAC").  FINRA Rule 9311.  The NAC consists of fourteen industry and public members, including law professors. (www.finra.org/Industry/nac-committee-members.)  Any FINRA Board member may ask the Board to review the NAC's decision.  The Board can affirm, modify or reverse the NAC's written decision and any sanction imposed thereunder.  *See* FINRA Rules 9349, 9351.

Should the aggrieved party seek further review, the SEC conducts a *de novo* review of FINRA's disciplinary decision, and issues a written decision.[5]  15 U.S.C. § 78s(d); *see Swirsky*, 124 F.3d at 61; *Krull*, 248 F.3d at 911.  Pursuant to 15 U.S.C. § 78s(e), "[t]he SEC can affirm or modify any sanction, or remand to [FINRA] for further proceedings."  *See Swirsky*, 124 F.3d at 62; *Krull*, 248 F.3d at 911.  Finally, a party aggrieved by the SEC's action can seek judicial review exclusively in a United States Court of Appeals in the circuit in which the party resides or has its principal place of business, or in the District of Columbia Circuit Court of Appeals.

---

[4]     The Exchange Act prescribes a series of safeguards to ensure fairness at this first level of review. For example, FINRA must "bring specific charges, notify such member or person of, and give him opportunity to defend against, such charges, and keep a record."  15 U.S.C. § 78o-3(h)(1); *see Swirsky*, 124 F.3d at 61.

[5]     SEC decisions regarding review of FINRA disciplinary actions are published in the Federal Register as Exchange Act Releases, in the SEC Docket, and are available on the SEC website and on LEXIS and Westlaw.

15 U.S.C. § 78y(a)(1).  The Court of Appeals then issues a decision on the petition for review.  *See Mister Discount Stockbrokers, Inc. v. SEC*, 768 F.2d 875, 876 (7th Cir. 1985); *Krull*, 248 F.3d at 911.

### B.     The FINRA Disciplinary Action Against the Plaintiffs

Plaintiff Scottsdale Capital Advisors, Inc. is a FINRA member firm located in Arizona.  (Complaint ¶ 3.)  Plaintiffs John Hurry and Timothy DiBlasi are principals of Scottsdale, and Cruz is the firm's former president.  They reside in Nevada and Arizona, respectively.  (Complaint ¶¶ 9-11.)  As a FINRA member firm and persons associated therewith, each Plaintiff agreed to comply with all FINRA rules and procedures, including subjecting themselves to the FINRA disciplinary process.  *Empire Fin. Group, Inc. v. FINRA, Inc.*, 2009 U.S. Dist. LEXIS 133643 at *2 (S. D. Fl. Jan. 15, 2009).

Following an investigation, FINRA filed a Notice of Complaint against Scottsdale, Hurry, DiBlasi and Cruz ("the Scottsdale Respondents") on May 15, 2015.  (Exhibit B to Complaint, FINRA Notice of Complaint.)  The FINRA Complaint (to distinguish it from the Complaint in this action) alleges that the Scottsdale Respondents liquidated over 74 million shares of three penny stocks that were neither registered with the SEC nor exempt from registration, and sold these unregistered shares through a Cayman Islands broker-dealer controlled by John Hurry.  (Exhibit B, FINRA Complaint ¶¶ 1-2.)

The FINRA Complaint charges the Scottsdale Respondents with violating FINRA Rules 2010 and NASD Rule 3010, two broadly–worded rules that have played an instrumental role in FINRA's ability to police the conduct of its members and the federal securities markets for decades.  FINRA Rule 2010 is a rule, in language closely tracking Section 15A(b)(6) of the Exchange Act, that requires FINRA members and their associated persons to "observe high standards of commercial honor and just and equitable principles of trade."  NASD Rule 3010(a)

generally requires each member to "establish and maintain a system to supervise the activities of each registered representative, registered principal, and other associated person that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with applicable NASD Rules."  NASD Rule 3010(b) requires members to "establish, maintain, and enforce written procedures to supervise the types of business in which it engages and to supervise the activities of registered representatives, registered principals, and other associated persons that are reasonably designed to achieve compliance with applicable securities laws and regulations, and with the applicable Rules of NASD."  All three causes of action are based on FINRA rules approved by the SEC, and to which each of the Plaintiffs agreed to comply as a condition of being registered in the securities industry. *Aslin v. FINRA. Inc.*, 704 F.3d 475, 476 (7th Cir. 2012).  The detailed FINRA Complaint alleges three causes of action against the Scottsdale Respondents, only one of which alleges the Securities Act violation that Plaintiffs challenge:

  1.      Violation of FINRA Rule 2010 for sale of unregistered securities in violation of Section 5 of the Securities Act of 1933, 15 U.S.C. §77e ("Securities Act") (Scottsdale and Hurry).  (Exhibit B, FINRA Complaint ¶¶ 143-157.)

  2.      Violation of FINRA Rule 2010 and NASD Rule 3010 (a)[6] for having a deficient supervisory system and deficient written supervisory procedures (Scottsdale and DiBlasi). (Exhibit B, FINRA Complaint ¶¶ 158-176.)

---

[6]      As a result of acquiring certain regulatory functions of the New York Stock Exchange in 2007, FINRA consolidated its rulebook with that of the New York Stock Exchange into the FINRA Manual. NASD Rule 3010 was consolidated as FINRA Rule 3110, effective December 14, 2014.  Because the

[Footnote continued on next page]

3.      Violation of FINRA Rule 2010 and NASD Rule 3010 (b) for

failure to supervise (Scottsdale and Cruz). (Exhibit B, FINRA Complaint ¶¶ 177-

196.)

In December 2015, the Scottsdale Respondents filed a motion for summary disposition in

the FINRA disciplinary proceeding under FINRA Rule 9264, arguing exactly as they do here

that FINRA's enforcement jurisdiction is limited to violations of the Exchange Act, and that

FINRA is therefore without authority to charge the Scottsdale Respondents with violations of

FINRA Rules for selling unregistered, non-exempt securities in violation of the Securities Act.

Only one Count of the FINRA Complaint—Count I—alleges a violation of the Securities Act.

Counts II and III allege supervisory violations of NASD Rule 3010 (a) and (b), and FINRA Rule

2010.  The parties fully briefed the motion (which sought additional relief not relevant to this

litigation).

On February 26, 2016, the FINRA Hearing Officer issued a lengthy order denying the

motion for summary disposition and holding, *inter alia*, that FINRA's regulatory jurisdiction

extends to misconduct beyond statutory violations of the Exchange Act.  (Exhibit C to

Complaint, Hearing Officer Decision.)  The Hearing Officer's decision found that Section

15A(b)(6) of the Act expressly grants FINRA "broad authority to adopt and enforce rules to

promote fair business conduct and protect securities investors and the markets in general"—

language that is echoed in FINRA Rule 2010.  The Hearing Officer ruled that "[t]he statute does

not limit FINRA to unfair and inequitable conduct in violation of the Exchange Act," and noted

---

[Footnote continued from previous page]

violative conduct took place before that date, the Scottsdale Respondents were charged under the NASD
rule in effect at the time of the conduct.

that FINRA's rules "relate to the purposes" of the Exchange Act as provided by Section 15A(b)(6).  (Exhibit C, Hearing Officer Dec. at p. 6.)

