# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____

SCOTTSDALE CAPITAL ADVISORS
CORPORATION, *ET AL.*,

     **Plaintiffs,**

v.                                     **Case No.: 16-cv-860-DKC**

FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,

     **Defendant.**

_____

## MEMORANDUM OF LAW OF THE SECURITIES AND EXCHANGE COMMISSION, *AMICUS CURIAE*, IN SUPPORT OF FINRA'S MOTION TO DISMISS

SANKET J. BULSARA
Deputy General Counsel

MICHAEL A. CONLEY
Solicitor

DOMINICK V. FREDA (Bar No. 804977)
Senior Litigation Counsel

JOSEPHINE MORSE (Bar No. 804974)
Counsel

MARTIN V. TOTARO (Bar No. 805020)
Attorney

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C.  20549-9040
(202) 551-5143 (Freda)
FredaD@sec.gov

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION .................................... 1

STATUTORY BACKGROUND ................................................................................................. 2

ARGUMENT ............................................................................................................................. 4

I.      The Exchange Act provides an exclusive avenue for review that plaintiffs may
        not bypass by filing suit in district court .......................................................................... 4

        A.      Under Supreme Court jurisprudence, district court jurisdiction is precluded
                where it is "fairly discernible in the statutory scheme" that Congress intended
                to channel judicial review through the administrative process ................................. 5

        B.      It is "fairly discernible" that Congress intended to channel administrative
                review of FINRA disciplinary sanctions through the Commission, with
                judicial review from an adverse Commission order available exclusively in the
                courts of appeals ................................................................................................... 7

        C.      The proper basis for dismissal is the failure to comply with Congress's
                exclusive review scheme, not the failure to exhaust administrative remedies ...... 10

II.     Plaintiffs' action does not fall outside of this exclusive review scheme .......................... 12

        A.      Plaintiffs can obtain meaningful review of their claims ........................................ 12

        B.      Plaintiffs' suit is not "wholly collateral" to the review scheme ............................. 16

        C.      Plaintiffs' claims fall squarely within the Commission's expertise ........................ 18

CONCLUSION ....................................................................................................................... 19

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bebo v. SEC*,
    799 F.3d 765 (7th Cir. 2015), *cert. denied*, 84 U.S.L.W. 3438 (Mar. 28, 2016) ....... *passim*

*Bennett v. SEC*,
    — F. Supp. 3d. —, 2015 WL 9183445 (D. Md. Dec. 17, 2015) ..................................8, 13

*Charles Schwab & Co. v. FINRA*,
    861 F. Supp. 2d 1063 (N.D. Cal. 2012) ..........................................................................10

*City of Arlington v. FCC*,
    133 S. Ct. 1863 (2013)....................................................................................................18

*CleanTech Innovations v. NASDAQ Stock Mkt., LLC*,
    No. 11-civ-9358, 2012 WL 345902 (S.D.N.Y. Jan. 31, 2012) ..................................10, 13

*Elgin v. Dep't of the Treasury*,
    132 S. Ct. 2126 (2012)............................................................................................ *passim*

*Fed. Trade Comm'n v. Standard Oil Co.*,
    449 U.S. 232 (1980)...................................................................................................15, 16

*First Jersey Sec., Inc. v. Bergen*,
    605 F.2d 690 (3d Cir. 1979).............................................................................................10

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010)................................................................................................ *passim*

*Heath v. SEC*,
    586 F.3d 122 (2d Cir. 2009).........................................................................................2, 19

*Jarkesy v. SEC*,
    803 F.3d 9 (D.C. Cir. 2015) .................................................................................... *passim*

*Mitchell v. Christopher*,
    996 F.2d 375 (D.C. Cir. 1993) .........................................................................................19

*Nat'l Taxpayers Union v. United States Social Security Admin.*,
    376 F.3d 239 (4th Cir. 2004) ....................................................................................5, 6, 13

*North v. Smarsh, Inc.*,
— F. Supp. 3d —, 2015 WL 8023999 (D. D.C. Dec. 4, 2015) .........................................10

*R.H. Johnson & Co. v. SEC*,
198 F.2d 690 (2d Cir. 1952) ..............................................................................11

*Santos-Buch v. FINRA*,
32 F. Supp. 3d 475 (S.D.N.Y. 2014), *aff'd*, 591 F. App'x 32 (2d Cir. 2015) .................10

*Shalala v. Illinois Council on Long Term Care*,
529 U.S. 1 (2000) ..........................................................................................5, 19

*Swirsky v. NASD*,
124 F.3d 59 (1st Cir. 1997) ..............................................................................10

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) ................................................................................. *passim*

*USAA Fed. Sav. Bank v. McLaughlin*,
849 F.2d 1505 (D.C. Cir. 1988) .................................................................16, 18

*Virginia v. United States*,
74 F.3d 517 (4th Cir. 1996) ........................................................................11, 17

*Weinberger v. Salfi*,
422 U.S. 749 (1975) ..........................................................................................5

**Statutes**

Securities Act of 1933, 15 U.S.C. 77a, et seq.

Section 5, 15 U.S.C. 77e ...................................................................................19

Securities Exchange Act of 1934, 15 U.S.C. 78a, et seq.

