**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SCOTTSDALE CAPITAL ADVISORS CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) )   Case No. 8:16-cv-00860-DKC |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION;
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiffs Scottsdale Capital Advisors Corporation ("SCA"), John J. Hurry, Timothy B. DiBlasi, and D. Michael Cruz (collectively "Plaintiffs") respectfully submit this reply brief in support of their motion for preliminary injunction and permanent injunction against the Financial Industry Regulatory Authority ("FINRA" or "Defendant").  This also constitutes Plaintiffs' opposition to FINRA's motion to dismiss.

**INTRODUCTION**

FINRA's joint opposition and motion fails to address the two fundamental points that compel judgment in Plaintiffs' favor: first, the plain and unambiguous text of Sections 15A and 19 of the Securities Exchange Act of 1934 (the "Exchange Act") precludes FINRA from instituting disciplinary proceedings based on alleged violations of the Securities Act of 1933 (the "Securities Act"); and second, the Exchange Act's administrative review scheme poses no bar to Plaintiffs' claims because this scheme presupposes that FINRA had statutory authority to file the underlying charges in the first instance.

On Plaintiffs' first fundamental point -- that FINRA has no statutory authority to bring this disciplinary proceeding -- FINRA does not even to *cite* the provisions of the Exchange Act that define its authority, much less explain the Exchange Act's disparate grants of regulatory power to FINRA and the Securities and Exchange Commission ("SEC"). This is a remarkable omission, as the construction of these provisions—and not, as FINRA and the SEC suggest, FINRA's interpretation of its own rules—is at the core of this case. Further, FINRA continues to rely on case law that Plaintiffs have shown to be inapposite, including a case that FINRA claims "squarely rejected" Plaintiffs' position despite *predating* the statutory amendments at the heart of this dispute.

On Plaintiff's second fundamental point, FINRA, by pointing to several non-meritorious attempts to enjoin FINRA or NASD disciplinary proceedings on inapposite grounds, hopes that the Court will ignore the settled exceptions to the exhaustion doctrine. But Supreme Court precedent makes clear that a challenge to a regulator's statutory authority to even initiate charges under any circumstances is not the type of claim that Congress intended to subject to administrative review. Jurisdiction over Plaintiffs' discrete claim therefore lies in this Court.

Lastly, FINRA distorts the standards for injunctive relief, mischaracterizing the status quo, the nature of the irreparable harm threatened to Plaintiffs, the public's interest in a judicial resolution of this contest, and the equities implicated in an ultra vires agency action.

In short, this Court has jurisdiction and the statutory-construction question presented is not seriously contested. Under any fair reading of the Exchange Act, the imminent FINRA disciplinary proceeding is ultra vires and this Court should therefore award Plaintiffs preliminary and permanent injunctive relief.

## ARGUMENT

I. **Sections 15A and 19 of the Exchange Act Establish that FINRA's Disciplinary Proceeding Is Outside the Agency's Authority, and FINRA Offers No Competing Interpretation of the Statute**

FINRA spends five pages of its brief endeavoring to explain how its authority extends beyond the plain text of the Exchange Act. Conspicuously absent from this discussion is a single citation to the portions of Sections 15A(b), 15A(h), and 19 that define FINRA's disciplinary authority and in clear terms distinguish it from that of the SEC. FINRA's silence on these critical issues is deafening.

A straightforward reading of the Exchange Act establishes beyond question that FINRA's imminent disciplinary proceeding against Plaintiffs is outside the agency's statutory authority. Pls.' Opening Br. 16–24. As explained more fully in Plaintiffs' opening brief, Sections 15A and 19(g) of the Exchange Act provide that the disciplinary authority of self-regulatory organizations ("SROs") like FINRA is limited to the Exchange Act, the rules and regulations issued thereunder, and the SRO's own rules, which must themselves be consistent with the purposes of the Exchange Act. *See* 15 U.S.C. § 78o-3(b)(2), (7), (h)(1)(B); *id.* § 78s(g)(1)(B). By contrast, Section 19(h), which sets forth the disciplinary authority of the SEC, gives that agency *alone* the power to enforce the Securities Act and other specified federal securities laws. *See id.* § 78s(h)(3).[1]

It is impossible to reconcile FINRA's position with the explicit jurisdictional language contained in the Exchange Act. FINRA's response is to erect a straw man, declaring that it can

---

[1] Congress made the SEC's power over the Securities Act exclusive by giving that agency, and that agency alone, the express authority to enforce the Act. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion," *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks omitted).

promulgate its own rules and citing decisions upholding FINRA sanctions against members for unethical conduct unrelated to securities transactions. But those points are not in dispute. Plaintiffs do not challenge FINRA's ability to discipline its members for generic unethical conduct, such as lying and stealing, in connection with their business operations even if that conduct does not involve securities. Indeed, it is at least arguably consistent with Section 15A(b)(6) that FINRA should be empowered to enact a rule that enables it to address generally "unethical" conduct that otherwise would not be subject to securities-industry regulatory oversight.[2] What FINRA cannot do is use its ethical rule to enforce a statute that Congress expressly assigned to the sole purview of another regulator—the SEC.