The Hearing Officer's decision states that it would not make sense for FINRA to have authority to prosecute unethical conduct that may not  violate any federal or state statute, including the Exchange Act, but to be unable to prosecute FINRA rule violations based on conduct flagrantly in violation of the Securities Act, as the Scottsdale Respondents argued.  She pointed out that such a result would be inconsistent with Congressional intent and the mission of investor protection conferred on FINRA in the Exchange Act.  *Id.*

Finally, the Hearing Officer also noted the complete absence of legal authority supporting the Scottsdale Respondents' argument based on their novel interpretation of the Exchange Act's grant of authority to FINRA, and she cited numerous SEC cases and federal appellate decisions over many years affirming sanctions imposed under FINRA's rules in FINRA disciplinary actions for non-Exchange Act violations.  (Exhibit C to Complaint, Hearing Officer Dec. at p. 7.) "As Respondents concede, FINRA has routinely brought charges against members and associated persons under Rule 2010 for misconduct in connection with the sale of unregistered non-exempt securities, and the SEC has sustained such charges."  *Id.* at 8 (citations omitted).

This Complaint was filed on March 22, 2016, approximately one month after the Hearing Officer's denial of the Scottsdale Respondents' summary disposition motion.  The Scottsdale Respondents seek an injunction "to prevent FINRA from further proceedings against them" in the FINRA disciplinary proceeding, which would bring the matter to a halt.  (Complaint ¶ 1.) The FINRA disciplinary proceeding is set for final hearing beginning June 23, 2016.

## III.    ARGUMENT

### A.      Motion to Dismiss Standards

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, Plaintiffs bear the burden to show that the Court has jurisdiction to hear their claims. Under Fed. R. Civ. P. 12(h)(3), "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, it shall dismiss the action."  Where a statute prescribes a specific review scheme, failure to exhaust that process deprives the Court of subject matter jurisdiction, and is therefore a threshold issue.  *See, e.g., Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009); *Brady v. Resolution Trust Corp.*, 14 F.3d 998 (4th Cir. 1994).

In *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544 (2007), the Supreme Court held that to survive a motion to dismiss based on Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 569.  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). Although courts are to accept the complaint's factual allegations as true and view the complaint in the light most favorable to the plaintiff, *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001), district courts "are not so bound by the plaintiff's legal conclusions, since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  As discussed below, Plaintiffs' legal conclusions fail to state a claim as a matter of law.

**B.      Plaintiffs' Failure to Pursue the Exchange Act's Exclusive Review Process Deprives This Court of Subject Matter Jurisdiction to Enjoin an Ongoing FINRA Disciplinary Proceeding**

This is a textbook case for the application of the Exchange Act's exclusive review process, which has been described by many courts as the exhaustion doctrine.  Plaintiffs' Securities Act argument is a defense that has been and may continue to be asserted in the ongoing disciplinary proceeding—not a basis to circumvent the proceeding altogether.  "Plaintiff

seeks to enjoin the disciplinary proceeding and obtain a contrary interpretation or invalidation of the FINRA Rule on which the disciplinary action is based. . . ." *Charles Schwab & Co., Inc. v. FINRA Inc.*, 861 F. Supp. 2d 1063, 1078 (N.D. Cal. 2012).  This is a challenge so bound up with the merits of FINRA's case that judicial intervention at this point would constitute "interference with the [agency] process."  *Id.*, *quoting McBride Cotton & Cattle Co. v. Veneman*, 290 F.3d 973, 980 (9th Cir. 2002).

### 1.      Exhaustion of Prescribed Administrative Remedies

It is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."  *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938).  "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."  *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992), *overruled in part on other grounds, Booth v. Churner*, 532 U.S. 731 (2001).  The exhaustion requirement:

> [P]reserves the autonomy of the administrative agency by allowing it to exercise its expertise and discretion on appropriate matters . . . prevents parties from the 'frequent and deliberate flouting of administrative processes [which] could weaken the effectiveness of an agency' . . . promotes effective and efficient judicial review by ensuring that such review is of a fully developed factual record, and undertaken with the benefit of the agency's exercise of discretion or application of expertise . . . [and] promotes judicial efficiency in another way, since decision by the agency may obviate the need for a judicial decision on the issue . . .

*Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986).

### 2.      The Exchange Act's Exclusive Process for Administrative and Judicial Review of FINRA Disciplinary Proceedings

As set forth above, the Exchange Act establishes an exclusive review process for resolving FINRA disciplinary actions, in which aggrieved persons must first exhaust their

administrative remedies by concluding the FINRA disciplinary proceeding, pursuing any appeal through FINRA's National Adjudicatory Council, and then, if dissatisfied, seek review before the SEC, and finally judicial review before a United States Court of Appeals.  15 U.S.C. § 78s and § 78y.

### a.   Courts Have Uniformly Held the Exchange Act's Administrative Review Process Is Jurisdictional

Plaintiffs boldly allege that "[t]his Court's subject matter jurisdiction is unaffected by the Exchange Act's system of administrative review."  Complaint ¶ 14.  They are wrong.

"The comprehensiveness of the [Exchange Act's] review procedure suggest[s] that the doctrine of exhaustion of remedies should be applied to prevent circumvention of established procedures."  *Peterson v. NASD*, No. 95-cv-3962-WMN (D. Md. Dec. 27, 1995) (Exhibit 1, at 2), quoting *First Jersey Sec., Inc. v. Bergen*, 605 F. 2d 690, 695 (3d Cir. 1979), *cert. denied*, 444 U.S. 1074 (1980).  Failure to exhaust the review procedures "render[s] the district court without jurisdiction to entertain the suit." *First Jersey Sec.*, 605 F. 2d at 700 (granting writ of mandamus directing district court to dismiss action to enjoin ongoing NASD disciplinary proceeding); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NASD*, 616 F.2d 1363, 1368 (5th Cir. 1980) (reversing lower court's granting of preliminary injunction where plaintiff failed to exhaust administrative remedies).

In reliance on the Supreme Court's decision in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), Plaintiffs argue that an administrative review scheme divests jurisdiction only if there is a clear congressional intent to address that type of claim exclusively within the administrative scheme, which Plaintiffs argue is a "narrow exception" having "no application here."  (Complaint ¶ 15.)  But the Supreme Court in *Thunder Basin* held that a similar statutory review process divested federal courts of jurisdiction. And every court that has applied *Thunder*

11

*Basin* to the Exchange Act has held that the Exchange Act's administrative review process *does* deprive district courts of subject matter jurisdiction, as did the administrative review process in *Thunder Basin.  See Charles Schwab & Co., Inc. v. FINRA, Inc.*, 861 F. Supp. 2d 1063 (N.D. Cal. 2012); *Pyramid Fin. Corp. v. FINRA, Inc.*, 2010 U.S. Dist. LEXIS 90543 (N.D. Cal. Aug. 27, 2010); *Hayden v. New York Stock Exch., Inc.*, 4 F. Supp. 2d 335 (S.D.N.Y. 1998); *see also Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015) ("Congress intended exclusivity when it established the statutory scheme").