Section15A-3, 15 U.S.C. 78o-3 .........................................................................2
Section15A-3(b), 15 U.S.C. 78o-3(b) ...............................................................2
Section15A-3(b)(7), 15 U.S.C. 78o-3(b)(7) ...................................................2, 8
Section15A-3(h), 15 U.S.C. 78o-3(h) ...........................................................1, 2, 8
Section 19(b), 15 U.S.C. 78s(b) .........................................................................2
Section 19(c), 15 U.S.C. 78s(c) .........................................................................2
Section 19(d), 15 U.S.C. 78s(d) ......................................................................1, 3
Section 19(e), 15 U.S.C. 78s(e) .........................................................................1
Section 19(e)(1), 15 U.S.C. 78s(e)(1) ................................................................3

Section 19(e)(1)(A), 15 U.S.C. 78s(e)(1)(A) ...................................................................3, 19

Section 19(e)(2), 15 U.S.C. 78s(e)(2) ...........................................................................3

Section 25, 15 U.S.C. 78y ............................................................................................8

Section 25(a), 15 U.S.C. 78y(a) ...........................................................................1, 7, 11

Section 25(a)(1), 15 U.S.C. 78y(a)(1) ............................................................... *passim*

Section 25(a)(2), 15 U.S.C. 78y(a)(2) ...........................................................................7

Section 25(a)(3), 15 U.S.C. 78y(a)(3) ...................................................................1, 4, 9

Section 25(a)(4), 15 U.S.C. 78y(a)(4) .....................................................................4, 7

Section 25(c)(2), 15 U.S.C. 78y(c)(2) ................................................................... 4, 7-8

FINRA Rule 2010 ...............................................................................................1, 2, 17, 19

**Commission Releases**

Exchange Act Release No. 56146 (July 26, 2007), 72 Fed. Reg. 42,190 (Aug. 1, 2007) ...............2

*NASD, Inc.*, Exchange Act Release No. 3700, 1945 WL 26103 (June 11, 1945) ...........................2

## INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION

The Securities and Exchange Commission ("Commission"), the agency principally responsible for the administration and enforcement of the federal securities laws, submits this *amicus curiae* brief to address an important issue concerning the comprehensive exclusive review scheme set forth in the Securities Exchange Act of 1934, 15 U.S.C. §§ 78y(a), 78o-3(h), 78s(d) ("Exchange Act"), that governs the administrative and judicial review of disciplinary proceedings initiated by the Financial Industry Regulatory Authority ("FINRA").  The issue arises in this case because plaintiffs ask this Court to upend Congress's statutory scheme and instead bar FINRA at the outset from continuing the disciplinary proceeding it has initiated against them.

FINRA instituted that disciplinary proceeding to assess the merits of a complaint brought by FINRA's Department of Enforcement alleging that plaintiffs violated FINRA Rule 2010—which requires member firms and associated persons to "observe high standards of commercial honor and just and equitable principles of trade"—by offering and selling unregistered securities.  Under the Exchange Act, those allegations must first be adjudicated by FINRA.  *See* 15 U.S.C. § 78o-3(h).  If FINRA issues a disciplinary sanction, the Commission will upon timely request by plaintiffs (and may on its own initiative) review FINRA's decision.  *See id.* § 78s(d)-(e).  Thereafter, if plaintiffs challenge the Commission's resulting final order, they have a statutory right to appeal to a federal court of appeals, and the "jurisdiction" of the court is "exclusive."  *Id.* § 78y(a)(1), (a)(3).

Plaintiffs attempt to circumvent that process because, they contend, FINRA is acting outside the scope of its authority under the Exchange Act by bringing a disciplinary proceeding in which it alleges that plaintiffs have violated Rule 2010 by engaging in conduct that would constitute a violation of the Securities Act of 1933, 15 U.S.C. § 77a, et seq.  Plaintiffs thus ask this Court to shut down FINRA's

proceedings *before* FINRA has issued its decision on the merits of the disciplinary action against plaintiffs—including any resolution of plaintiffs' argument that FINRA's interpretation of Rule 2010 is impermissible—and *before* the Commission has had an opportunity to review any such determination, let alone has issued a final order subject to judicial review.  But the relief plaintiffs seek in this Court ignores Congress's choice in the Exchange Act to establish a detailed statutory scheme that channels review of disciplinary sanctions issued by self-regulatory organizations first through an administrative process before the Commission and then to a court of appeals.  *See, e.g., Heath v. SEC*, 586 F.3d 122, 130-39 (2d Cir. 2009) (reviewing Commission order sustaining NYSE disciplinary sanction under NYSE's "just and equitable principles of trade" rule).  Congress, by contrast, gave federal district courts no role in that exclusive review scheme.  The Commission has a substantial interest in, and unique insights into, the proper meaning and scope of that scheme.[1]

### STATUTORY BACKGROUND

Congress created an extensive scheme governing the Commission's oversight of self-regulatory organizations, including actions by self-regulatory organizations to discipline their members.  FINRA is a self-regulatory organization created in 2007 through the consolidation of the member firm regulatory functions of the National Association of Securities Dealers ("NASD") and the member firm regulatory and enforcement functions and employees of NYSE Regulation, Inc. ("NYSE").  *See* Exchange Act

---

[1] Because plaintiffs raise substantive arguments before this Court that they are also raising in FINRA disciplinary proceedings subject to review by the Commission, prudential concerns counsel against our taking a position on the merits of those claims before the Commission has had the opportunity to rule on them in the first instance.  That this brief does not address the merits of those claims therefore should not be interpreted as providing the Commission's position as to their validity.