When Congress amended the Exchange Act in 1975 to add the current Section 19, it specifically designated the securities laws to which FINRA's jurisdiction and the SEC's jurisdiction separately extend. Congress stated, explicitly, that SROs like FINRA have authority to enforce violations of "this title"—the Exchange Act—while the SEC's power encompasses the Securities Act, the Investment Advisors Act of 1940, and the Investment Company Act of 1940, *in addition to* "this title." *See* Securities Acts Amendments of 1975, Pub. L. No. 94-29, sec. 12(2), (4), § 15A(b)(2), (7), (h)(1)(B), 89 Stat. 97, 127–28, 130; *id.* sec. 16, § 19(g)(1)(B), (h)(2)–(3), 89 Stat. at 152–53. In fact, in these amendments, Congress used the phrases "the Securities Act of 1933" and "the securities laws"—a term the Exchange Act defines to include

---

[2] The cases FINRA cites support this interpretation of Section 15A(b)(6), which, unlike FINRA's proffered reading, is anchored by a meaningful limiting principle. *See, e.g., Keilen Dimone Wiley*, Exchange Act Release No. 76558 (Dec. 4, 2015) (converting firm funds); *Blair Alexander West*, Exchange Act Release No. 74030 (Jan. 9, 2015) (misusing customer funds); *Daniel Joseph Alderman*, Exchange Act Release No. 35997 (July 20, 1995) (wrongfully withholding client funds); *Timothy L. Burkes*, Exchange Act Release No. 32142 (Apr. 14, 1993) (converting firm property and falsifying commission-account entries).

the Securities Act, the Exchange Act, and the Investment Company Act of 1940, among other federal laws, 15 U.S.C. § 78c(a)(47)—in numerous provisions *other than* those relating to SROs.[3]  In the subsections relating to FINRA's jurisdiction, Congress opted neither to list the Securities Act by name, as in Section 19(h), nor to use Section 3's inclusive shorthand.  To accept FINRA's position that its general ethical rule, Rule 2010, authorizes it to enforce the Securities Act, would require the Court to defy its unwavering "duty 'to give effect, if possible, to every clause and word of a statute,'" *Duncan v. Walker*, 533 U.S. 167, 174 (2001).[4]

FINRA's position has no logical limiting principle.  Under FINRA's reasoning, SROs functionally have greater authority over broker-dealers than the SEC.  FINRA posits that it has jurisdiction to enforce all securities laws, any law that serves to protect the investing public, and an endless set of broad ethical precepts unrelated to securities transactions.  In other words, FINRA can do whatever it wants, including supplanting the SEC *and then some*.  This cannot be the case.  And, whether the SEC has chosen to acquiesce in such behavior is irrelevant to the intent of Congress.  No rational reading of Sections 15A and 19 of the Exchange Act supports the conclusion that Congress sought to make SROs uber-regulators that could render the SEC superfluous—especially given the general interpretive rule that an administrative agency's powers are strictly construed to grant "only those powers . . . which are conferred either expressly or by necessary implication." *Walker v. Luther*, 830 F.2d 1208, 1211 (2d Cir. 1987).

---

[3] *See, e.g.*, Securities Acts Amendments of 1975, sec. 17(3), § 21(g), 89 Stat. at 155.

[4] Contrary to the SEC's suggestion in its amicus brief, this suit is not "premised on" FINRA's interpretation of Rule 2010. SEC Amicus Br. 15.  FINRA's construction of its own ethical rule is entirely collateral to Plaintiffs' fundamental point: FINRA's enabling legislation, in unequivocal terms, does not authorize FINRA to enforce the Securities Act, whether through disciplinary proceedings or otherwise.  That duty is reserved exclusively to the SEC. Regardless of how FINRA purports to interpret Rule 2010, "this title" cannot possibly be understood to mean "a different title." *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

The fact that FINRA previously has prosecuted disciplinary actions based on violations of Section 5, and those sanctions have been upheld on review, has no bearing on the task before this Court.  At the outset, no reported opinion has addressed the statutory-interpretation question Plaintiffs present here.  As Plaintiffs' opening brief explained, anticipating FINRA's plea to inertia, none of the six cases FINRA cites contains any analysis of the relationship between the narrow text of the Exchange Act and FINRA's expansive view of its own authority.  *See* Pl.'s Opening Br. 21 n.6 (discussing the SEC adjudications in *ACAP Financial*, *Midas Securities*, and *Alvin W. Gebhart, Jr.*, and the federal appellate opinions in *World Trade*, *Kunz*, and *Sorrell*).