The court in *Charles Schwab, supra*, compared the Exchange Act's administrative review process to the process at issue in *Thunder Basin*, in which the Supreme Court held that administrative process of the Federal Mine Safety and Health Amendments Act of 1977, "precluded district court jurisdiction prior to exhaustion of administrative remedies." *Charles Schwab*, 861 F. Supp. 2d at 1070. The court stated:

> The Exchange Act's administrative review process is very similar to the administrative process at issue in *Thunder Basin*.  Like the Mine [Safety and Health Amendments] Act, the Exchange Act allocates initial review to an administrative body, establishes a detailed structure for review that leads to review by an independent commission, and ultimately provides for judicial review by the court of appeals.

*Charles Schwab*, 861 F. Supp. 2d at 1072.  In *Hayden, supra*, the court reached the same conclusion and stated flatly: "This Court finds *Thunder Basin* to be indistinguishable from the case at bar." 4 F. Supp. 2d at 338.

Federal courts have uniformly determined that the Exchange Act's exclusive review requirements apply to FINRA and other SRO disciplinary proceedings, thereby depriving district courts of subject matter jurisdiction to consider judicial peremptory challenges outside of the statutorily–mandated review process.  *Swirsky v. NASD*, 124 F. 3d 59, 62 (1st Cir. 1997); *Barbara v. New York Stock Exch., Inc.*, 99 F. 3d 49 (2d Cir. 1996); *Mister Discount*

*Stockbrokers, Inc. v. SEC*, 768 F.2d 875 (7th Cir. 1985); *Waco Financial v. NASD*, 751 F.2d 386

(6th Cir. 1984); *Merrill Lynch, Pierce, Fenner & Smith v. NASD*, 616 F.2d 1363, 1368-71 (5th

Cir. 1980); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 700 (3d Cir. 1979); *North v. Smarsh*,

2015 U.S. Dist. LEXIS 162551 (D. D.C. Dec. 4, 2015); *Charles Schwab & Co., Inc. v. FINRA,*

*Inc.,* 861 F. Supp. 2d 1063 (N.D. Cal. 2012); *Cleantech Innovations, Inc. v. NASDAQ Stock*

*Market, LLC*, 2012 U.S. Dist. LEXIS 13707 (S.D.N.Y. Jan. 31, 2012); *McGinn, Smith & Co.,*

*Inc. v. FINRA, Inc.*, 786 F. Supp. 2d 139 (D. D.C. 2011); *Pyramid Fin. Corp. v. FINRA, Inc.*,

2010 U.S. Dist. LEXIS 90543 (N.D. Cal. Aug. 27, 2010); *Empire Fin. Group, Inc. v. FINRA,*

*Inc.*, 2009 U.S. Dist. LEXIS 133643 (S. D. Fl. Jan. 15, 2009); *Browne v. NASD*, 2006 U.S. Dist.

LEXIS 35507 (N.D. Tex. May 31, 2006); *Marchiano v. NASD*, 134 F. Supp. 2d 90 (D. D.C.

2001); *Coleman v. NASD*, 1999 U.S. Dist. LEXIS 7172 (S.D.N.Y. May 14, 1999); *Hayden v.*

*New York Stock Exch., Inc.*, 4 F. Supp. 2d 335 (S.D.N.Y. 1998); *Datek Sec. Corp. v. NASD*, 875

F. Supp. 230 (S.D.N.Y. 1995); *Peterson v. NASD*, No. 95-cv-3962-WMN (D. Md. Dec. 27,

1995) (Exhibit 1); *Alton v. NASD*, 1994 U.S. Dist. LEXIS 11312 (N.D. Cal. July 26, 1994); *J.W.*

*Gant & Associates, Inc. v. NASD*, 791 F. Supp. 1022 (D. Del. 1992); *McLaughlin Piven Vogel,*

*Inc. v. NASD*, 733 F. Supp. 694 (S.D.N.Y. 1990).

### b. The Exchange Act's Exclusive Review Process Provides For Meaningful Review

Plaintiffs argue that the Exchange Act does not provide for meaningful review of their

challenge to FINRA's authority to bring charges under FINRA rules based on violations of the

Securities Act. (Complaint ¶ 16.) In *Thunder Basin*, the Supreme Court looked to

Congressional intent to allocate initial review to an administrative body, and whether, under the

administrative and judicial review process created by the statute, "the claims can be afforded

meaningful review." 510 U.S. at 207. In considering the Federal Mine and Safety Health

Amendments Act of 1977, the *Thunder Basin* court relied on the "detailed structure" of the review process specified in the Act to find that the district court had no jurisdiction over a pre-enforcement challenge. *Id.*

The *Charles Schwab* court compared the Exchange Act's administrative review process with the administrative review process held to preclude subject matter jurisdiction in *Thunder Basin*. "The Exchange Act provides for judicial review of a final SEC order in the Court of Appeals, which has exclusive jurisdiction on the filing of the record. 15 U.S.C. § 78y. This provision vesting exclusive jurisdiction in the Court of Appeals upon conclusion of the administrative process goes beyond a mere statutory 'codification of the exhaustion requirement.'" 861 F. Supp. 2d at 1073 (*quoting McBride*, 290 F.3d at 980). The court in *Hayden*, also considering a charge that a securities self-regulatory organization was acting outside of its authority, found that the Exchange Act afforded the "meaningful review" required by *Thunder Basin*. 4 F. Supp. 2d at 340.

Finally, Plaintiffs argue that they cannot obtain meaningful review because neither the SEC nor FINRA has the necessary expertise or resources to consider their argument. (Complaint ¶ 18.) In *Charles Schwab*, the firm argued, like Plaintiffs here, that "it cannot obtain effective relief at the administrative level because FINRA hearing officers and panels lack experience and competence" to decide the legal question of whether Schwab's rights under the Federal Arbitration Act prevailed over the securities regulatory scheme, and that the FINRA hearing panel was not competent to interpret recent Supreme Court cases on the scope of arbitration.