Release No. 56146 (July 26, 2007), 72 Fed. Reg. 42,190 (Aug. 1, 2007).[2]  FINRA is a not-for-profit corporation registered with the Commission as a national association of broker-dealers under the Exchange Act.  15 U.S.C. § 78o-3.  As required by the Act, FINRA has adopted rules to regulate its member firms and their associated persons.  *See id.* § 78o-3(b); *id.* § 78s(b).  The Commission exercises supervision over any proposed change to FINRA's rules and also has the authority to abrogate, add to, and delete from FINRA's rules.  *See id.* § 78s(b), (c).  FINRA is statutorily authorized to initiate disciplinary proceedings against member firms and associated persons for suspected violations of its rules, as it has done with plaintiffs in this case.  *Id.* § 78o-3(b)(7), (h).

The Exchange Act prescribes a comprehensive, multi-tiered process for administrative and judicial review of FINRA's disciplinary proceedings.  The Act specifies that such proceedings are initially adjudicated by FINRA.  15 U.S.C. § 78o-3(h).  Any proceeding in which FINRA issues a "disciplinary sanction" is then subject to Commission review either upon application of an "aggrieved" party to the proceeding or on the Commission's "own motion."  *Id.* § 78s(d).  The Commission must then make an independent determination as to liability, including, among other findings, whether FINRA's determination was in accordance with its rules, and whether those rules are, and were applied in a manner, consistent with the purposes of the Exchange Act.  *Id.* § 78s(e)(1)(A).  The Commission may "affirm the sanction" or "cancel, reduce, or require the remission of [any] sanction," if the Commission determines that the sanction "imposes any burden on competition not necessary or appropriate" or is "excessive or oppressive."  *Id.* § 78s(e)(2).  The Commission may also remand to FINRA for further proceedings.  *Id.* § 78s(e)(1)-(2).  Finally, any party who is aggrieved by a resulting

---

[2] The NASD and NYSE had been subject to the Commission's oversight for decades.  *See, e.g., NASD, Inc.*, Exchange Act Release No. 3700, 1945 WL 26103 (June 11, 1945).

3

final order of the Commission sustaining a FINRA sanction may appeal to a federal court of appeals.  *Id.* § 78y(a)(1).

The judicial review provision of the Exchange Act provides that

> [a] person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

*Id.*  Upon the filing of a petition for review, the court of appeals shall have jurisdiction, which becomes "exclusive" on the filing of the record, "to affirm or modify and enforce or to set aside the order in whole or in part."  *Id.* § 78y(a)(3).  The Exchange Act sets forth a comprehensive process for seeking such review, specifying, for example, what constitutes the agency record, *id.* § 78y(a)(2); the standard of review, *id.* § 78y(a)(4); and the process for seeking a stay of the Commission order either before the Commission or in the court of appeals, *id.* § 78y(c)(2).  There is no provision in the Exchange Act that provides for review of FINRA action or a subsequent Commission order in federal district court.

## ARGUMENT

I.      **The Exchange Act provides an exclusive avenue for review that plaintiffs may not bypass by filing suit in district court.**

Congress has allocated the initial resolution of legal questions arising in FINRA disciplinary proceedings to administrative review by the Commission followed, if necessary, by direct review in a court of appeals.  The Exchange Act's comprehensive and specialized scheme of judicial review leaves no room for parallel district court proceedings such as those plaintiffs have initiated here.

4

A.  **Under Supreme Court jurisprudence, district court jurisdiction is precluded where it is "fairly discernible in the statutory scheme" that Congress intended to channel judicial review through the administrative process.**

The issue raised by plaintiffs' suit—whether a respondent in a FINRA disciplinary proceeding must challenge that proceeding under the specific statutory review procedure Congress established in the Exchange Act or may alternatively bring suit in district court under the general federal-question-jurisdiction statute—is a question of channeling.  *See, e.g.*, *Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1, 13 (2000); *Bebo v. SEC*, 799 F.3d 765, 767 (7th Cir. 2015), *cert. denied*, 84 U.S.L.W. 3438 (Mar. 28, 2016).  And the Supreme Court has explained that channeling judicial review through an agency's administrative process "is not only of unquestionable constitutionality," but "is also manifestly reasonable" because it gives an agency the first opportunity to resolve a plaintiff's objections while still allowing for judicial review at the end of the administrative process.  *Weinberger v. Salfi*, 422 U.S. 749, 762 (1975).

Consistent with that goal, rather than requiring a "heightened standard" or "clear statement from Congress that it intended to foreclose judicial review in any forum," the Supreme Court and numerous courts of appeals have explained that the operative inquiry is "whether it is 'fairly discernible' from the statute that Congress intended the plaintiff[s] to proceed exclusively through the statutory review scheme."  *Bebo*, 799 F.3d at 768-69 & n.1 (quoting *Elgin v. Dep't of the Treasury*, 132 S. Ct. 2126, 2132-33 (2012)); *see also Jarkesy v. SEC*, 803 F.3d 9, 16 (D.C. Cir. 2015) ("[C]ourts determine that Congress intended that a litigant proceed exclusively through a statutory scheme of administrative and judicial review when (i) such intent is 'fairly discernible in the statutory scheme,' and (ii) the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.' ") (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994)); *Nat'l Taxpayers Union v. United*

*States Social Security Admin.*, 376 F.3d 239, 241 (4th Cir. 2004) (In determining "whether Congress intended to preclude initial judicial review" by a district court, a court considers "the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful judicial review." (quotation marks omitted)).