Further, even if FINRA could identify a single decision supporting its view in the face of the clear textual limitations in the Exchange Act—and it has not—this Court still would be required to independently discharge its responsibility to discern congressional intent.  As the Supreme Court has observed, "[i]f we are doing our job of reading [a] statute whole, we have to give effect to [its] plain command, even if doing that will reverse the longstanding practice under the statute and the rule."  *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (internal citations omitted).  "A regulation's age is no antidote to clear inconsistency with a statute, and the fact . . . that [the regulation] flies against the plain language of the statutory text exempts courts from any obligation to defer to it."  *Brown v. Gardner*, 513 U.S. 115, 122 (1994).  To the extent that FINRA invokes Congress's purported intent that SROs be empowered to broadly protect investors, *see* Def.'s Br. 27, this intent cannot override the plain text of the statute, *see Germain*, 503 U.S. at 254, and any ostensible gap in enforcement is for Congress, not the courts, to fix, *see, e.g.*, *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157–58 (2008) (observing that Congress passed the PSLRA in part to

override the Court's holding in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994), that Exchange Act § 10(b) did not provide for aiding-and-abetting liability).

In a last-ditch effort, FINRA proclaims that the SEC's 1976 decision in *Management Financial, Inc.* "squarely rejected the same jurisdictional argument made here by Plaintiffs, namely, that FINRA lacks authority to find that a violation of federal securities laws not expressly enumerated in Section 15A(b)(2) of the Exchange Act constitutes a violation of FINRA Rule 2010." Def.'s Br. 26 (citing *Mgmt. Fin., Inc.*, Exchange Act Release No. 12098 (Feb. 11, 1976)). This is misleading for two reasons. First, FINRA misstates Plaintiffs' argument. FINRA lacks authority to bring disciplinary actions premised on violations of the Securities Act not because that statute is *omitted* from Section 15A(b)(2), but rather because the Securities Act is *included* in Section 19(h)'s exclusive grant of disciplinary authority to the SEC. Second, contrary to FINRA's suggestion, there is no indication that the petitioners in *Management Financial* raised this statutory argument, let alone that the SEC "squarely rejected" it. And for good reason: the NASD disciplinary action at issue in that case was initiated in March 1974—more than a year before Congress added Section 19(h) to the Exchange Act.[5] Thus, the SEC could not have considered and rejected Plaintiffs' arguments regarding Section 19(h) of the Exchange Act as that portion of the statute *did not yet exist*. Likewise, FINRA's case summary and corresponding citations omit any reference to the fact that *every decision on*

---

[5] *See Mgmt. Fin., Inc.*, Exchange Act Release No. 12098, at *1 (Feb. 11, 1976) (identifying John Michael Antonius and Robert Raymond Yurich as respondents); FINRA, *BrokerCheck Report: John Michael Antonius (CRD #6451)*, Report No. 81112-50844, at 7–8 (2016) (indicating that the disciplinary action sustained by the SEC in *Management Financial* was initiated in March 1974); FINRA, *BrokerCheck Report: Robert Raymond Yurich (CRD #475451)*, Report No. 73436-20694, at 10–12 (2016) (same).

*which the SEC relied* to approve the NASD's "uniform practice" predates those same 1975 amendments and thus has been superseded by statute.[6]

In sum, this Court writes on a clean slate. It has the power, and the duty, to restrain FINRA from acting outside its statutory authority.[7]

## II.     This Court Has Subject Matter Jurisdiction

### A.     The Court's Jurisdiction Is Unaffected by the Administrative Review Scheme

FINRA's attempt to graft an absolute jurisdictional exhaustion requirement onto the Exchange Act ignores the Supreme Court's reasoning in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), and *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), as well as the established exceptions to exhaustion recognized by the Fourth Circuit and other circuits. To be clear, Plaintiffs do not contend that FINRA disciplinary proceedings premised on allegations within the FINRA's statutory authority should not be subject to the Exchange Act's appellate review scheme. Plaintiffs contend that where, as here, a disciplinary action is premised on allegations that on their face are outside FINRA's statutory authority, both the *Thunder Basin* line of cases and the purposes animating the exhaustion doctrine make clear that administrative review is not required.