The court rejected this argument, holding that "these issues are squarely within the expertise of FINRA, as well as the SEC," and that the "Exchange Act instructs the SEC in reviewing final disciplinary actions to determine whether the [FINRA] rules were applied in a

manner "consistent with the purposes of the Act, which are fundamentally to ensure the maintenance of fair and honest markets." *Id.* at 1075-76.[7]

In *Hayden, supra* at 339-340, the court reached the same conclusion. "In short, the Exchange Act's text, structure, and legislative history reveal a clear Congressional intent to preclude district court review of SRO disciplinary proceedings." *Hayden*, 4 Fed. Supp. 2d at 340. As the *Hayden* court stated:

> It was also clearly the intent of Congress that initial review of SRO disciplinary proceedings be undertaken by an agency with expertise in the regulated industry--the SEC. Congress's concern that the review of SRO proceedings be informed by expert knowledge of the securities industry is reflected in the Exchange Act's limitations upon the scope of judicial review of SEC orders. By requiring judicial deference to the factual findings of the SEC and limiting judicial consideration of issues not previously raised before the SEC, *see* 15 U.S.C. §§ 78y (a)(4), 78y(c)(1), Congress curtailed the power of the judiciary to interfere with the efficient regulation of an industry by those best equipped for the task.

*Id.* at 339. Plaintiffs' real disagreement with FINRA is not FINRA's expertise—it is that FINRA's interpretation of Rule 2010 and its scope is contrary to Plaintiffs' interpretation. But the novelty of Plaintiffs' argument and FINRA's opposition to Plaintiffs' position does not mean that Plaintiffs cannot obtain "meaningful review" through the administrative process. Even if FINRA is incorrect as Plaintiffs claim (and which FINRA does not concede), the SEC unquestionably has the expertise necessary to determine the scope of FINRA's authority, and

---

[7]     More specifically, Plaintiffs argue that FINRA cannot develop the kind of necessary factual record because it lacks jurisdiction over issuers of securities. (Plaintiffs' Memorandum, p. 24.)  This is a red herring—the Scottsdale Respondents are being charged with sale of unregistered, non-exempt securities. FINRA does not require discovery from the issuers of these microcap securities to determine whether or not they were registered, or whether they were exempt from registration requirements.

whether FINRA acted in derogation thereof.  And the Court of Appeals unquestionably has the authority and expertise to review the SEC's decision.

Plaintiffs also argue that their challenge is to the "very existence of the disciplinary proceeding," similar to the constitutional challenge made against the Public Company Accounting Oversight Board in *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010), where "plaintiff [in *Free Enterprise Fund*] challenged the very existence of the administrative agency . . . which renders meaningful review in the administrative process a practical impossibility."  861 F. Supp. 2d at 1078.  In the *Charles Schwab* case, the court distinguished this type of constitutional challenge from an attack on FINRA's disciplinary proceedings: "Plaintiff seeks to enjoin the disciplinary process and obtain a contrary interpretation or invalidation of the FINRA Rule upon which the disciplinary action is based— issues central to the merits."  861 F. Supp. 2d. at 1079.  *See also, Pyramid Fin. Corp.,* at *7 (contrasting type of challenge in *Free Enterprise Fund* with challenge to FINRA's enforcement of net capital rule, and holding that SEC rule challenges are "squarely within the Commission's competence and expertise. . . The procedures for administrative review in Title 15 are designed to bring agency expertise to bear on this issue, and those procedures are therefore exclusive.").

In this case, Plaintiffs challenge FINRA's interpretation of the scope of Rule 2010 to encompass violations beyond those set forth in the Exchange Act—they are not challenging FINRA's right to exist or to exert regulatory jurisdiction at all.  That challenge must be made through the exclusive review process set forth in the Exchange Act.

### 3.     No Exception Applies to the Exchange Act's Exclusive Review Process

Although courts have generally held there are at most two limited exceptions to the exhaustion requirement,[8] Plaintiffs bring forward five "exceptions" and argue that their case fits within each of the exceptions.  (Complaint ¶¶ 20-24).  These "exceptions" are largely a repackaging of their arguments under *Thunder Basin*, which is discussed above.

### a.  Clear and Unambiguous Constitutional or Statutory Violation

Plaintiffs argue that FINRA's jurisdiction is limited to enforcing violations of the Exchange Act, and that charging the Scottsdale Respondents with a violation of the Securities Act (through FINRA Rule 2010) constitutes such a flagrant violation of its jurisdiction that they should not be required to exhaust their administrative remedies.  Under well-settled principles, no such exception applies to this case.

FINRA will address the merits of Plaintiffs' Securities Act argument in the section of this brief opposing the preliminary injunction, and those arguments are incorporated herein.  In summary, respondents seeking to enjoin a FINRA or other SRO disciplinary proceeding frequently argue FINRA is acting outside of its authority in their particular case, and courts have uniformly rejected this argument as a basis for enjoining a disciplinary proceeding.  *See, e.g., Charles Schwab*, 861 F. Supp. 2d 1063 (arguing FINRA lacks authority to prosecute firm for violation of FINRA arbitration rules that are more restrictive than Supreme Court precedent); *Hayden*, 4 F. Supp. 2d 335 (arguing that five year limitations period of 28 U.S.C. § 2862 limited

---

[8]     In *First Jersey Sec. v. Bergen*, 605 F.2d 690 (3d Cir. 1979), the court held that exhaustion will not be required "(1) when the administrative procedure is clearly shown to be inadequate to prevent irreparable injury; or (2) where there is a clear and unambiguous statutory or constitutional violation." *Id.* at 696.

New York Stock Exchange's authority to prosecute violations older than five years); *Maschler v. NASD*, 827 F. Supp. 131 (E.D.N.Y. 1993) (arguing that NASD acted outside of its authority and in violation of First Amendment in bringing action under predecessor to Rule 2010 against trader for using "abusive and indecorous language"). *Id.* Additionally, FINRA has sanctioned member firms and individuals for violations of Rule 2010 based upon noncompliance with Securities Act requirements, and those cases have been affirmed by both the SEC and the Courts of Appeals. Finally, Plaintiffs' argument regarding FINRA's interpretation of its rules is a defense to FINRA's charge—not a basis to circumvent the administrative process.

### b.  Irreparable Injury/Futility

Plaintiffs argue that being required to go through the Exchange Act administrative review process will cause irreparable injury because they should not be required to answer for violations of FINRA rules based on Securities Act violations.  But Plaintiffs are no different from any other FINRA disciplinary respondent who disagrees with FINRA's theory of the case, or its interpretations of its rules or of federal securities laws.  While Plaintiffs would undoubtedly prefer not to be subjected to a FINRA disciplinary proceeding and the review process if the underlying allegations are proven, Plaintiffs' preference does not constitute the irreparable injury that would justify exempting them from the exclusive review process.

For example, in *Charles Schwab*, the firm argued that it would be irreparably harmed by the time and expense of going through the FINRA administrative process, and then through the required levels of administrative review, which could "take up to four or more years."  861 F. Supp. 2d at 1075.  In rejecting that argument, the court held that "delay is not a basis to exempt a party from the requirement to exhaust administrative remedies, unless it is combined with a showing that the remedies available are palpably inadequate, resulting in serious injustice."  *Id.* Where the harm articulated is "the possibility that FINRA will impose discipline on Plaintiff,

which would ultimately be subject to judicial review," this is an insufficient basis to avoid the

exclusive review process. *Id.*  The court further found that FINRA's administrative remedies are

not "palpably inadequate" where respondents are accorded *de novo* review at the SEC and again

at the Court of Appeals, thereby assuring that any challenges will be meaningfully addressed. *Id.*

at 1076.