In *Thunder Basin*, for example, the Supreme Court concluded that Congress required the petitioner's challenges to an anticipated enforcement proceeding to be channeled through procedures provided by the Federal Mine Safety and Health Amendments Act of 1977 (the "Mine Act"). 510 U.S. at 202-16. Those procedures routed challenges to agency enforcement proceedings through an administrative review process with judicial review in the court of appeals. *Id.* at 206. Notwithstanding that the Mine Act was "facially silent" about whether the scheme was the exclusive route for pressing "pre-enforcement claims" (*i.e.*, suits brought in advance of any enforcement action by the Department of Labor), the Court held that the Mine Act's "comprehensive enforcement structure" evinced "a 'fairly discernible' intent to preclude district court review." *Id.* at 202, 208, 216. The Court reasoned that the Mine Act provided a "detailed structure" for review of enforcement actions and that the petitioner's claim could be "meaningfully addressed in the Court of Appeals." *Id.* at 207, 215; *see id.* at 208 (Mine Act's structure "demonstrates that Congress intended to preclude challenges such as the present one"). "To uphold the District Court's jurisdiction in these circumstances," the Court held, "would be inimical to the structure and the purposes of the Mine Act." *Id.* at 216.

In *Elgin*, which similarly involved a parallel district court challenge to agency action, the Supreme Court reaffirmed its longstanding view that "the appropriate inquiry is whether it is 'fairly discernible' from the [Civil Service Reform Act ("CSRA")] that Congress intended covered employees appealing covered agency actions to proceed exclusively through the statutory review scheme, even in

cases in which the employees raise constitutional challenges to federal statutes."  132 S. Ct. at 2132-33

(quoting *Thunder Basin*, 510 U.S. at 207).  "To determine whether it is 'fairly discernible' that Congress

precluded district court jurisdiction over petitioners' claims," the Court applied its earlier decisions in

examining the statute's "text, structure, and purpose."  *Id.* at 2133 (citing *Thunder Basin*, 510 U.S. at

207).  The Court concluded that "the CSRA's 'elaborate' framework . . . indicates that extrastatutory

review is not available to those employees to whom the CSRA grants administrative and judicial

review."  *Id.* (emphasis omitted).  Consequently, the Court held that the district court lacked jurisdiction

to hear the employees' challenges.  *Id.*

> **B.**     **It is "fairly discernible" that Congress intended to channel administrative review of FINRA disciplinary sanctions through the Commission, with judicial review from an adverse Commission order available exclusively in the courts of appeals.**

Courts have recognized that the Exchange Act channels review of challenges to Commission

administrative enforcement proceedings through the Commission, with judicial review available

exclusively in the courts of appeals.  The Exchange Act provides a materially indistinguishable scheme

for review of challenges to FINRA disciplinary sanctions.  And for the same reasons identified in the

recent decisions by the D.C. Circuit in *Jarkesy* and the Seventh Circuit in *Bebo*, it is "fairly discernible"

from this administrative and judicial review scheme that Congress intended to preclude district court

challenges—like plaintiffs'—which attempt to circumvent ongoing FINRA disciplinary proceedings and

Commission review.

As the D.C. Circuit explained in *Jarkesy*, the Exchange Act provides a "comprehensive structure

for the adjudication of securities violations in administrative proceedings" that is "nearly identical," 803

F.3d at 16, to the Mine Act's review provisions that the Supreme Court held to be exclusive in *Thunder

Basin*.  Similar to the Mine Act, the Exchange Act grants the Commission the authority to file an

administrative proceeding for potential securities violations, and provides for review in the appropriate "court of appeals" which shall exercise "exclusive" jurisdiction "to affirm or modify and enforce or to set aside such order, in whole or in part." 15 U.S.C. § 78y(a). As in the Mine Act, those review provisions also prescribe a comprehensive process for what constitutes the agency record, *id.* § 78y(a)(2); the standard of review, *id.* § 78y(a)(4); the process for seeking a stay of the Commission order either before the Commission or in the court of appeals, *id.* § 78y(c)(2); as well as the process for seeking to "adduce additional evidence" or for the appellate court to remand for further proceedings before the Commission, as appropriate. *Id.*; *see Jarkesy*, 803 F.3d at 16-17 (comparing the Mine Act's and the Exchange Act's administrative and judicial review provisions). " 'Given the painstaking detail with which' Congress set forth the rules governing the court of appeals' review of Commission action," the D.C. Circuit held, " 'it is fairly discernible that Congress intended to deny [aggrieved respondents] an additional avenue of review in district court.' " *Jarkesy*, 803 F.3d at 17 (quoting *Elgin*, 132 S. Ct. at 2134).

The Seventh Circuit reached the same conclusion in *Bebo* when it rejected similar jurisdictional arguments to those plaintiffs raise, ruling that "[i]t is 'fairly discernible' from the statute that Congress intended plaintiffs in Bebo's position 'to proceed exclusively through the statutory review scheme' set forth" in the federal securities laws. 799 F.3d at 767. The court found "no evidence from the statute's text, structure, and purpose that Congress intended for plaintiffs . . . who are already subject to ongoing administrative enforcement proceedings to be able to stop those proceedings" in a parallel district court action. *Id.* at 775; *see also Bennett v. SEC*, — F. Supp. 3d. —, 2015 WL 9183445, at *2 (D. Md. Dec. 17, 2015) ("[F]ollowing *Bebo* and *Jarkesy*, it appears that Congress's intent to limit district court jurisdiction is fairly discernible.").