As a matter of common sense, the Exchange Act's appellate review scheme presupposes that the relevant charges were within the SRO's statutory authority in the first place. If FINRA

---

[6] *See Mgmt. Fin.*, Exchange Act Release No. 12098, at *7 & n.22 (citing *Barraco & Co.*, 44 S.E.C. 539, 540 (1971); *Valley Forge Sec. Co., Inc.*, 41 S.E.C. 486, 488 (1963); *Joseph Blumenthal*, 41 S.E.C. 133, 136 (1962)).

[7] FINRA's assertion that Plaintiffs' challenge is directed to only one of the three charges levied against them is incorrect. All three of FINRA's charges are facially based on purported violations of the Securities Act: the first charge accuses Plaintiffs of selling unregistered securities *in violation of the Securities Act*; the second charge accuses Plaintiffs of failing to maintain a supervisory system and written supervisory procedures reasonably designed to achieve *compliance with the Securities Act*; and the third charge accuses Plaintiffs of failing adequately to supervise deposits and liquidations of unregistered securities to ensure *compliance with the Securities Act*. Pls.' Opening Br. Ex. B, at 26–41.

lacks authority under its enabling legislation to bring particular charges, it is illogical to presume that a respondent necessarily should be routed through the administrative review scheme reserved for lawfully authorized actions before seeking the protection of the federal judiciary.

The Fourth Circuit, among others, recognizes that exhaustion is not required—and federal courts have jurisdiction to afford immediate relief—where a regulator is acting in contravention of its foundational statute. *See, e.g.*, *Philip Morris, Inc. v. Block*, 755 F.2d 368, 369–70 (4th Cir. 1985) (noting that exhaustion is excused "when an agency acts in 'brazen defiance' of its statutory authorization" (quoting *Mayor & City Council of Balt. v. Mathews*, 562 F.2d 914, 920 (4th Cir. 1977) (en banc), *vacated on other grounds*, 571 F.2d 1273 (4th Cir. 1978) (en banc)); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979) (recognizing an exception to the general requirement of exhaustion when the agency has committed "a clear and unambiguous statutory . . . violation").

FINRA attempts to divert the Court's attention from this well-established exception to exhaustion by citing a litany of cases in which plaintiffs unsuccessfully have sought to enjoin FINRA or NASD proceedings. *See* Def.'s Br. 12–13. The suggestion seems to be that no federal district court challenges to FINRA proceedings are ever permissible. But, as with FINRA's plea to inertia, none of the cited cases question FINRA's statutory authority to bring the underlying charges in the first place. To the contrary, those cases all involve constitutional claims relating to the conduct of the SRO proceedings, challenges to the SRO's interpretation or promulgation of rules, and merits defenses to the SRO's charges—all claims that assume the

SRO's statutory authority over the subject matter of the allegations.[8] That is not the situation here.

As discussed in greater detail in Plaintiffs' opening brief, *Thunder Basin* and its progeny make plain that the Exchange Act's administrative review scheme does not restrict this Court's jurisdiction over the claims asserted here. Rather, each of the factors that trigger the *Thunder Basin–Free Enterprise Fund* presumption of preserved federal subject matter jurisdiction—a legal framework that FINRA subordinates to the Court's fact-bound conclusion in *Thunder Basin*—is present in this case. That *Charles Schwab*, *Pyramid*, and *Hayden* found the *Thunder Basin* presumption inapplicable in the circumstances of those cases is of no moment here, as the analysis is *claim-specific*. *See Free Enter. Fund*, 561 U.S. at 489 (holding that "[p]rovisions for agency review do not restrict judicial review unless the 'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction, and *the claims at issue* 'are of the type Congress intended to be reviewed within th[e] statutory structure,'" and explaining that courts "presume that Congress does not intend to limit jurisdiction if," among other things, "*the claims* are 'outside the agency's expertise'" (emphasis added) (quoting *Thunder Basin*, 510 U.S. at 207, 212–13)). Without belaboring the point, the claim that FINRA lacks jurisdiction to prosecute this disciplinary action is "wholly collateral" to the Exchange Act's administrative review scheme and beyond FINRA and the SEC's relevant expertise, and it can receive no "meaningful judicial