Other courts have rejected Plaintiffs' argument.  The Third Circuit in *First Jersey*

*Securities* stated:

> if this exception were to be applied in this case, it would likewise
> apply in every case where the NASD contemplated disciplinary
> proceedings. Any company threatened by an NASD hearing could
> run into district court claiming that the imposition of sanctions
> could result in irreparable injury. To allow such interruption would
> frustrate the self-regulatory scheme envisioned by Congress in
> passing the Maloney Act.  Although we recognize that the
> potential for harm exists, we believe that the administrative process
> requires us to reject this justification for intrusion.

*Id.* at 696-97.  *See also, McGinn, Smith & Co. v. FINRA, Inc.*, 786 F. Supp. 2d 139, 147 (D. D.C.

2011) ("Courts have uniformly recognized that 'mere litigation expense, even substantial and

unrecoupable cost, does not constitute irreparable injury,'" *quoting Renegotiation Bd. v.*

*Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S. Ct. 1028 (1974)); *Pyramid Fin. Corp. v. FINRA*,

2010 U.S. Dist. LEXIS 90543 at *9 (dismissing argument that enforcement of net capital rule

will result in immediate closure of business: "Courts have held that SRO action likely to result in

termination of a business cannot constitute irreparable harm."); *Hayden*, 4 F. Supp. 2d 335

(rejecting argument that adverse publicity, cost and time of SRO disciplinary proceeding and

review process constitute irreparable harm); *Browne v. NASD*, 2006 U.S. Dist. LEXIS 35507 at

*21 (N.D. Tex., May 31, 2006); *Peterson  v. NASD*, No. 95-cv-3962-WMN (D. Md. Dec. 27,

1995; *Alton v. NASD*, 1994 U.S. Dist. LEXIS 11312 at *8-9 (N.D. Cal. July 26, 1994).

Likewise, the possibility that Plaintiffs may receive an adverse decision from FINRA, or from the SEC, does not render the administrative review process futile. Even if the SEC does not provide Plaintiffs with the result they seek, "petitioner's statutory and constitutional claims can be meaningfully addressed in the Court of Appeals." *Charles Schwab*, 861 F. Supp. 2d at 1077, *quoting Thunder Basin*, 510 U.S. at 215.

### c. FINRA Administrative Process Provides Effective Relief

Plaintiffs also argue that they cannot obtain effective relief because FINRA hearing panels lack the expertise to determine their authority to adjudicate claims of violations of FINRA rules based on violations of the Securities Act. (Complaint ¶ 18.)

As set forth above, FINRA's expertise in adjudicating securities claims has been recognized by courts. And certainly the expertise of the SEC and the Court of Appeals to interpret the scope of FINRA's jurisdiction under Section 15A of the Exchange Act and the scope of FINRA Rule 2010 cannot be questioned. Indeed, the very purpose of the administrative review process is to allow the SEC and the Court of Appeals to apply their expertise through a single avenue of administrative review, so that the standards applicable to FINRA and those it regulates are consistent and clear.

Finally, Plaintiffs argue that the purposes of exhaustion would not be served in this case. (Complaint ¶ 23.) As the *Hayden* court stated, this case "presents *precisely* the sort of claim Congress intended to subject to the comprehensive enforcement structure created by the Exchange Act." *Id.* at 340. (emphasis added.) In *Krull v. SEC*, 248 F. 3d 907 (9th Cir. 2001), the court held that "Congress granted the Commission broad supervisory responsibility over self-regulatory organizations such as NASD and requires the Commission to approve all rules, policies, practices, and interpretations prior to implementation. Because of the Commission's

expertise in the securities industry, we owe deference to its construction of NASD's Rules of Fair Practice." *Id. at 911-912.*

The case against judicial intervention is even stronger here, where Plaintiffs are challenging only one of the three causes of action in the FINRA Complaint. The other two causes of action are for supervisory violations, which are addressed in NASD Rule 3010. Granting relief to the plaintiffs could result in this case going forward both in the FINRA disciplinary proceeding and in federal court, and deprive the SEC and the Court of Appeals of their right to consider this issue. Granting this relief would also encourage respondents in other FINRA disciplinary proceedings to seek judicial intervention, all in violation of the exclusive review procedure set forth in the Exchange Act.

In addition to allowing the SEC and Courts of Appeals to apply their expertise, the exclusive review procedure has the additional benefit of possibly mooting a judicial controversy, or at least producing "a useful record for subsequent judicial consideration, especially in a complex or technical factual context, or whereas here the underlying issues are particularly within the agency's expertise." *Charles Schwab*, 861 F. Supp. 2d. at 1076 (*quoting Shenandoah v. U.S. Dep't of Interior*, 159 F.3d 708, 713 (2d Cir. 1998)).

### C.     The Complaint Fails to State a Claim Under Rule 12(b)(6)

The Complaint must be dismissed for the additional reason that it fails to state a claim upon which relief can be granted. As set forth in the next section, which FINRA incorporates by reference herein, FINRA has ample authority under Rule 2010 to charge firms and individuals with violations of the Securities Act, and this authority has been affirmed by both the SEC and the Courts of Appeals. Even if the Complaint were not barred by the absence of subject matter jurisdiction, dismissal would be appropriate because FINRA is acting within its regulatory authority.

### D.      Plaintiffs Fail to Meet Requirements for Injunctive Relief

Even apart from the absence of subject matter jurisdiction (which renders Plaintiffs'

motion for injunctive relief moot), Plaintiffs fail to meet the legal requirements for injunctive

relief.

### 1.      Standards in 4th Circuit

This Circuit applies the four-prong standard to preliminary injunctions: Plaintiffs must

demonstrate that (1) they are likely to succeed on the merits; (2) they will likely suffer

irreparable harm absent an injunction; (3) the balance of hardships weighs in their favor; and (4)

the injunction is in the public interest.  *League of Women Voters of N.C. v. North Carolina*, 769

F. 3d 224, 236 (4th Cir. 2014) (*citing Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20

(2008)).

This Circuit also recognizes two different types of injunctions:  prohibitory or mandatory.

"Whereas mandatory injunctions alter the status quo, prohibitory injunctions 'aim to maintain the

status quo and prevent irreparable harm while a lawsuit remains pending.'"  *League of Women*

*Voters*, 769 F.3d at 236 (*quoting Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 1994)).

Mandatory injunctions are disfavored in the law.  *Taylor v. Freeman*, 34 F. 3d 266, 270 n.2 (4th

Cir. 1994).

Plaintiffs in this case seek a mandatory injunction. The status quo here (defined as "the

last uncontested status between the parties which preceded the controversy" (*League of Women*

*Voters*, 769 F.3d at 236 (*quoting Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir.