The same conclusion follows under the exclusive review scheme that governs FINRA disciplinary proceedings.  As set forth above (*see* pp. 2-4, *supra*), FINRA is statutorily authorized to initiate disciplinary proceedings against its member firms and associated persons, and to initially adjudicate any alleged violations.  15 U.S.C. § 78o-3(b)(7), (h).  A disciplinary sanction imposed by FINRA is then subject to review by the Commission, which applies specified standards of review.  *See id.* § 78s(d), (e).

Section 25 of the Exchange Act—the identical provision that governed judicial review in *Jarkesy* and *Bebo*—vests the courts of appeals with "exclusive" jurisdiction to review a Commission decision sustaining FINRA sanctions.  15 U.S.C. § 78y(a)(1), (a)(3).  It provides that "[a] person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit."  *Id.* § 78y(a)(1).  To obtain review, an aggrieved party must "fil[e] in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part."  *Id.*  Pursuant to the Exchange Act, *the Commission's final order* sustaining a FINRA-imposed sanction—not FINRA's order, and certainly not FINRA's decision to initiate the disciplinary proceeding—is the subject of judicial review by the court of appeals.  *Id.* § 78y(a)(3).

The Exchange Act evinces the same "painstaking detail with which Congress set forth the rules governing the court of appeals' review of Commission action" that led the D.C. Circuit in *Jarkesy* to conclude that "it is fairly discernible that Congress intended to deny [aggrieved respondents] an additional avenue of review in district court."  803 F.3d at 17 (referring to the statutory provisions setting forth the standard of review, the process for seeking a stay of the Commission's order, and the

process for seeking a remand to the Commission to adduce additional evidence—all of which apply

equally to review of a Commission order sustaining a self-regulatory organization's disciplinary

sanction) (quotation marks omitted).  Thus, as in *Jarkesy*, "the securities laws provide an exclusive

avenue for judicial review that [plaintiffs] may not bypass by filing suit in district court."  *Id.* at 30.

C.    **The proper basis for dismissal is the failure to comply with Congress's exclusive review scheme, not the failure to exhaust administrative remedies.**

Courts have long recognized that district courts lack subject matter jurisdiction over a party's

challenge to ongoing FINRA (formerly NASD) disciplinary proceedings.  *See, e.g.*, *Swirsky v. NASD*,

124 F.3d 59, 62-64 (1st Cir. 1997); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 694-96 (3d Cir.

1979); *North v. Smarsh, Inc.*, — F. Supp. 3d —, 2015 WL 8023999, at *12-13 (D.D.C. Dec. 4, 2015);

*Santos-Buch v. FINRA*, 32 F. Supp. 3d 475, 483-85 (S.D.N.Y. 2014), *aff'd*, 591 F. App'x 32 (2d Cir.

2015); *Charles Schwab & Co. v. FINRA*, 861 F. Supp. 2d 1063, 1069-78 (N.D. Cal. 2012); *CleanTech

Innovations v. NASDAQ Stock Mkt., LLC*, No. 11-civ-9358, 2012 WL 345902, at *1 (S.D.N.Y. Jan. 31,

2012).  In many of those cases, however, courts have dismissed the actions based on the "doctrine of

exhaustion of administrative remedies" rather than the failure to follow Congress's exclusive review

scheme.  *Compare Swirsky*, 124 F.3d at 62 (dismissing for lack of subject matter jurisdiction because

"the doctrine of exhaustion of administrative remedies should be applied to prevent circumvention of

established procedures") (quotation marks omitted), *with CleanTech*, 2012 WL 345902, at *1

(dismissing for lack of subject matter jurisdiction because the Exchange Act's "specific and

comprehensive scheme for reviewing disciplinary actions taken by self-regulatory organizations" was

"the 'exclusive route' for obtaining [such] review").

Following *Thunder Basin* and *Elgin*, the Commission believes that the proper basis for dismissal

in those cases (and in this case) is the jurisdictional defect due to the party's failure to adhere to

Congress's exclusive review scheme.  The Supreme Court's decisions in *Thunder Basin* and *Elgin* do not invoke "exhaustion" as a justification for holding that district court jurisdiction was precluded by the statutory review schemes involved there, nor did the Court endeavor to determine whether any recognized exceptions to the doctrine applied in those cases.  Likewise, the D.C. Circuit in *Jarkesy* and the Seventh Circuit in *Bebo* did not rely on plaintiffs' failure to exhaust their administrative remedies in justifying their jurisdictional rulings under the Exchange Act's review scheme.  Rather, those cases all stand for the proposition that a district court lacks subject matter jurisdiction where, as here, a party fails to comply with Congress's exclusive administrative and judicial review scheme.[3]

Failure to exhaust administrative remedies is *not* another way of describing—or an analytical analog for—the failure to follow Congress's exclusive review scheme.  Dismissing a claim for a plaintiff's failure to exhaust suggests that subject matter jurisdiction would lie in this Court if the plaintiffs *did* exhaust their remedies.  But because "[i]t is settled that when Congress has chosen to provide the circuit courts with exclusive jurisdiction over appeals from agency [actions], the district courts are without jurisdiction" to entertain such suits, *Virginia v. United States*, 74 F.3d 517, 523 (4th Cir. 1996) (quotation marks omitted), the Exchange Act's exclusive review scheme precludes that result.  Here, "Section 25(a) of the [Exchange Act, 15 U.S.C. § 78y], which affords the sole basis of any judicial review, refers to a Commission order only."  *R.H. Johnson & Co. v. SEC*, 198 F.2d 690, 694-95 (2d Cir. 1952).  And that provision vests "exclusive" jurisdiction in the courts of appeals, *Jarkesy*, 803 F.3d at 16, not in the district courts.  In other words, this Court will never have jurisdiction to review an adverse

---

[3] Nor did the Supreme Court base its jurisdictional holding in *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010), on any exception to the statutory exhaustion doctrine. Rather, as discussed *infra* Section II, the Court held that plaintiffs' challenge fell outside of the statutory review scheme.  *Id.* at 487, 490.