---

[8] *See, e.g.*, *Charles Schwab & Co., Inc. v. FINRA*, 861 F. Supp. 2d 1063 (N.D. Cal. 2012) (challenging a FINRA rule as inconsistent with the Federal Arbitration Act); *Pyramid Fin. Corp. v. FINRA*, No. 10-CV-03797-LHK, 2010 U.S. Dist. LEXIS 90543 (N.D. Cal Aug. 27, 2010) (challenging FINRA's interpretation and application of FINRA Rule 12904 in conjunction with the SEC's Net Capital Rule); *Hayden v. NYSE*, 4 F. Supp. 2d 335 (S.D.N.Y. 1998) (challenging an NYSE enforcement action as barred by the general federal statute of limitations); *Peterson v. NASD*, No. WMN-05-3962 (D. Md. Dec. 27, 1995) (challenging an NASD disciplinary proceeding on constitutional grounds). In the interest of preserving this Court's resources, Plaintiffs decline to list each of the twenty-one inapposite cases cited in FINRA's brief, Def.'s Br. 12–13, focusing instead on the four cases to which FINRA dedicates the most attention.

review" in the administrative system because an ultra vires proceeding cannot be undone. *See id.*; *see also United States v. Members of Estate of Boothby*, 16 F.3d 19, 21 n.1 (1st Cir. 1994) ("[A]n action taken by an agency lacking jurisdiction is a nullity." (citing *Manual Enters. v. Day*, 370 U.S. 478, 499 n.5 (1962))).[9]

As the foregoing demonstrates, the disparate grants of authority to the SEC and SROs in Sections 15A and 19 of the Exchange Act confirm that Congress did not intend for SRO allegations that exceed these express textual limitations to be subject to the Exchange Act's appellate review scheme. To the contrary, Congress manifestly intended that such claims not be prosecuted by SROs in the first instance. Nothing in the statute suggests that Congress desired to limit a broker-dealer's ability to seek relief from a rogue SRO that attempts to assume powers that Congress deliberately declined to confer. Thus, under *Thunder Basin* et al., Plaintiffs' claim is properly raised in this Court.

---

[9] Neither FINRA nor the SEC offers any explanation of how belated review of the FINRA action in a federal court of appeals constitutes "meaning judicial review" of a claim that the proceeding was void ab initio. In fact, the SEC disproves this very proposition when it observes that the Exchange Act provides for judicial review of *only* the Commission's final order—"not FINRA's order, and certainly not FINRA's decision to initiate the disciplinary proceeding." SEC Amicus Br. 9. This appellate structure supplies absolutely no channel of review, much less "meaningful . . . review," for the particular class of claim Plaintiffs raise here. And, to reiterate, *Thunder Basin* and its progeny leave no room for doubt that the proper analysis is claim-specific. *See Free Enter. Fund*, 561 U.S. at 489.

Moreover, just as in FINRA's brief, each of the cases cited by the SEC involves a constitutional or merits challenge, not a challenge to the regulator's very authority to bring the types of charges at issue. *See, e.g.*, *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126 (2012) (challenge to the constitutionality of the statute under which plaintiff was discharged); *FTC v. Std. Oil Co.*, 449 U.S. 232 (1980) (challenge to the merits of, and the motivation behind, the agency's decision to institute charges); *Nat'l Taxpayers Union v. U.S. Soc. Sec. Admin.*, 376 F.3d 239 (4th Cir. 2004) (challenge to the constitutionality of the statute pursuant to which agency threatened enforcement action); *cf., e.g.*, *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015) (statute specifically authorized the type of charges filed but plaintiff argued that the initiation and the conduct of the proceeding violated plaintiff's constitutional rights); *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015) (same). This belies the SEC's supposition that "plaintiffs' suit seeks to achieve the same result that a favorable ruling in the administrative and judicial review process would give them"—a dismissal on the merits or redress for constitutional violations attendant to a proceeding is not equivalent to freedom from the burdens of participating in an ultra vires hearing. And, as Plaintiffs' opening brief explains, the former relief, unlike the latter, is available on appeal. *See* Pl.'s Opening Br. 8–12. The sole case in the SEC's brief that raises a jurisdictional challenge to an agency proceeding—the only such case cited in any submission to date, either before FINRA or before this Court—is inapposite, as it arises under the Administrative Procedure Act and is decided on finality grounds. *See USAA Fed. Sav. Bank v. McLaughlin*, 849 F.2d 1505, 1506 (D.C. Cir. 1988).