2012)) is FINRA's ongoing disciplinary proceeding against the Scottsdale Respondents, which

began in May 2015, and is scheduled for hearing starting June 23, 2016.

2.      **Plaintiffs Cannot Prevail on the Merits Because FINRA is Acting within its Regulatory Jurisdiction**

a.      **The Broad Grant of Authority to FINRA**

Under Section 15A(b)(3) of the Exchange Act, FINRA, like other national securities associations, is organized "to enforce compliance by its members and persons associated with its members with . . . the rules of the association."  Section 15A(b)(6) requires that the rules of the associations be designed to, among other things, "promote just and equitable principles of trade" and "protect investors and the public interest."

In accordance with those mandates, FINRA Rule 2010 provides that: "A member, in the conduct of its business, shall observe high standards of commercial honor and just and equitable principles of trade."  *Stephen Grivas*,  Exchange Act Rel. No. 77470, 2016 SEC LEXIS 1173 (March 29, 2016) (FINRA Rule 2010 is "designed to enable [FINRA] to regulate the ethical standards of its members" and "encompass[es] business-related conduct that is inconsistent with just and equitable principles of trade, even if that activity does not involve a security.")(internal citations omitted); *Timothy L. Burkes*, Exchange Act Rel. No. 32142, 1993 SEC LEXIS 949, at *10 n.21 (Apr. 14, 1993) (noting that the predecessor rule to FINRA Rule 2010 "is not limited to rules of legal conduct but rather that it states a broad ethical principle that implements the requirements of Section 15A (b)") (citations omitted), *aff'd*, 29 F.3d 630 (9th Cir. 1994).  FINRA Rule 2010 also applies to persons associated with a FINRA member such as Plaintiffs Hurry, DiBlasi, and Cruz.  FINRA Rule 0140(a).

The SEC has stated that FINRA Rule 2010 articulates a "broad ethical principle."  *DWS Sec. Corp.*, Exchange Act Rel. No. 33193, 1993 SEC LEXIS 3137, at *17 n.28 (Nov. 12, 1993) (citations omitted).  The Rule "sets forth a standard intended to encompass a wide variety of conduct that may operate as an injustice to investors or other participants in the marketplace"

(*Daniel Joseph Alderman*, Exchange Act Rel. No. 35997 1995 SEC LEXIS 1823, at *7 (July 20,

1995), *aff'd*, 104 F.3d 285 (9th Cir. 1997)), and was "designed to enable [FINRA] to regulate the

ethical standards of its members."  *Blair Alexander West*, Exchange Act Rel. No. 74030, 2015

SEC LEXIS 102, at *19 (Jan. 9, 2015) (quoting *Heath v. SEC*, 586 F.3d 122 (2d Cir. 2009)

(discussing NYSE Rule 476, the counterpart to NASD Rule 2110)).  The SEC very recently

reaffirmed its long-standing view on the breadth of FINRA Rule 2010:

> We have repeatedly held that FINRA's disciplinary authority is
> broad enough to encompass business-related conduct that is
> inconsistent with just and equitable principles of trade, even if that
> activity does not involve a security. And as early as 1975, the
> Commission upheld disciplinary action against a person associated
> with a member firm for misconduct related to the sale of insurance
> products, even though that misconduct did not involve securities.

*Keilen Dimone Wiley*, Exchange Act Rel. No. 76558, 2015 SEC LEXIS 4952, at *11 (Dec. 4,

2015) (citations omitted).  Indeed, violations of FINRA Rule 2010 have been sustained where

there is no specific violation of any NASD or FINRA rule, but where there has been unethical

conduct.  *Ernest A. Cipriani*, Exchange Act Rel. No. 33675, 1994 SEC LEXIS 506 (Feb. 24,

1994) (insurance agent misappropriated money from insurance--not securities--customer); *Henry*

*E. Vail*, Exchange Act Rel. No. 35872, 1995 SEC LEXIS 1514 (June 20, 1995) (treasurer of

political club breached his "significant fiduciary obligations" to the club and thereby violated

Conduct Rule 2110 when he misappropriated club funds), *aff'd mem., Vail v. SEC*, 101 F.3d 37,

39 (5th Cir. 1996) ("the SEC has consistently held that the NASD's disciplinary authority is

broad enough to encompass business-related conduct that is inconsistent with just and equitable

principles of trade, even if that activity does not involve a security"); *James A. Goetz*, Exchange

Act Rel. No. 39796, 1998 SEC LEXIS 499 (March 25, 1998) (respondent improperly obtained a

donation for his daughter's private school tuition from his member firm's matching gifts program

by misrepresenting that he had contributed personal funds); *Leonard J. Ialeggio*, Exchange Act

Rel. No. 37910, 1996 SEC LEXIS 3057 (Oct. 31, 1996) (associated person improperly obtained

reimbursement for country club initiation fees from his employer firm), *aff'd mem.*, (9th Cir. May

20, 1999); *William F. Rembert*, Exchange Act Rel. No. 33202, 1993 SEC LEXIS 3146 (Nov. 16,

1993) (respondent cheated employer to increase commissions); *Timothy L. Burkes*, Exchange

Act Rel. No. 32142, 1993 SEC LEXIS 949, at *10 n.21 (Apr. 14, 1993) (representative tried to

persuade back-office employee to credit him commissions), *aff'd mem.*, 29 F.3d 630 (9th Cir.

July 24, 1994); *George R. Beall, Jr.*, Exchange Act Rel. No. 28059, 1990 SEC LEXIS 1121

(May 25, 1990) (respondent passed bad checks to employer).  Thus, it is clear that misconduct

that is not securities-related is prohibited by FINRA Rule 2010 if it occurs in the conduct of the

respondent's business.

> **b.** **Violations of Section 5 of the Securities Act Have Previously Been Held to Constitute Violations of FINRA Rule 2010**

It is axiomatic that investor protection and market integrity require that securities industry

participants abide by applicable securities laws, rules, and regulations, and that violating those

laws and rules is inconsistent with just and equitable principles of trade.  Accordingly, the SEC,

through its *de novo* review of FINRA disciplinary actions, has consistently held that a violation

of Section 5 of the Securities Act also constitutes a violation of FINRA Rule 2010.  *ACAP Fin.,

Inc.*, Exchange Act. Rel. No. 70046, 2013 SEC LEXIS 2156, at *27 (July 26, 2013) ("ACAP

conceded that it engaged in unregistered sales of Greyfield securities in violation of Securities

Act Section 5 and, in so doing, violated NASD Conduct Rule 2110. We find that the record

amply supports ACAP's concessions and accordingly affirm FINRA's finding of violation.")