Commission order sustaining a FINRA disciplinary sanction, let alone over a plaintiff's challenge to FINRA's initiation of disciplinary proceedings.  That is true whether or not plaintiffs exhaust their administrative remedies before FINRA and the Commission.  This Court thus need not examine the contours of the exhaustion doctrine or any potential exceptions to that doctrine (*see* Pl. Mem. 12-15; FINRA Br. 10, 17-21) as a basis for dismissal.

**II.     Plaintiffs' action does not fall outside of this exclusive review scheme.**

Plaintiffs assert that their claims are not "of the type Congress intended to be reviewed within this statutory structure," *Thunder Basin*, 510 U.S. at 212, because, they contend, judicial review following their disciplinary proceeding will not be meaningful and because their claims are wholly collateral to the review provisions of the Act and fall outside of the Commission's area of expertise.  *See Elgin*, 132 S. Ct. at 2136 (court should "presum[e] that Congress does not intend to limit [district court] jurisdiction if 'a finding of preclusion could foreclose all meaningful judicial review'; if the suit is 'wholly collateral to a statute's review provisions'; and if the claims are 'outside the agency's expertise'") (quoting *Free Enterprise*, 561 U.S. at 489).  None of these arguments has merit.

**A.     Plaintiffs can obtain meaningful review of their claims.**

The review scheme does not foreclose all meaningful review of plaintiffs' claims; rather, it ensures it.  Plaintiffs seek "an order and judgment preliminarily and permanently enjoining FINRA from continuing the disciplinary proceeding against Plaintiffs (FINRA Case No. 2014041724601)."  Compl. at 19 (Prayer For Relief).  The object of plaintiffs' suit is thus to set aside the proceeding currently pending before FINRA.  But there is no dispute that if they are ultimately aggrieved by a "final order of the Commission" sustaining a FINRA-imposed sanction, they may immediately seek judicial review of that Commission order pursuant to the jurisdiction-channeling provision in the Exchange Act. 15 U.S.C.

§ 78y; *see* Compl. ¶ 14 ("The Exchange Act states that the disciplinary decisions of self-regulatory organizations like FINRA are subject to review, first by the SEC and then by a federal court of appeals.").

The court of appeals, in turn, can decide whether to grant the relief plaintiffs seek by setting aside any Commission final order issued against them, after considering the claims that are the subject of this suit and any other grounds for appeal that plaintiffs may raise.  As the Seventh Circuit has made clear, the ability to have a claim meaningfully addressed by a court of appeals is the "most critical" factor in determining whether channeling through an exclusive review scheme is appropriate.  *Bebo*, 799 F.3d at 774; *see also Nat'l Taxpayers Union,* 376 F.3d at 244 (plaintiff's claims "must be adjudicated initially under the administrative review scheme established by Congress in the statute" where the administrative process provided "a meaningful opportunity to litigate [plaintiff's] constitutional challenge" and that challenge would reach the court of appeals "at the appropriate time"); *Bennett*, 2015 WL 9183445, at *1 ("Courts weigh the first factor most heavily."); *CleanTech*, 2012 WL 345902, at *2 ("Most importantly . . . should plaintiff disagree with the SEC's ultimate assessment, it can appeal it to the Court of Appeals, where 'any constitutional challenge raised in [the] administrative proceedings will be meaningfully addressed.' ").

Plaintiffs principally rely on *Free Enterprise*, where the Supreme Court considered whether Exchange Act Section 25, 15 U.S.C. § 78y, foreclosed review of an Article II challenge to the Public Company Accounting Oversight Board.  In that case, an accounting firm had sought a declaration that the Accounting Board was unconstitutional on the ground that the "Board's existence" violated the Appointments Clause and the separation of powers.  561 U.S. at 487, 490.  Emphasizing considerations not present here (that are discussed in detail below), the Court concluded that unless petitioners could

proceed in district court, "[w]e do not see how petitioners could meaningfully pursue their constitutional claims." *Free Enterprise*, 561 U.S. at 490. The Court first noted that "Section 78y provides only for judicial review of *Commission* action, and not every Board action is encapsulated in a final Commission order or rule." *Id.* Here, by contrast, there is no dispute that the ongoing disciplinary proceedings, if ultimately adverse to plaintiffs, will result in a "final *Commission* order" appealable to a federal court of appeals. *See Jarkesy*, 803 F.3d at 20 (explaining that "should the Commission's final order run against [Jarkesy], a court of appeals is available to hear those challenges" and that "[t]hus, by contrast to *Free Enterprise*, the SEC scheme presents an entirely 'meaningful' avenue of relief").