## B. In the Alternative, Administrative Exhaustion Would Be Excused

Independent of the *Thunder Basin* presumption, Plaintiffs need not exhaust their administrative remedies for the reasons set forth in their opening brief. If exhaustion is treated as jurisdictional, it nonetheless is excused where, among other circumstances, (1) "an agency acts 'in brazen defiance' of its statutory authorization," *Block*, 755 F.2d at 369–70 (quoting *Mathews*, 562 F.2d at 920), (2) "there is a clear and unambiguous statutory or constitutional violation," *First Jersey Sec.*, 605 F.2d at 696, or (3) the administrative procedure is "inadequate to prevent irreparable injury," *id.*; *accord Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 741 (2d Cir. 1992). Meanwhile, if exhaustion is viewed as prudential, it is not required where, for instance, "(1) the dispute is a matter of statutory construction; (2) the utilization of administrative procedures would cause irreparable injury; [or] (3) the resort to administrative procedures would be futile." *McDonald v. Centra*, Inc., 946 F.2d 1059, 1063 (4th Cir. 1991). Under either conception of exhaustion, the exceptions described above apply here.[10]

First, for the reasons set forth above (Section I), the FINRA disciplinary proceeding plainly is outside the agency's authority under the Exchange Act. Phrased in the operative terms of the case law, FINRA's attempt to enforce the Securities Act despite its textually limited mandate is a "clear and unambiguous statutory . . . violation," *First Jersey Sec.*, 605 F.2d at 696,

---

[10] The SEC avers that the exhaustion doctrine has been entirely supplanted by the *Thunder Basin* framework in this context. SEC Amicus Br. 10–12. This is far from clear. At the outset, although the Court's opinion in *Thunder Basin* was not framed expressly in terms of exhaustion, several of the cases the Court drew on in formulating its now-familiar three-pronged test for preserved federal subject matter jurisdiction were decided explicitly on exhaustion grounds. *See Thunder Basin*, 510 U.S. at 212–13 (citing, *inter alia*, *Heckler v. Ringer*, 466 U.S. 602 (1984), and *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Additionally, in his dissent in *Free Enterprise Fund*, Justice Breyer criticized the majority by emphasizing that "any person similarly regulated by a federal official who is potentially subject to the Court's amorphous new rule will be able to bring an implied private right of action directly under the Constitution" for declaratory and injunctive relief and "need not even first exhaust his administrative remedies." 561 U.S. at 544 (Breyer, J., dissenting). In any event, whether through the lens of *Thunder Basin* or exhaustion, this Court has subject matter jurisdiction to entertain Plaintiffs' claims.

that amounts to an act of "brazen defiance," *Block*, 755 F.2d at 369–70. And, as a corollary, the question here is one of pure statutory construction. *McDonald*, 946 F.2d at 1063.

Second, resort to the administrative procedure will not prevent irreparable injury and, moreover, would be futile. As a preliminary matter, FINRA again mischaracterizes Plaintiffs' position. FINRA avers that the only conceivable harm to Plaintiffs would be the imposition of sanctions, the costs of litigation, and the loss of business; and it floods its brief with a deluge of citations supporting that proposition. Def.'s Br. 18–20. But Plaintiffs' central plea in this case is for relief from the per se irremediable harm of submission to an ultra vires proceeding. Forcing Plaintiffs to participate in an unlawful hearing, and then to appeal through multiple levels of administrative review before reaching a federal court, would cause an injury that logically cannot be undone. *See, e.g.*, *Cont'l Can Co., U.S.A. v. Marshall*, 603 F.2d 590, 597 (7th Cir. 1979) (excusing exhaustion in a challenge to "duplicative" and "harassing" administrative hearings and reasoning that "[i]f [the defendant] is forced to defend the numerous prosecutions on the merits before the Commission prior to seeking a judicial determination that the prosecutions were unwarranted, the injury will have already been complete and uncorrectable"); *Touche Ross & Co. v. SEC*, 609 F.2d 570, 577 (2d Cir. 1979) (excusing exhaustion in a challenge to the SEC's authority to promulgate a rule authorizing disciplinary proceedings against the plaintiffs because, among other reasons, exhaustion would "require [the plaintiffs] to submit to the very procedures which they are attacking"). The futility of administrative appeal follows naturally from the character of the harm threatened to Plaintiffs, as well as from the reality that the FINRA-employed attorneys tasked with adjudicating hearings cannot be expected to interpret the agency's own enabling legislation in a way contrary to decades of unchallenged practice.