(citations omitted), *petition denied*, No. 13-9592 (10th Cir. 2015); *Midas Sec., LLC*,  Exchange

Act Rel. No. 66200, 2012 SEC LEXIS 199, at *46 n.63 (Jan. 20, 2012) (citation omitted); *Alvin

W. Gebhart, Jr.*,  Exchange Act. Rel. No. 53136, 2006 SEC LEXIS 1133 at *54 n.75 (Jan. 18,

2006) ("Further, because we have consistently held that a violation of a Commission or [FINRA] rule or regulation is inconsistent with just and equitable principles of trade, we find that the Gebhart's sale of the unregistered [securities] also constitutes a violation of NASD Conduct Rule 2110.") (citations omitted).

In its *Midas* opinion, the SEC could not have expressed its view more clearly: "A violation of Securities Act Section 5 *also violates* NASD Rule 2110." *Midas Sec.*, Exchange Act Rel. No. 66200, 2012 SEC LEXIS 199, at *46 n.63 (Jan. 20, 2012) (citation omitted) (emphasis added). Federal appellate courts have affirmed the imposition of sanctions in such cases. *World Trade Fin. Corp. v. SEC*, 739 F.3d 1243 (9th Cir. 2014); *Kunz v. SEC*, 64 F. App'x 659 (10th Cir. 2003); *Sorrell v. SEC*, 679 F.2d 1323 (9th Cir. 1982).

Further, the SEC has squarely rejected the same jurisdictional argument made here by Plaintiffs, namely, that FINRA lacks authority to find that a violation of federal securities laws not expressly enumerated in Section 15A(b)(2) of the Exchange Act constitutes a violation of FINRA Rule 2010. In *Mgmt. Fin., Inc.*, Exchange Act Rel. No. 12098, 1976 SEC LEXIS 2427 at *20 (Feb. 11, 1976), the applicants, similar to Plaintiffs here, "argue[d] that the NASD had no authority to find that violations of the [Investment Company] Act [of 1940] were also violations of Article III, Sections 1 and 18 of the NASD's Rules of Fair Practice."[9] In rejecting this argument, the SEC held that: "[I]t was appropriate for the NASD to follow its uniform practice of *treating violations of the securities acts and the rules thereunder as violations of Section 1*." *Id.* (citations omitted, emphasis added). This holding applies with equal force to violations of the

---

[9]      Section 1 of the NASD's Rules of Fair Practice preceded FINRA Rule 2010 and, like FINRA Rule 2010, required observance of "high standards of commercial honor and just and equitable principles of trade."

Securities Act, which like the Investment Company Act, is not enumerated in Section 15A(b)(2) of the Exchange Act.

Lastly, finding that a violation of Section 5 also constitutes a violation of FINRA Rule 2010 is consonant with the requirements of Section 15A(b)(6) that FINRA's rules be designed to "protect investors and the public interest" and "promote just and equitable principles of trade." Indeed, the very purpose of the Section 5 registration requirements is to "*protect investors* by promoting full disclosure of information thought necessary to informed investment decisions." *SEC v. Ralston Purina Co.*, 346 U.S. 119, 124 (1953) (emphasis added).  FINRA's enforcement of Section 5 through FINRA Rule 2010 is also consistent with its need to regulate the ethical standards of its members and their associated persons, and thereby promote just and equitable principles of trade.

In sum, by enabling FINRA to discipline its members and their associated persons for unlawfully selling unregistered securities, FINRA Rule 2010 protects investors and the public interest and promotes just and equitable principles of trade.  FINRA is acting well within its regulatory authority in its prosecution of Count I of the underlying FINRA Complaint.

### 3.    Plaintiffs Will Not Suffer Irreparable Harm

"The irreparable harm exception is a very narrow one that is to be applied only in rare circumstances."  *Datek Sec., Inc. v. NASD, Inc.*, 875 F. Supp. 230, 235 (S.D.N.Y. 1995). Requiring Plaintiffs to go through a FINRA disciplinary action, and through the appellate process set forth in FINRA rules and the Exchange Act, does not constitute irreparable harm. *North v. Smarsh*, 2015 U.S. Dist. LEXIS 162551 (D. D.C. Dec. 4, 2015) at *42-43) ("Courts have uniformly recognized that 'mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury," *quoting McGinn, Smith*, 786 F. Supp. 2d at 147); *Charles Schwab*, 861 F. Supp. 2d at 1075, quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41,

51 (1938) ("Obviously the rules requiring exhaustion of the administrative remedy cannot be circumvented by asserting that the charge upon which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage.").

Plaintiffs' argument that this is an "ultra vires" proceeding and that FINRA lacks jurisdiction to prosecute violations of its rules based on Securities Act violations does not overcome the irreparable harm standards.  Plaintiffs' argument may be appropriately raised as a legal defense to one of three charges brought by FINRA, and Plaintiffs have already raised that defense before FINRA.  If Plaintiffs do not prevail in the underlying proceeding and pursue an appeal of any adverse decision, they can make those legal arguments to the NAC, to the SEC and then to the United States Court of Appeals.  And Plaintiffs *concede* that they can obtain federal appellate judicial review of their claim (Complaint ¶ 16)  Therefore, the harm they articulate is that of time and money spent to go through the Exchange Act's exclusive review process. This does not constitute irreparable harm.

### 4.    The Balance of Equities Favor FINRA, Not Plaintiffs

FINRA would suffer greater hardship if the injunction is granted than Plaintiffs will suffer if it is denied.  Plaintiffs' argument—that FINRA is acting outside of its regulatory authority—is capable of repetition by any person or company made the subject of FINRA investigations and disciplinary proceedings.  As the courts have noted, "it would likely apply in every case . . . ." *First Jersey Sec.*, 690 F. 2d at 696-97.  If enjoined, FINRA could neither effectively enforce its rules nor obtain SEC and appellate review and guidance through the exclusive review process intended by Congress.

### 5.        The Public Interest Favors FINRA, Not Plaintiffs

As a national securities association approved by the SEC under Section 15A of the

Exchange Act, the purposes of FINRA's rules are:

> to prevent fraudulent and manipulative acts and practices, to
> promote just and equitable principles of trade, to foster cooperation
> and coordination with persons engaged in regulating, clearing,
> settling, processing information with respect to, and facilitating
> transactions in securities, to remove impediments to and perfect the
> mechanism of a free and open market and a national market
> system, and, in general, to protect investors and the public
> interest. . .

15 U.S.C. § 78o-3(b)(6).

The public interest is best served by FINRA's being able to conduct investigations and

bring disciplinary proceedings under the "comprehensive review process" laid down by

Congress.  FINRA is tasked with enforcing securities laws and regulations, as well as FINRA

rules.  Permitting regulated member securities firms and associated persons like Plaintiffs to

circumvent the process would gut FINRA's ability to enforce the federal securities laws and

protect investors.  If FINRA's claims are wrong, then the Exchange Act's exclusive review

process provides ample opportunities to correct any errors.  For these reasons, courts across the

nation that have considered the issue have rejected attempts to preliminarily enjoin FINRA

disciplinary proceedings.