The Supreme Court rejected the government's suggestion that there was a meaningful path to judicial review because the firm could generate a reviewable Commission order by seeking Commission review of a Board rule or incurring a sanction. *Free Enterprise*, 561 U.S. at 490. The Court explained that the firm could not properly be required "to select and challenge a Board rule at random" and—in that sense—the firm's challenge "to the Board's existence" was " 'collateral' to any Commission orders or rules from which review might be sought." *Id.* The Court added that "[r]equiring petitioners to select and challenge a Board rule at random" would be "an odd procedure for Congress to choose," and would be especially odd "because only *new* rules, and not existing ones, are subject to challenge." *Id.* The Court next rejected the alternative contention that petitioners could refuse to comply with a Board request and then "raise their claims by appealing a Board sanction," holding that this did not constitute a "meaningful avenue of relief" because courts "normally do not require plaintiffs to bet the farm . . . by taking the violative action before testing the validity of the law." *Id.* at 490-91 (quotation marks omitted).

Unlike the petitioners in *Free Enterprise*, plaintiffs here "do[ ] not need to 'select and challenge a Board rule at random,' " or " 'bet the farm . . . by taking the violative action' before 'testing the validity of the law.' "  *Bebo*, 799 F.3d at 774; *accord Jarkesy*, 803 F.3d at 20 ("To have his claims heard through the agency route, [plaintiff] would not have to erect a Trojan-horse challenge to an SEC rule or 'bet the farm' by subjecting himself to unnecessary sanction under the securities laws.").  Rather, they are already subjects of a FINRA disciplinary proceeding that, if adverse to them, will culminate in a final, appealable Commission order.  Indeed, plaintiffs' challenge in this suit is premised on their claim that FINRA should adopt a narrower interpretation of the very disciplinary rule that is the basis for the disciplinary proceeding against them.  "The oddities that led the Supreme Court to believe that Congress could not possibly have intended the accounting firm to proceed through the administrative route are not present in this case."  *Jarkesy*, 803 F.3d at 20.

Plaintiffs nonetheless argue (Pl. Mem. 11; Compl. ¶ 16) that federal appellate review of any final Commission order will not be meaningful because "belated judicial review" would follow "submission to an unlawful proceeding [that] constitutes the very harm that Plaintiffs seek to avoid."  But it is well established that any burdens of participating in an agency proceeding do not provide a basis for district court jurisdiction.  "Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury," and the "annoyance of litigation is part of the social burden of living under government."  *Fed. Trade Comm'n v. Standard Oil Co.*, 449 U.S. 232, 244 (1980) (quotation marks omitted) (refusing to enjoin enforcement action allegedly inspired by political pressure); *see also Jarkesy*, 803 F.3d at 28 ("The only independent harms Jarkesy will face as a result of his continuing to undergo the Commission proceeding are the burdens abided by any respondent in an enforcement proceeding or any criminal defendant who must wait for vindication.  The judicial system tolerates those

harms, and they are insufficient for us to infer an exception to an otherwise exclusive scheme."); *USAA Fed. Sav. Bank v. McLaughlin*, 849 F.2d 1505, 1510 (D.C. Cir. 1988) ("Where, as here, the 'injury' inflicted on the party seeking review is the burden of going through an agency proceeding, . . . the party must patiently await the denouement of proceedings within the Article II branch.").

There is likewise no merit to plaintiffs' argument (Pl. Mem. 13) that they should be permitted to bypass the Exchange Act's review scheme because they could "succeed on the merits in the FINRA disciplinary proceeding" and their claims "would evade judicial review altogether."  As the D.C. Circuit recently explained, the Supreme Court in *Standard Oil* found that the possibility that the petitioner's claims might be mooted if he prevailed before the agency is a good thing because " 'one of the principal reasons to await the termination of agency proceedings . . . is to obviate all occasion for judicial review.' "  *Jarkesy*, 803 F.3d at 27 (quoting *Standard Oil*, 449 U.S. at 244 n.11).  Here, as in *Standard Oil* and *Jarkesy*, " 'the possibility that [plaintiffs'] challenge may be mooted in adjudication warrants the requirement that [they] pursue adjudication, not shortcut it.' "  *Id.* (quoting *Standard Oil*, 449 U.S. at 244 n.11.).

### B.     Plaintiffs' suit is not "wholly collateral" to the review scheme.

Plaintiffs incorrectly urge (Compl. ¶ 17) that their claims are "wholly collateral to the review provisions in the Exchange Act" because they "contest FINRA's statutory authority to prosecute this specific disciplinary action, not FINRA's interpretation of any particular securities law, its factual findings, or its choice of adjudication forum."  Plaintiffs seek to have the proceeding terminated based on a contrary interpretation of the FINRA rule they are charged with violating—an argument they are simultaneously pressing through the FINRA process as a ground for dismissal of the proceeding.  As such, plaintiffs' suit seeks to achieve the same result that a favorable ruling in the administrative and

judicial review process would give them.  Their suit is thus not "wholly collateral" to the review scheme but, as in *Jarkesy*, is the " 'vehicle by which' [they] seek[ ] to prevail in [their] [disciplinary] proceeding."  *Jarkesy*, 803 F.3d at 23 (quoting *Elgin*, 132 S. Ct. at 2139-40).