Finally, as a prudential matter, requiring exhaustion would not advance the purposes of the doctrine, which include "giving the agency an opportunity to develop a factual record, permitting it to exercise its discretion or to apply its expertise, and promoting efficiency by barring the premature interruption of the administrative process." *Touche Ross*, 609 F.2d at 576. *Touche Ross*—not mentioned in FINRA's brief—is instructive. There, the plaintiffs contested the SEC's statutory authority to promulgate a rule authorizing administrative disciplinary proceedings for violations of the federal securities laws, contending that the legal infirmity of this rule rendered the SEC proceeding pending against them ultra vires. *Id.* at 573. The Second Circuit held that exhaustion was excused with respect to this claim, even though the SEC's authority was "not 'plainly beyond its jurisdiction as a matter of law,'" because "the issue [was] one of purely statutory interpretation" and there was no need to develop a factual record or defer to agency expertise or discretion. *Id.* at 576–77. Additionally, as noted above, the Court acknowledged that exhaustion would "require [the plaintiffs] to submit to the very procedures which they are attacking." *Id.* at 577. So too here.

Plaintiffs raise a question of statutory interpretation that is uniquely appropriate for the federal courts and requires neither agency expertise nor a factual record.[11] Demanding exhaustion thus would only perpetuate the harm Plaintiffs ask this Court to enjoin.

---

[11] The SEC, like FINRA, contends that its expertise in interpreting the federal securities laws and FINRA rules can and should be brought to bear on the question presented in this suit. SEC Amicus Br. 18–19, But, as *Chevron* teaches, an unambiguous statute leaves no room for agency discretion. *See Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 842–43 (1984). This is true even when the statutory provision at issue delineates the agency's jurisdiction, as "the question . . . is always whether the agency has gone beyond what Congress has permitted it to do." *City of Arlington, Tex. v. FCC*, 133 S. Ct. 1863, 1869 (2013). Where, as here, the statutory text is clear—"this title" means "this title," and nothing more—"that is the end of the matter." *Chevron*, 467 U.S. at 842–43; *accord Germain*, 503 U.S. at 254 ("When the words of a statute are unambiguous, . . . this first canon is also the last: 'judicial inquiry is complete.'" (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)).

14

### III.   PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF IS MERITED

#### A.   Plaintiffs Seek a Prohibitory Injunction

As a threshold matter, FINRA attempts to place a heightened burden on Plaintiffs by portraying their application as one for mandatory injunctive relief. Def.'s Br. 22. Yet again, FINRA misconstrues Plaintiffs' position. Plaintiffs make a textbook request for prohibitory injunctive relief, as under the current status quo, the parties are preparing for a hearing that *has not yet occurred*. A prohibitory injunction *maintains* the status quo, whereas a mandatory injunction *alters* the status quo, *e.g.*, *Pashby v. Delia*, 709 F.3d 307, 319–20 (4th Cir. 2013), ordinarily by commanding some positive act, *e.g.*, *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). Plaintiffs here ask the court to restrain FINRA from violating the plain text of its authorizing legislation and to prevent an ultra vires proceeding from taking place, not to compel FINRA to engage in an act it otherwise would not perform. *See Marcas, LLC v. Bd. Of Cty. Comm'rs of St. Mary's Cty.*, 977 F. Supp. 2d 487, 501 (D. Md. 2013) (explaining, in the context of an environmental suit, that "[a] prohibitory injunction restrains a responsible party from further violating" an environmental statute, while "[a] mandatory injunction orders the responsible party to take some action by cleaning up or remediating the hazard"). No amount of mental gymnastics can support the notion that an injunction against an imminent disciplinary hearing would compel FINRA to perform an affirmative act rather than *refraining* from action. Under any fair reading of Plaintiffs' complaint, the injunction here would be prohibitory in nature, and the customary four-prong test applies. *See, e.g.*, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### B. Plaintiffs Have Made the Showing Required to Obtain an Injunction

#### 1. *Plaintiffs Are Correct on the Merits*

For the reasons explained above (Section I), and set forth more fully in Plaintiffs' opening brief, the plain and unambiguous text of the Exchange Act—a topic on which FINRA is silent—establishes beyond dispute that this proceeding is outside FINRA's statutory authority. Therefore, Plaintiffs have made "a 'clear showing' that they are likely to succeed," *Pashby*, 709 F.3d at 321, and, at the hearing before this Court, they will further demonstrate that they are entitled to a judgment in their favor, *see Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 546 n.12 (1986).