## IV.     CONCLUSION

For the foregoing reasons, defendant Financial Industry Regulatory Authority, Inc.

requests this Court to grant its Motion to Dismiss, dismiss the Complaint for Injunctive and

Declaratory Relief with prejudice, and deny Plaintiffs' Motion for Preliminary Injunction, and

for such other and further relief as the Court deems appropriate.

DATED:  April 11, 2016

Terri L. Reicher, Bar No. 04029
1735 K Street, N.W.
Washington, D.C.  20006
Telephone: (202) 728-8967
Facsimile: (202) 728-8894
Terri.Reicher@finra.org

By:  _____/s/ Terri L. Reicher____
              Terri L. Reicher

Timothy W. Mountz
*Pro Hac Vice* Pending
1735 K Street, N.W.
Washington, D.C.  20006
Telephone: (202) 728-8210
Facsimile: (202) 728-8894
Timothy.Mountz@finra.org

Attorneys for Defendant,
FINANCIAL INDUSTRY REGULATORY
AUTHORITY, INC.

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RONALD CHARLES PETERSON,          :

   Plaintiff          :

v.          :          Case No. WMN-05-3962
          (Judge Maletz)

NATIONAL ASSOCIATION OF          :
SECURITIES DEALERS, INC.,

         :

   Defendant

         :
    : : : : : : : : : : :

## Memorandum

The petitioner, Ronald Charles Peterson, seeks to enjoin the National Association of Securities Dealers, Inc. ("NASD") from holding an administrative hearing on charges that the petitioner engaged in providing brokerage services in fifteen transactions while not a registered broker. For the reasons set forth below, the complaint will be dismissed for failure to exhaust administrative remedies.

The defendant, NASD, operates as a securities association registered with the Securities and Exchange Commission ("SEC") pursuant to the provisions of 15 U.S.C. §78o-3 for the purpose of providing self-regulation of the over-the-counter securities market. Section 78o-3 gives the NASD the power to discipline members who fail to conform to the standard of conduct established by the organization. "The Act also authorizes the SEC to exercise a significant oversight function over the rules and activities of the registered associations." United States v. National



DEC 29 1995

GENERAL COUNSEL'S OFFICE

_Association of Securities Dealers, Inc._, 422 U.S. 694, 700-01 n. 6 (1975).

The NASD disciplinary process provides for a panoply of procedural safeguards.   Section 78o-3(h) provides that in any disciplinary action brought by a registered securities association, such as NASD, "the association shall bring specific charges, notify **such member or person of, and give him an opportunity to defend** against such charges and keep a record."   By NASD **rules,** disciplinary proceedings begin in front of a District Business Conduct Committee, whose written decision is reviewable by subcommittee of the NASD Board of Governors, which is in turn reviewed by the entire Board.   The Board's ruling can be appealed to the SEC for a _de novo_ review under 15 U.S.C. §78s(d)(2). Finally, "a person aggrieved by a final order of the [SEC] . . . may obtain review of the order in the United States Court of Appeals" by filing a petition for review.   _First Jersey Securities, Inc._ v. _Bergen_, 605 F.2d 690, 694-95 (3rd Cir. 1979).

This court must reject the attempt of the petitioner to bring his administrative proceeding to a halt for lack of due process because of the multiple levels of review which have been statutorily crafted.   "[T]he comprehensiveness of the review procedure suggest that the doctrine of exhaustion of remedies should be applied to prevent circumvention of the established procedures."   _Id_. at 695.  There are two exceptions to the normal requirement of exhaustion: (1) irreparable injury and (2) a clear

2

and unambiguous violation of the Constitution by the agency. Id. at
697.

The petitioner's attempts to show irreparable injury or a
clear violation of the Constitution by the agency process fall far
short of the mark.  The petitioner claims that the mere process of
bringing the charges against him denies him a "fundamental right to
pursue his occupation" and destruction of his commercial
reputation.  However, the right to pursue an occupation has not
been recognized as fundamental since West Coast Hotel v. Parrish,
300 U.S. 379, 391 (1937) (overruling Lochner v. New York, 198 U.S.
45 (1905)).  Moreover,

> There is no constitutional right not to be investigated
> for suspected violation of federal law by an agency
> authorized by Congress to conduct such investigations in
> its discretion, or not to be injured in one's reputation
> or business prospects as a consequence of such an
> investigation. See Federal Trade Comm'n v. Standard Oil
> of California, 449 U.S. 232, 244 (1980); Paul v. Davis,
> 424 U.S. 693, 709-12 (1976).

Hunter v. S.E.C., 879 F. Supp. 494, 501 (E.D.Pa. 1995). See First
Jersey Securities, Inc. v. S.E.C., 553 F. Supp. 205, 211 (D.N.J.
1982) ("Adverse publicity may be an unfortunate consequence of the
enforcement action . . . but such publicity does not warrant the
issuance of an injunction against such proceedings.").  Therefore,
the injury which the petitioner complains of is not cognizable, let
alone irreparable.

The petitioner also contends that the process used by NASD
constitutes a clear violation of due process and equal protection.
First, he claims that the composition of the District Business
Conduct Committee, which includes only members of the NASD,

3

constitutes a bias against non-members such as himself. This precise challenge has been rejected by the courts. First Jersey, 605 F.2d at 698-699; See Republic Industries v. Teamsters Joint Council, 718 F.2d 628, 640 (4th Cir. 1983) ("to forbid tribunals composed of individuals drawn from organizations interested in the matter being regulated on the ground of such interest would deny **the tribunal valuable, and perhaps otherwise unavailable,** expertise").

The petitioner's next claim is that the procedure used by the NASD hearing is constitutionally infirm because of deficient notice provided by NASD of the applicant's registration status and the evidence to be used against him at the hearing and the lack of subpoena power. This claim does not establish the "clear and unambiguous" constitutional violation necessary to avoid the exhaustion requirement, especially in light of the ability of the petitioner to raise these concerns within the administrative process and the multiple levels of review available. First Jersey, 605 F.2d at 697; Hunter, 879 F. Supp at 501; J.W. Gant v. National Ass'n of Securities Dealers, 791 F. Supp. 1022, 1027-28 (D.Del. 1991) (denying injunction where additional procedural safeguard would change "the very nature of the administrative process").

For all the foregoing reasons, the petitioner's motion for temporary restraining order is denied and the complaint is Dismissed.

Date:      December 27, 1995

Herbert N. Maletz
Senior Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RONALD CHARLES PETERSON,           :

      Plaintiff                       :

v.                                 :       Case No. WMN-05-3962
                                           (Judge Maletz)
NATIONAL ASSOCIATION OF            :
SECURITIES DEALERS, INC.,
                                   :

      Defendant                       :

                      : : : : : : : : : : :
                        <u>Order</u>

For the reasons set forth in the accompanying memorandum, the court hereby orders this 27th day of December, 1995:

1) that the complaint be dismissed;

2) that a copy of the memorandum and order be mailed to each of the parties.

_____
Herbert N. Maletz
Senior Judge