Plaintiffs' further contention (Pl. Mem. 9) that their claims are "wholly collateral" because they are bringing a "jurisdictional challenge" also fails.  The text of the Exchange Act contains no exceptions to the review scheme, let alone one based on the *type* of claim at issue.  The Supreme Court, moreover, rejected an analogous argument in *Elgin* where it declined to create an exception to the exclusive review scheme at issue there that would have "carve[d] out for district court adjudication only facial constitutional challenges to statutes," while requiring as-applied challenges to proceed through the scheme.  132 S. Ct. at 2135.  The Court held that the district court lacked jurisdiction over both types of constitutional challenges, *id.* at 2135-37, and declared that "a jurisdictional rule based on the nature of an employee's constitutional claim would deprive the aggrieved employee, the [Merit Systems Protection Board], and the district court of clear guidance about the proper forum for the employee's claims at the outset of the case," *id.* at 2135.  As the D.C. Circuit explained in likewise rejecting a proposed exception to the Exchange Act's exclusive review scheme for facial constitutional challenges, "parsing and categorizing a litigant's claim at the outset can prove highly difficult" and such an approach would both "invit[e] unpredictable litigation at the threshold about whether the particular challenges at issue fall within or without an indistinct category of constitutional claims" and "encourage respondents in administrative enforcement proceedings to frame their challenges . . . in those terms and thereby earn access to another forum in which to advance their arguments."  *Jarkesy*, 803 F.3d at 24-25; *cf. Virginia*, 74 F.3d at 523 (holding that district court lacked jurisdiction over plaintiff's claim because

the Clean Air Act "channels review of final EPA action exclusively to the courts of appeals, *regardless of how the grounds for review are framed*" (emphasis added)).

Those principles apply with equal force here. Though plaintiffs may frame their claims (Pl. Mem. 9) as "jurisdictional challenges, which question the fundamental competency of a forum," they in fact are asking this court to deploy standard tools of statutory construction to narrow the reach of FINRA's disciplinary Rule 2010 to exclude their alleged misconduct. Plaintiffs' proffered distinction between "jurisdictional" and other types of statutory challenges is, like the *Elgin* petitioners' facial/as-applied distinction, "hazy at best and incoherent at worst." 132 S. Ct. at 2135. As the Supreme Court has noted in a case cited by plaintiffs, "the distinction between 'jurisdictional' and 'nonjurisdictional' interpretations is a mirage," for "the question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, whether the agency has stayed within the bounds of its statutory authority." *City of Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013) (emphasis omitted). Regardless, courts have concluded that there is no exception in an otherwise exclusive review scheme even for district court challenges to an agency's authority labeled as "jurisdictional." *See, e.g.*, *Jarkesy*, 803 F.3d at 26 (noting that, in *McLaughlin*, 849 F.2d 1505, the court "dismiss[ed] a bank's pre-enforcement suit claiming that an agency was wrongly asserting jurisdiction over it").

**C.      Plaintiffs' claims fall squarely within the Commission's expertise.**

In alleging that FINRA has acted outside the scope of its authority in bringing disciplinary proceedings against plaintiffs, the claims that plaintiffs bring in their complaint require interpretation of the federal securities laws and FINRA rules—issues that fall within the Commission's expertise and that would therefore benefit from channeling through the administrative process. *See Jarkesy*, 803 F.3d at 29 ("[T]here are precious few cases involving interpretation of statutes authorizing agency action in which

our review is not aided by the agency's statutory construction." (quoting *Mitchell v. Christopher*, 996 F.2d 375, 379 (D.C. Cir. 1993)); *see also Illinois Council*, 529 U.S. at 24 (channeling of claim through agency process appropriate because "[p]roceeding through the agency in this way provides the agency the opportunity to reconsider its policies, interpretations, and regulations in light of [plaintiff's] challenges").

Plaintiffs acknowledge (Pl. Mem. 10) that "[t]he SEC's expertise concerns the substantive provisions of the federal securities laws," but they inexplicably fail to recognize that the interpretation of those laws is squarely implicated by their suit. Plaintiffs claim that FINRA's interpretation of Rule 2010—a rule routinely construed by the Commission in its review of FINRA disciplinary sanctions—as reaching violations of Section 5 of the Securities Act exceeds the scope of FINRA's authority under the Exchange Act. The Commission administers both of those statutes. Indeed, in reviewing FINRA's disciplinary sanctions, the Commission makes an independent determination whether, among other things, FINRA's liability determination decision was consistent with its rules, and whether those rules are, and were applied in a manner, consistent with the purposes of the Exchange Act. 15 U.S.C. § 78s(e)(1)(A); *see, e.g., Heath*, 586 F.3d at 138-39 (affirming Commission order sustaining NYSE disciplinary sanction and deferring to Commission's interpretation of "just and equitable principles of trade" rule). The Commission's interpretive views on those securities-law issues would be beneficial to a reviewing court.

## CONCLUSION

The Court should grant FINRA's motion to dismiss plaintiffs' suit for lack of subject matter jurisdiction.

Respectfully submitted,

SANKET J. BULSARA
Deputy General Counsel

MICHAEL A. CONLEY
Solicitor

/s/ Dominick V. Freda
DOMINICK V. FREDA (Bar No. 804977)
Senior Litigation Counsel

JOSEPHINE MORSE (Bar No. 804974)
Counsel

MARTIN V. TOTARO (Bar No. 805020)
Attorney

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C.  20549-9040
(202) 551-5143 (Freda)
FredaD@sec.gov

April 18, 2016

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2016, I electronically filed the foregoing brief with the

Clerk of the Court for the United States District Court for the District of Maryland by using the

CM/ECF system.  Service on plaintiffs and FINRA was accomplished on the same date through

the CM/ECF system.


/s/ Dominick V. Freda
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C.  20549-9040