#### 2. *Plaintiffs Will Suffer Irreparable Harm Absent an Injunction*

As discussed above (Section II(B)), one of the primary grounds for excusing exhaustion in this case is the irreparable harm that submission to FINRA's threatened ultra vires proceeding would cause Plaintiffs. Compelled participation in a prosecutorial hearing, followed by, if necessary, the multiple levels of administrative review that precede a judicial determination that FINRA lacked the authority to bring the underlying charges, amounts to an injury that is complete and irreparable. *See Cont'l Can Co.*, 603 F.2d at 597; *see also, e.g.*, *Morgan Keegan & Co., Inc. v. Louise Silverman Trust*, No. JFM-11-2533, 2012 WL 113400, at *5 (D. Md. Jan. 12, 2012) (holding that forcing a plaintiff to expend resources that cannot later be recovered to participate in an arbitration that the plaintiff never agreed to is per se irreparable injury). The harm of enduring an ultra vires proceeding cannot be undone after the fact. An appellate court cannot turn back the clock. The harm is complete upon submission to the proceeding. Further,

16

as explained in Plaintiffs' opening brief, Plaintiffs will incur substantial, unquantifiable, and largely unrecoverable expenses regardless of the outcome of the FINRA proceeding.

### 3. *The Balance of the Equities and the Public Interest Favor Plaintiffs*

FINRA's argument on the balance of equities spans a single, conclusory paragraph. Def.'s Br. 28. In FINRA's view, an injunction would impede its operations because "Plaintiffs' argument . . . is capable of repetition by any person or company made the subject of FINRA investigations and disciplinary proceedings." *Id.* For support, FINRA cites a partial quote from *First Jersey Securities* stating that "it"—an unspecified subject—"would likely apply in every case." *Id.* (quoting *First Jersey Sec.*, 690 F.2d at 696–97). Both FINRA's premise and its conclusion are flawed. The quoted text in *First Jersey* addresses the irreparable harm requirement, not the balance of equities, *see* 690 F.2d at 696–97, and controlling case law indicates that the relevant equities do not include merely speculative hardship, such as the theoretical possibility that an unfavorable ruling could create precedent that other parties may exploit, *see, e.g.*, *Winter*, 555 U.S. at 26 (holding that the balance of equities implicated in an injunction against naval training exercises using active sonar "strongly tip in favor of the Navy" where "the most serious possible injury [to the plaintiffs] would be harm to an unknown number of the marine mammals that they study and observe"). And this says nothing about the propriety of considering the "harm" caused by a ruling that, under binding authority, an agency action is ultra vires and must be enjoined. Rather, as discussed in Plaintiffs' opening brief, the relevant equities here favor Plaintiffs, as the proceeding threatens them with irreparable harm, while an injunction simply restricts FINRA to its congressionally authorized role.

As for the public interest, Plaintiffs agree that the public is served by "FINRA's being able to conduct investigations and bring disciplinary proceedings," Def.'s Br. 29, but this is true only when FINRA acts within its statutory authority. Here, FINRA seeks to enforce the Securities Act—a law within the exclusive jurisdiction of the SEC. Viewed in this light, FINRA's admonition that an injunction would "gut [the organization's] authority to enforce the federal securities laws and protect investors," *id.*, rings hollow. FINRA may still enforce the Exchange Act—the sole federal securities law listed in its enabling legislation—and its own rules, while the SEC may continue to enforce the Securities Act, all as the legislature intended. The public interest in protecting investors and "perfecting the mechanism of a free and open market and a national market system," 15 U.S.C. § 78o-3(b)(6), would no more be served by permitting FINRA to police the Securities Act than the public interest in an honest health-care system would be served by permitting the EPA to police health-care fraud. An injunction here would serve only to keep FINRA within the bounds established by Congress.

## CONCLUSION

For the foregoing reasons, and those set forth in Plaintiffs' opening brief, Plaintiffs respectfully request that this Court deny FINRA's motion to dismiss and grant Plaintiffs' motion for preliminary and permanent injunction.

Dated: April 21, 2016                    Respectfully submitted,

/s/ Matthew H. Kirtland

_____
Matthew H. Kirtland (Bar No. 26089)
Kevin Harnisch (admitted *pro hac vice*)
Vijay Rao (admitted *pro hac vice*)
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, D.C. 20001-4501
Telephone: (202) 662-0200
Facsimile: (202) 662-4643
matthew.kirtland@nortonrosefulbright.com

Of Counsel:
Ryan Meltzer
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd., Suite 1100
Austin, TX 78701
Austin, TX 78701

*Attorneys for Plaintiffs Scottsdale Capital Advisors Corporation, John J. Hurry, Timothy B. DiBlasi, and D. Michael Cruz*