1            IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF MARYLAND

3                   SOUTHERN DIVISION

4   SCOTTSDALE CAPITAL ADVISORS    )
    CORPORATION, et al.,           ) CIVIL ACTION
5                                  ) NO. DKC-16-0860
            Plaintiffs,            )
6                                  )
    v.                             )
7                                  )
    FINANCIAL INDUSTRY REGULATORY  )
8   AUTHORITY, INC.,               )
                                   )
9            Defendant.            )

10        TRANSCRIPT OF PROCEEDINGS - MOTIONS HEARING
          BEFORE THE HONORABLE DEBORAH K. CHASANOW,
11           UNITED STATES DISTRICT SENIOR JUDGE
            TUESDAY, APRIL 26, 2016; 9:30 A.M.
12                  GREENBELT, MARYLAND

13  FOR THE PLAINTIFFS:

14              NORTON ROSE FULBRIGHT US, LLP
                BY:  KEVIN J. HARNISCH, ESQUIRE
15              BY:  MATTHEW H. KIRTLAND, ESQUIRE
                BY:  VIJAY RAO, ESQUIRE
16              799 9th Street, N.W.
                Suite 1100
17              Washington, D.C. 20001-4501
                (202) 662-0200
18              kevin.harnisch@nortonrosefulbright.com

19  FOR THE DEFENDANT:

20              FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.
                BY:  TIMOTHY W. MOUNTZ, ESQUIRE
21              BY:  TERRI L. REICHER, ESQUIRE
                1735 K Street, N.W.
22              Washington, D.C.  20006
                (202) 728-8967
23              Terri.Reicher@finra.org

24  OFFICIAL COURT REPORTER:
    Renee A. Ewing, RPR, RMR, CRR - (301) 344-3227
25
       ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***

1   APPEARANCES (Continued):

2   FOR THE SECURITIES AND EXCHANGE COMMISSION:

3           SECURITIES AND EXCHANGE COMMISSION
            BY:  DOMINICK V. FREDA, ESQUIRE
4           BY:  MARTIN V. TOTARO, ESQUIRE
            100 F. Street, N.E.
5           Washington, D.C.  20549-9040
            (202) 551-5143
6           FredaD@sec.gov

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              THE COURT:  Good morning.

2          (Counsel reply, "Good morning, Your Honor.")

3              THE COURT:  Please be seated.

4              THE DEPUTY CLERK:  The matter now pending

5   before the Court is Civil Action No. DKC-16-860,

6   Scottsdale Capital Advisors Corporation, et al. vs.

7   Financial Industry Regulatory Authority, Inc.

8          The matter now comes before the Court for a motions

9   hearing.

10          Counsel, please identify yourselves for the record.

11              MR. HARNISCH:  Kevin Harnisch of Norton Rose

12   Fulbright for the Plaintiffs.

13              MR. MOUNTZ:  Timothy Mountz and Terri Reicher

14   for Defendant FINRA, Your Honor.

15              MR. FREDA:  And Dominick Freda and Martin

16   Totaro for the Securities and Exchange Commission.

17              THE COURT:  Okay.  Very good.  All right.  I

18   have received and read the papers filed by the parties,

19   beginning with, of course, the complaint, plaintiffs'

20   motion for preliminary injunction, the motion to dismiss

21   filed by FINRA, the amicus brief by the SEC, and then

22   the reply from the plaintiffs.

23          Is that everything that I should have received in

24   writing, I hope?  Right?

25              MR. MOUNTZ:  Yes, Your Honor.

1        MR. HARNISCH:  Yes.

2        MR. MOUNTZ:  It is, Your Honor.

3        THE COURT:  Okay.  All right.  Mr. Harnisch.

4        MR. HARNISCH:  Great.  Thank you, Your Honor.

5    This is a case of first impression concerning

6    whether FINRA can enforce alleged violations of, excuse

7    me, violations of the Securities Act of 1933.

8        THE COURT:  Can you tell me what your cause of

9    action is?

10        MR. HARNISCH:  Sure.  Our cause of action is

11    that FINRA, in contravention of its statutory authority,

12    which was given to them in the Securities Exchange Act

13    in 1934, under Sections 15A and 19(g), filed a

14    disciplinary proceeding --

15        THE COURT:  No.  I know the facts and I know

16    what your complaint says.  It's a complaint for the

17    injunctive and declaratory relief.

18        MR. HARNISCH:  Correct.

19        THE COURT:  And I know what the basis for your

20    assertion of jurisdiction is, federal question

21    jurisdiction.  And I am asking in between.  What is the

22    claim?  What right of action, what cause of action are

23    we dealing with here?  Is there a claim?

24        MR. HARNISCH:  Sure.  The cause of action is

25    that FINRA has filed an ultra vires proceeding against

1  our client in contravention of the mandates of the

2  Securities and Exchange Act.

3          THE COURT:  I am not communicating very well.

4      So, you claim to have a statutory cause of action

5  under what provision of the federal code?

6          MR. HARNISCH:  It's a federal question.

7          THE COURT:  Yeah.  Based on what statute?

8          MR. HARNISCH:  Based on -- hang on here.  I

9  don't have my notes right in front of me.  But under --

10  under the provisions of the Exchange Act --

11          THE COURT:  Right.

12          MR. HARNISCH: -- that authorize FINRA to act

13  against our clients and other broker-dealers, it has

14  violated those provisions.

15          THE COURT:  And does that provision give you a

16  private right of action to sue FINRA?

17          MR. HARNISCH:  Well, it certainly gives us a

18  right of action to enjoin to seek an injunction.

19          THE WITNESS:  Well, an injunction is a remedy.

20  It's not a cause of action.  It's like damages.

21          MR. HARNISCH:  Sure.  There have been --

22  certainly, there have been plenty of cases --

23          THE COURT:  All raising constitutional

24  objections, not statutory.

25          MR. HARNISCH:  No.  No.  Not true.

THE COURT: Which one?

MR. HARNISCH: The Second Circuit, *Touche Ross*, the plaintiffs there --

THE COURT: Was it raised as to whether they stated a cause of action?

MR. HARNISCH: I'm sorry?

THE COURT: Was it stated whether they raised a cause of action?

MR. HARNISCH: The cause of action was that a disciplinary proceeding filed against them by the Securities and Exchange Commission alleging that they engaged in improper professional conduct was beyond -- that the rule by which the SEC was proceeding exceeded their authority under the Securities and Exchange Act, and, therefore, plaintiffs in that case sought an injunction prohibiting that disciplinary proceeding initiated by the SEC from going forward, and the Courts permitted that injunctive proceeding.

THE COURT: Is there a Supreme Court case that was not a constitutionally-based claim?

MR. HARNISCH: Off the top of my head, the closest Supreme Court case that comes to mind is *Free Enterprise*, which we briefed, where the -- where the issue there was the plaintiffs in that case said that the Public Company Accounting Oversight Board, it did

1  not have -- well, it was unconstitutional, that it -- it

2  did not have the authority to exist, and so that any

3  claims it was bringing or contemplated to bring, by

4  definition, were improper and could not stand because

5  the agency, itself, could not exist.

6          THE COURT:  All right.  Well, go ahead.  I am

7  not sure I agree that you have stated a cause of action,

8  but even if you have, they challenge whether I have

9  jurisdiction to hear it.

10          MR. HARNISCH:  Well, with the -- with the

11  jurisdiction, Your Honor, under, whether you are looking

12  at principles of exhaustion, which apply within the --

13  within the Fourth Circuit and numerous sister circuits,

14  or whether you are looking at the channelling type of

15  case, cases under *Thunder Basin* and its progeny, it's

16  all very clear that if there is a violation, a clear

17  violation of the statute, that the federal district

18  courts retain jurisdiction to hear challenges to the

19  suit going forward, which is exactly what we are dealing

20  with here.

21          The issue we are dealing with is whether is there a

22  clear -- is there a clear violation of the statute, of

23  the Exchange Act by what FINRA is doing in terms of

24  bringing this disciplinary proceeding?

25          THE COURT:  Okay.  This proceeding involves

1   more than that single charge.  Is that correct?  There

2   are two others?

3          MR. HARNISCH:  Well, the two other charges, as

4   we mention in our reply brief, are also premised upon

5   alleged violations of Section 5, and we can point out

6   the relevant aspects in the complaint where the charges

7   make that clear.  It's all derivative from Section 5.

8          There is the allegation of primary violations of

9   Section 5, and then the failure to supervise allegations

10  are directly premised on Section 5.  And they are

11  alleging failures to supervise to ensure that there was

12  compliance with Section 5, or failure to have controls

13  in place to ensure ongoing compliance with Section 5.

14          THE COURT:  Okay.

15          MR. HARNISCH:  And, so, under the Exchange Act,

16  as we have laid out in our briefs, Congress gave certain

17  distinct, expressed grants of authority to FINRA, to

18  self-regulatory organizations and registered securities

19  associations, which FINRA is -- is both, and to the

20  Securities and Exchange Commission.  FINRA is a creature

21  of statute; therefore, its powers to act are what --

22  based upon what's been expressly granted to them, or

23  arise by necessary implication.

24          In 15A of the Exchange Act, as you have read in the

25  briefs, Congress said that FINRA has the power to

1  prosecute violations against broker-dealers of the

2  Exchange Act and its own rules, the SRO's own rules.

3  The Exchange Act goes on to say that with respect to the

4  SRO's own rules, those rules can't stretch beyond or

5  touch upon Acts, and it goes beyond the purposes of this

6  Act, meaning the Exchange Act.  Of course, that makes

7  perfect sense because a regulator can't pass rules that

8  would effectively give itself authority beyond the scope

9  of its enabling legislation.

10       In contrast to the authority given to

11  self-regulatory organizations like FINRA, in Section

12  19(h), Congress gave authority to the SEC to also

13  prosecute and sanction broker-dealers and their

14  associated persons.  And if you look at how that

15  particular statute gives authority to the SEC to bring

16  those types of sanctions, it not only lists the -- the

17  Exchange Act, it goes on to list a number of the other

18  statutes that comprise the federal securities laws,

19  including the Securities Act, and there are certainly

20  others.

21       So, the grant of authority is very stark.  And, of

22  course, under basic principles of statutory

23  construction, which the Supreme Court has endorsed, one

24  has to presume that when Congress chose to use language

25  in one portion of a statute and used different language

1   or decided not to use similar language in another

2   portion of the statute, there is a reason for doing so.

3   And that must be -- that must be respected.

4        And this isn't a novel issue.  It's not a new

5   issue.  It's not a controversial issue in that there is

6   a similar case that is rather instructive here, we think

7   it's rather instructive, the Second Circuit's case in

8   *Fiero Brothers* dealt with a very similar issue.  In that

9   case, the question was whether a Court could enforce

10  payment of a fine that FINRA had obtained against one of

11  its members.

12       In the *Fiero Brothers* case, the broker-dealer there

13  said, No, FINRA, you cannot seek Court assistance or

14  Court order making us pay these fines to FINRA.

15       FINRA, not surprisingly, said, Well, that can't

16  possibly be the case; that doesn't make any sense.  But

17  what the Second Circuit said is that if you look at the

18  language in the Exchange Act, I think it's Section 27 in

19  that particular case, it said that the SEC -- Congress

20  granted the SEC exclusive authority to go to court to

21  seek enforcement of payment of fines.

22       The Court went on to say, There was no similar

23  grant of authority to FINRA, and, therefore, that

24  silence by Congress must be respected.  It certainly

25  knew how to grant authority.  It had addressed the

1   collection of fines against broker-dealers.  It granted

2   that authority to the SEC, was silent with respect to

3   FINRA; therefore, FINRA did not have the ability to go

4   to court and seek enforcement.  That's the same type of

5   issue that we are dealing with here.

6          Congress explicitly said that with respect to the

7   Securities Act in 1933, it is the SEC that has

8   jurisdiction to sanction broker-dealers and their

9   personnel with respect to violations of the '33 Act.

10          It gave jurisdiction over certain portions of the

11   federal securities laws to FINRA.  It chose not to

12   include the Securities Act of '33 or other portions of

13   the federal securities laws so to essentially hold that

14   FINRA could pass a rule saying we -- we may sanction

15   broker-dealers for unethical conduct, and that gives us

16   license to go into all of the various securities laws,

17   including those that were put in the exclusive -- excuse

18   me -- exclusive jurisdiction of the SEC.  It just makes

19   a complete end run around Congress' explicit delegation

20   of authority as between those two agencies.

21          THE COURT:  Do you wish to address any of the

22   arguments made by the other side?

23          MR. HARNISCH:  Sure.

24          THE COURT:  You don't even mention *Bennett vs.*

25   *SEC*, a recent decision by Judge Grimm of this Court, in

1    your reply.

2          MR. HARNISCH:  We don't mention it and we may

3    not mention it in reply.  We certainly went into it in

4    some detail in our opening brief, but *Bennett*, like some

5    of the other cases that were seeking stays of SEC

6    administrative -- administrative forum actions alleging

7    constitutional violations, it's really fundamentally

8    different from the issue that we are dealing with here

9    for the following reason:  In *Bennett*, in those similar

10   types of cases, the Exchange Act explicitly gives the

11   SEC authority to bring charges in an administrative

12   forum before its administrative law judges.  That part

13   existed in the statute.  There is no question about

14   that.

15          THE COURT:  And their argument was the statute

16   was unconstitutional because of the appointment

17   mechanism.

18          MR. HARNISCH:  Sure.  Their argument was, in

19   this particular case, while there may be authority to

20   file those charges, that filing the charges against

21   those particular defendants raised other constitutional

22   issues, including, in that case and others, that the

23   administrative law judges who were presiding over the

24   hearing were not properly appointed, and, therefore,

25   shouldn't be hearing -- shouldn't be hearing those

1   claims, those particular judges shouldn't be hearing

2   those claims in the first instance.

3        What was never in contention is whether the

4   Exchange Act authorized the SEC to file charges in the

5   administrative forum.

6        Here, this is fundamentally different.  What we

7   point out is that there is no grant of authority here to

8   FINRA to bring the types of charges they have leveled

9   against our clients in the first instance.  They never

10  get out of the gate.

11       In *Bennett* and the similar types of cases, there is

12  authority to file charges.  The question is, as those

13  charges are filed, does that implicate other

14  constitutional or other issues?

15            THE COURT:  Okay.

16            MR. HARNISCH:  This is void -- void in the

17  first instance.  And as various Courts have held, when

18  you are -- when you are dealing with an ultra vires

19  proceeding, that when you are forced to go through that

20  particular hearing, and you can look at *Touche Ross* in

21  the Second Circuit as an example, here in Maryland,

22  District of Maryland, you can look at *Morgan Keegan* as

23  an example, which we put in our brief, *Continental Can*

24  in the Seventh Circuit, but, also, when you are dealing

25  with a case for which there is no authority to file in

1    the first instance, being subjected to go through the

2    hearing and then be forced into that administrative

3    review scheme, that's per se irreparable harm.  You

4    can't turn back the clock.  Being subjected to that --

5    that ultra vires proceeding is a completed harm once you

6    go through the proceeding itself.

7         Now, with respect to -- with respect to the

8    channelling arguments, certainly there is -- there is no

9    question that the Exchange Act has built within it an

10   appellate review scheme for claims that are authorized

11   and properly into the administrative forum in the first

12   instance.  That's certainly not, as we say, what is the

13   case here.

14        Within the *Thunder Basin* line of cases, they do say

15   that the existence of that type of review scheme is not

16   enough to say that all potential claims filed by that

17   particular agency have to be funneled through that

18   review scheme.

19        They say, Federal District Courts retain

20   jurisdiction unless, unless you can demonstrate an

21   intent that the claims at issue, the very claims at

22   issue, claims specific analysis, there needs to be an

23   intent by Congress that the particular claims be

24   funneled through that particular review scheme for the

25   reasons we are discussing with respect to the disparate

1  grants of authority in 15A and 19(h) as between FINRA

2  and the SEC.  Far from finding an intent that Congress

3  meant for all FINRA actions or SRO actions to go through

4  the administrative review scheme.

5       They actually come to the opposite conclusion, that

6  FINRA was very clear in its grant of authority, that

7  when it comes to claims pertaining to the -- excuse me

8  -- pertaining to the Securities Act, that FINRA has no

9  authority to file them in the first instance.

10 Therefore, you can't reconcile that with the notion that

11 somehow Congress must have intended that claims that

12 FINRA has no authority to bring should, nevertheless, be

13 part of the administrative review scheme.

14      And that conclusion is consistent with a long lines

15 of cases, including in the Fourth Circuit, that pertain

16 to exceptions from exhaustion of administrative

17 remedies.

18      What those cases say, through the Fourth Circuit

19 and others, where you are dealing with an issue of

20 statutory construction and the harm of going through the

21 administrative process would be irreparable, then you do

22 have an exception to having to exhaust.

23      Here, we certainly have an issue of statutory

24 construction.  That much is clear.  And as I just

25 mentioned a few moments ago with citing the other

1   specific cases, being forced to endure a proceeding,

2   which is unauthorized or ultra vires in the first

3   instance, is, by definition, irreparable harm that can't

4   be undone.

5        So, we squarely fit within, if we can apply a

6   *Thunder Basin* type of analysis or the traditional

7   exhaustion type of principles, it doesn't really matter

8   in our instance because we fall squarely within those

9   particular exceptions.  So that if you can look at the

10  Exchange Act and reach the conclusion that it's clear

11  that with respect to the grants of authority, there was

12  a reason for limiting -- limiting, in 15A,

13  self-regulatory organizations to the Exchange Act and

14  its rules, and then specifying for the SEC that it gets

15  not only the Exchange Act but the other provisions of

16  the federal securities laws, if you look at that and

17  say, there was a reason Congress did that, then the

18  answer is clear, both for our statutory interpretation

19  question and with respect to the exhaustion-related

20  issues, all of those questions fall into place.  Leaves

21  you jurisdiction to rule on the matter and to enter an

22  order in favor of our clients.

23            THE COURT:  Thank you.

24        Mr. Mountz.

25            MR. MOUNTZ:  May it please the Court, counsel.

1  The Court is absolutely correct to consider the motion

2  to dismiss as the threshold issue in this proceeding.

3  It is a -- it is jurisdictional, and because that motion

4  should be granted, the injunction request becomes moot.

5       Of course, under the law, the plaintiffs have the

6  burden to establish jurisdiction in this Court for the

7  cause of action that they seek to bring.

8       THE COURT:  How would you describe what their

9  cause of action is?

10      MR. MOUNTZ:  Well, Your Honor, I suppose that I

11  would say perhaps it is -- certainly they are seeking a

12  declaratory judgment and -- but the declaratory judgment

13  that they are seeking, as described in paragraph 54 of

14  their complaint, under -- under Section 2201 of the

15  Judicial Code, they seek a declaratory judgment that the

16  disciplinary proceeding that has been brought by FINRA

17  against them may not lawfully continue.

18      But you will see they also ask for a declaratory

19  judgment that FINRA lacks statutory authority under the

20  Exchange Act to bring any disciplinary proceedings

21  against any persons, member, firms, other associated

22  persons, as they say, they describe it, predicated on

23  alleged violations of the Securities Act.

24      So, of course, the -- Your Honor, the cases are

25  legion, that there is no private right of action that

1   can be brought by FINRA members and their associated

2   persons against FINRA.  That is very well established at

3   this point in time.  But just reading the allegations of

4   the complaint, I see -- I see the allegation there

5   seeking fairly broad declaratory judgment, declaratory

6   relief.

7          THE COURT:  I guess my question -- and I don't

8   know that it's going to be critical given where I think

9   I am going -- it says, In a case of actual controversy

10  within its jurisdiction, that's the first phrase, the

11  introductory phrase to the Declaratory Judgment Act,

12  Section 2201, it doesn't create a cause of action.  You

13  have to have an underlying cause of action.

14         MR. MOUNTZ:  Exactly, Your Honor.

15         THE COURT:  And that's what I am grappling with

16  trying to find out.  Now, I have read some of these

17  other cases dealing with constitutional issues and --

18  that there may be a different approach, but this, as I

19  understand it, is a statutory complaint here, not a

20  constitutional.

21         MR. MOUNTZ:  Exactly, Your Honor, although it

22  wouldn't make any difference, I think, under the case

23  law, whether it was statutory or constitutional, perhaps

24  raises some different issues, but I want to address that

25  in a minute.

1    THE COURT:  Well, you do have certain -- there

2 are certain actions under the constitution.  If you

3 claim there is a constitutional violation, there may be

4 a right to bring a claim against whoever is violating

5 the constitution.  I mean, *Bivens* type thing.

6    MR. MOUNTZ:  Agreed.

7    THE COURT:  Which doesn't necessarily exist for

8 a statutory violation.

9    MR. MOUNTZ:  Exactly.  And, of course, here,

10 the Court doesn't even have to consider any

11 constitutional challenge because there isn't any.  That

12 -- that is perfectly clear on the allegations of the

13 complaint and the state of this record.  There is no

14 constitutional challenge that's being -- that's being

15 raised here by these plaintiffs.

16   Your Honor, the facts relating to the underlying

17 proceeding are really completely undisputed.  They are

18 in the papers.  I am not going to go through them in any

19 detail.  But, of course, this does relate to an ongoing,

20 pending FINRA disciplinary proceeding that was filed in

21 May of 2015.  It's currently set for hearing in June of

22 2016.

23   The allegations in that proceeding, Your Honor, are

24 that the plaintiffs violated FINRA rules requiring its

25 members to observe the, quote, highest standards of

1  commercial honor, close quote, and, quote, just and

2  equitable principles of trade, close quote, based on

3  their alleged conduct in selling millions of shares of

4  unregistered penny stock through a Cayman Islands

5  entity.

6       Now, the language that are at issue in the

7  underlying disciplinary proceeding very closely track

8  the statutory language of the Exchange Act and that

9  Section 15A(b)(6) of the Exchange Act.

10      But I think it's an important point, Your Honor,

11  that the plaintiffs say, well, FINRA is acting outside

12  of its statutory authority by regulating conduct

13  pursuant to the Securities Act of 1933.  This proceeding

14  is based on alleged violations of FINRA rules.  And,

15  granted, the underlying predicate conduct relates to the

16  sale of unregistered stock, but this proceeding relates

17  to -- this proceeding relates to the application of

18  FINRA's rules, and as -- and this is an area in which

19  there have been many disciplinary proceedings over the

20  years brought on the basis of the same underlying

21  conduct.  Many of those have gone to the SEC for review

22  as part of the process.  Many of them have ended up in

23  the United States Court of Appeals pursuant to the

24  Exchange Act's exclusive review scheme.

25      So, you know, with all due respect, Your Honor,

1   this is portrayed as such a new and novel issue and a

2   clean slate that the Court is urged to write upon, and,

3   in fact, this is a very well trident path both in terms

4   of the nature of the underlying disciplinary proceeding,

5   the sanctions that are being sought, and the process to

6   which under the Exchange Act that is implicated by this

7   -- by this proceeding.

8        I know the Court is aware of the detailed structure

9   of the administrative and judicial review processes of

10  the Exchange Act.  They are laid out in the briefs and

11  there are lots of cases in this area, and I am not going

12  to go through them step-by-step.  I just want to

13  emphasize a couple of steps in that process that I think

14  are very important here.

15       One is, and -- and this actually, I believe, is

16  perhaps highlighted in the SEC's amicus brief before the

17  Court, but when FINRA's decision is reviewed by the

18  Commission, the SEC makes a de novo determination that

19  FINRA's decision was in accordance with FINRA's rules

20  and whether those rules are or were applied in a manner

21  consistent with the purposes of the Exchange Act.  And

22  that is one of the determinations that the Commission is

23  required to make under the -- under the statute.

24       The next step of the review, of course, is in the

25  Court of Appeals and the judicial review process, and

1  that process, as the Court is aware, in the language of

2  the statute becomes exclusive once the record is filed

3  in the Court of Appeals.

4       Now, as the Court I think is also well aware at

5  this point, there are -- there are, I think, two

6  analytical approaches that the Courts have taken to

7  these types of cases.

8       Traditionally, these types of peremptory

9  challenges, where respondents in underlying disciplinary

10  proceedings or sometimes other agency proceedings have

11  come to court seeking an injunction to stop the

12  proceeding from going forward, traditionally, in our

13  cases, Your Honor, the Courts have analyzed those in

14  terms of exhaustion of administrative remedies.  And

15  there is a long line of cases going back literally

16  decades, which we have cited to the Court, with

17  apologies for the string cites, but the Courts, over

18  time and over history, have typically analyzed that

19  issue and -- and -- where someone seeks to enjoin FINRA

20  or NASD proceedings -- of course, FINRA was the NASD

21  before 2007 -- in that context of exhaustion.

22       Now, other cases, some of the more recent cases,

23  and I suppose kind of going from certainly actually

24  beginning before *Thunder Basin*, but certainly continuing

25  forward from the Supreme Court's decision in *Thunder*

1  *Basin,* have framed the issue as to whether the statutory
2  scheme prevents the District Courts from exercising
3  subject matter jurisdiction.

4       But the approach, Your Honor, under either is
5  exactly the same.  The outcome is identical.  The
6  District Court has no jurisdiction and the proceeding is
7  required to be dismissed.

8       Now, under the Exhaustion Doctrine, the Courts that
9  have considered the comprehensive nature of the review
10 scheme that is set forth in great detail in the Exchange
11 Act, many cases, many federal appellate court cases have
12 held that the Doctrine of Exhaustion should be applied
13 to prevent the circumvention of those procedures.

14      The *Swirsky* case; the *First Jersey* case I suppose
15 was a seminal case, Your Honor, in which mandamus
16 actually was issued by the Circuit Court requiring the
17 District Court to dismiss the case; *Merrill Lynch vs.*
18 *NASD* in the Fifth Circuit; *Peterson* case in this
19 District, the federal courts have, I think it's fair to
20 say, uniformly held that the exclusive review
21 requirements of federal securities laws apply to FINRA
22 and NASD disciplinary proceedings.

23      Now, there are some exceptions to that Doctrine,
24 and there is -- the parties have briefed those
25 exceptions in our filings and so I don't intend to go

1    into those in any real detail, Your Honor -- but I think

2    what is -- the reason being that there is no Court that

3    -- that we are aware of, there is no published opinion

4    by any Court that has ever found that -- that has

5    applied one of those enumerated exceptions, however they

6    are defined, and sometimes it's a little bit of there

7    has been some shifting sand in terms of how the

8    exceptions are defined to actually stay a FINRA

9    disciplinary proceeding, and this case is no different.

10   It involves the interpretation of a FINRA rule.

11        The plaintiff -- the plaintiffs, who are the

12   respondents in that underlying proceeding, have raised a

13   statutory challenge as a defense.  They have already

14   raised it in the FINRA proceeding, presumably.  If they

15   are unsuccessful in that proceeding, in other words, if

16   they are found to have violated the rule and sanctions

17   are imposed at FINRA, then the -- then, presumably, they

18   will also raise that before the SEC and also have the

19   opportunity to raise that before a United States Court

20   of Appeals of their choosing.  Probably not in this

21   district, Your Honor, because it will either be in the

22   District of Columbia district or in the district in

23   which the plaintiffs and respondents reside; of course,

24   none of them reside here in Maryland.

25             THE COURT:  Right.  I understand we are here

1  because of a mistake as to where your headquarters are.

2       MR. MOUNTZ:  That --

3       THE COURT:  Which nobody has challenged venue,

4  so we are here.

5       MR. MOUNTZ:  Correct, Your Honor, and we did

6  not do so.

7       Your Honor, with respect to -- I just also want to

8  briefly address kind of the *Thunder Basin* line of cases

9  because it's interesting to me that the plaintiffs seem

10  to rely so extensively on *Thunder Basin* as if that is an

11  exception to the process, or it yields a different

12  result from.  But, actually, as the Court is well aware,

13  *Thunder Basin* required the plaintiffs in that case to

14  pursue their claims through the administrative process,

15  although they were dealing with a different federal

16  statute.  It wasn't the Securities Exchange Act.  But it

17  was very similar in that it went through an

18  administrative process where a specialized commission,

19  with expertise in mine safety issues, first considered

20  the challenge, and then it would go to a United States

21  Court of Appeals.

22       And -- and the Court, in *Thunder Basin*, found, in

23  fact, I don't think they really had any difficulty

24  finding, that that was -- that the -- the issues in that

25  case, which involved issues of statutory interpretation

1   under the Federal Mine Safety Act, should be addressed

2   through the administrative and judicial review process,

3   and that certainly that was the type of claim that

4   should be addressed through that process.

5         Now, notably, Your Honor, there been several

6   cases that have applied *Thunder Basin* in the context of

7   challenges to NASD or FINRA proceedings, which we have

8   also cited to the Court.  Those are the *Hayden* decision,

9   the -- the -- the *Pyramid Financial* decision.  And --

10  and they have uniformly held that those types of

11  challenges to FINRA proceedings should go through the

12  administrative and judicial review statutory process.

13        So, this is not a *Free Enterprise Fund* case, Your

14  Honor.  In fact, this could not be further from *Free*

15  *Enterprise Fund*.  In that case, Your Honor, the

16  plaintiffs were put in a position where they had to

17  incur a sanction in order to raise the issues they

18  wanted to raise.  As the Court said, they had to deduct

19  the farm, and they had to pick which rule they wanted to

20  challenge out of a process where they couldn't challenge

21  all of them, they just had to challenge one, and they

22  could only challenge new rules, they couldn't challenge

23  existing rules.

24        Here, these plaintiffs are in a pending proceeding.

25  They have raised this challenge in that proceeding, and

1  they have the right to continue to raise that defense to

2  their interpretation of FINRA's rules, and any other

3  defenses they choose to raise, Your Honor, because this

4  issue could become moot by the time it goes through the

5  administrative and possibly even the judicial review

6  process, so -- and that is one of their defenses to the

7  underlying proceeding.

8       So, I realize we are not talking about

9  constitutional claims here, as we were talking about a

10 moment ago, Your Honor, but I want to make it -- I just

11 want to make the point that this could not be further

12 from a *Free Enterprise* Fund type of situation in which

13 the Court did determine that -- that the challengers did

14 not have to go through the statutory process.

15      The -- these are precisely the types of claims that

16 Congress would intend to go through the process.

17      Your Honor, their argument is:  We have no business

18 -- we have no business trying to enforce our rules based

19 on the underlying predicate conduct, and they say that

20 only the SEC has the right to do that, so we are

21 impinging unlawfully on the SEC's authority, presumably,

22 under the plaintiffs' argument.

23      Well, if that is the case, Your Honor, presumably,

24 the views of the SEC -- although, in our view, they have

25 -- the SEC has already spoken on this issue -- there are

1  SEC decisions which affirm FINRA's right to institute
2  these exact same type of proceedings, which we have
3  cited in our briefing.
4       But let's say that this -- let's say there weren't
5  any decisions in this area, Your Honor, well,
6  presumably, this is the sort of thing that the SEC would
7  -- ought to have the opportunity to consider and to --
8  and to issue a decision on, which could then be subject
9  to review by a United States Court of Appeals if there
10 are any bona fide statutory legal challenges that exist
11 at that point.
12      Your Honor, the other case that I mentioned -- that
13 I didn't mention in describing the challenges to FINRA
14 proceedings that have come up since *Thunder Basin* is, of
15 course, the *Schwab* case.  And the -- the larger point
16 here, I think, is that the plaintiffs, in these types of
17 challenges, they always say that FINRA has exceeded its
18 authority in some way, shape, or form.  I mean, with all
19 due respect, that is always the argument.
20      In *Schwab*, they said that FINRA had exceeded its
21 authority because we were trampling on their
22 constitutional rights under Supreme Court decisions
23 involving application of arbitration agreements under
24 the Federal Arbitration Act.  So, there, they said that
25 the Supreme Court authority, we were acting outside of

1  Supreme Court authority.

2      In -- in *Hayden*, they invoked another federal

3  statute of limitations, and they said, well, FINRA is

4  seeking to go back 15 years and this federal statute of

5  limitations only allows -- is a five-year statute, so

6  it's clearly in excess of statutory authority for FINRA

7  to do that.  Again, that -- there was no jurisdiction to

8  that challenge, and the Court -- the case had to go

9  through the administrative review process.

10      In *Pyramid Financial*, the respondent claimed that

11 FINRA's application of the net capital rule exceeded its

12 authority.

13      So, again, with respect, Your Honor, there is not

14 anything about plaintiffs' claims here that are

15 inherently new or novel or -- or unique.  And it is --

16 it is difficult for me to even understand how it can be

17 alleged that an agency or an entity such as FINRA is

18 acting in brazen defiance of some of -- of some

19 statutory authority or committing a clear and

20 unambiguous violation of statutory authority where it is

21 -- where -- where the underlying conduct has been the

22 subject of numerous disciplinary proceedings and a long

23 string of written decisions from the SEC and the Courts

24 of Appeals over the course of quite a number of years.

25      So, for those reasons, Your Honor, and the reasons

1   set forth in our briefing, as well as the SEC's amicus

2   brief, we request that FINRA's motion to dismiss be

3   granted.  FINRA's -- the plaintiffs' defense to FINRA's

4   interpretation of its rules in the underlying proceeding

5   has already been raised in that proceeding, and it can

6   be considered further by the SEC and the Court of

7   Appeals in the statutory review process as was intended

8   by Congress in establishing that process.

9        Thank you, Your Honor.

10       THE COURT:  Thank you.

11       Mr. Freda.

12       MR. FREDA:  Your Honor, thank you again for

13  allowing me to appear today in this matter.

14       I wanted to offer, in light of a very well argued

15  case so far, just a simple solution for the Court and

16  then just one clarification on the exhaustion point, and

17  then I am available for any questions the Court may

18  have.

19       The simple solution, Your Honor, and I can't

20  emphasize this enough, is that plaintiffs' allegations

21  that FINRA is acting ultra vires in this disciplinary

22  proceeding is exactly the type of analysis or the review

23  that Congress invested the Commission with in Section

24  19(e) of the Exchange Act.

25       Section 19(e) states that in a proceeding to review

1  an SRO sanction, the Commission reviews it -- must

2  review, in order to sustain it, must review that the

3  conduct occurred, it violated the SRO's rule, and most

4  importantly, that the rule and its application were

5  consistent with the purposes of the Exchange Act.

6       So, Congress has vested the Commission with the

7  authority to determine precisely the claim that is at

8  issue in this case.  And, so, there is no way that this

9  claim falls outside of the exclusive review scheme.  In

10  fact, it's exactly within the statutory framework.

11      My clarification is that we agree with the results

12  of the body of FINRA case law.  We agree that they have

13  come out in the -- with the right result.  There was no

14  subject matter jurisdiction in those matters.

15      What we wanted to point out is that there is a

16  distinction between exhaustion and an exclusive review

17  scheme.  The way I have always thought about it is

18  exhaustion is about when you can go to court, and the

19  exclusive review scheme is about where is the

20  appropriate court to bring your claim.  And by confusing

21  the two, I think it lends itself to some confusion in

22  the law.

23      There are different exceptions for exhaustion that

24  apply and there is a different framework that governs,

25  and the one that we provide in our brief I believe

1  provides the most simple and most direct way to

2  determine this case.

3       If the Court has no questions for me --

4       THE COURT:  Do you have any comments on what

5  cause of action we are dealing with here?

6       MR. FREDA:  We take no position on whether

7  plaintiffs have stated a cause of action, whether it

8  would arise under a federal statute sufficient that they

9  could utilize the 1331 jurisdiction, federal question

10 jurisdiction.

11      I would say that the -- there is no subject matter

12 jurisdiction because 1331 is precluded by the exercise

13 of the exclusive review scheme through the Exchange Act,

14 through Section 25, vesting exclusive jurisdiction in

15 the Court of Appeals.  So the Court really need not get

16 to that question in our view.

17      THE COURT:  I guess it's hard for a trial court

18 -- I mean, I do, I understand I must always check

19 jurisdiction, subject matter jurisdiction before

20 12(b)(6), but it helps to know what the cause of action

21 is in order to evaluate whether I have subject matter

22 jurisdiction.  That's just sort of the way my mind

23 works.

24      I always, I look at a complaint, that's my text, I

25 start there, and I say, All right, do I have it?  But I

1  need to know what it is that I am being asked to do,

2  and, so, you know, the pleading is important.

3       MR. FREDA:  No, I understand, Your Honor.  And

4  I do understand where you are coming from.  It's just

5  that our -- in our view, it's -- it's irrelevant whether

6  they would have jurisdiction under a 1331 cause of

7  action because it would be subsumed by the Section 25 of

8  the Exchange Act's exclusive grant of jurisdiction to

9  the Court of Appeals.

10       THE COURT:  The way my mind was working is if

11  there is no cause of action --

12       MR. FREDA:  Right.

13       THE COURT:  -- that can be pled, then I don't

14  need to decide if it would be within -- you know, it's

15  cart before the horse and which is the cart?  And that's

16  -- that's where I was -- I --

17       MR. FREDA:  Right.

18       THE COURT:  The cases that sort of prompted

19  some of this thinking are the removal cases where

20  someone sues in the state court claiming they have a

21  state interference with contract or breach of contract

22  or something like that and gets removed to federal

23  court, and they say, not only can't you raise the state

24  cause of action, but there is no federal claim because

25  there is no right, private right of action under

1  whatever it is people are complaining about.

2       And that made me think, then what am I doing?  What

3  is this?  What kind of cause of action is being

4  attempted here?, albeit, obviously, initially here in

5  federal court rather than having been removed.  But we

6  can quibble over that, I suppose.

7       Okay.  Thank you.

8            MR. FREDA:  Thank you, Your Honor.

9            THE COURT:  Mr. Harnisch.

10            MR. HARNISCH:  Thank you, Your Honor.

11       Just -- just a few things I'd like to touch upon in

12  relation to what we just heard over the last few

13  minutes.

14       With respect to the cause of action, just to

15  revisit that a little bit, we do think we fit within the

16  declaratory judgment section of the code.  This is an

17  actual controversy.  FINRA has brought an action against

18  our -- against our clients.  The question is whether

19  they have the legal authority to do so.

20       In the litany of cases that we have heard about and

21  that have been included in our briefs where there have

22  been actions seeking to enjoin disciplinary proceedings,

23  there have been a lot of discussions in the case law

24  about whether they should or should not go forward, but

25  -- but those have not involved raising the question as

1   to whether seeking a declaratory judgment, seeking an

2   injunction was somehow not a proper cause of action.

3        So, in FINRA's briefs citing the litany of cases

4   where they say courts have supported their position,

5   it's not been on those particular grounds.  It's almost

6   taken as a given that seeking the type of relief is a

7   federal question, one that is subject to declaratory

8   judgment that the Court may or may not decide to enter.

9   So, we think that fits squarely with what we are doing

10  here and that you do have the authority -- excuse me --

11  the authority to rule on this.

12       A couple other things I would just like to point

13  out.  We have heard that the SEC and others have

14  squarely considered some of these types of challenges

15  that we have raised here, and I would respectfully say

16  that's -- that's just not true.  No -- no case that we

17  have been able to find, or that the SEC or that FINRA

18  has put in their briefs, has said that this particular

19  question that we are articulating here has been put

20  before a Court for its consideration.

21       So, the -- the fact that perhaps there have been

22  cases that have gone forward where either FINRA, within

23  its review mechanisms, has upheld sanctions at a

24  disciplinary hearing level, or that FINRA has affirmed

25  those sanctions, nobody has ever analyzed the particular

1  issue that we have put before the Court.

2      So the fact that -- that perhaps those types of

3  cases have been affirmed in the past is of no particular

4  moment.  And trying to argue that because nobody has

5  raised this type of question before so no Court has had

6  the opportunity to review it somehow precludes us from

7  raising it now or from you considering it just -- just,

8  one, doesn't make sense, and is inconsistent with the

9  law.

10      And I can just cite to a few things or a few

11  instances where the Supreme Court has made that very

12  point.

13      The Supreme Court, in *Lexecon v. Milberg Weiss*, has

14  said that, The Court's role is to enforce the statute as

15  written even if it reverses the long-standing practice

16  under the statute and any corresponding regulations.

17      The Supreme Court said, in *Brown v. Gardner*, Age is

18  no anecdote to clear inconsistency with the statute.

19      The Supreme Court said, in *Seatrain Lines*, An

20  agency may not bootstrap itself into an area in which it

21  has no jurisdiction by repeatedly violating its

22  statutory mandate.

23      So, the fact that perhaps FINRA has been doing this

24  for some period of time and nobody has raised this

25  challenge is of no particular moment as to the right

1   thing for this Court to do it.

2       One of the other things I will just point out is a

3   case I mentioned earlier, it's in our briefs, it's with

4   respect to *Morgan Keegan*, the *Morgan Keegan* case, where

5   a customer initiated an arbitration against -- I

6   shouldn't say customer -- a plaintiff initiated an

7   arbitration against Morgan Keegan.  Morgan Keegan had no

8   relationship with this particular party, and said,

9   therefore, we have never agreed to arbitrate.

10      Morgan Keegan sought relief from the District of

11  Maryland, saying, You need to enjoin this arbitration

12  from going forward.  We have no relationship with

13  respect to this person, and, therefore, we have never

14  agreed to arbitrate claims with this person.  And the

15  District of Maryland upheld that request for an

16  injunction, noting -- noting that there was no need to

17  go forward with the arbitration; that subjecting Morgan

18  Keegan to go through that proceeding was per se

19  irreparable -- irreparable harm.

20      So, I think there is -- is plenty of authority that

21  supports our position.  The fact that there is a review

22  scheme contrary to what FINRA and the SEC are suggesting

23  does not mean that every conceivable claim that FINRA

24  may bring somehow must go through that review scheme.

25      That review scheme only applies, as we say in our

1  papers, if the claim -- there is authority to bring the

2  claim in the first instance.  That review scheme

3  presupposes that FINRA or the self-regulatory

4  organization at issue is acting within its statutory

5  authority.

6       With -- with all due respect to my colleagues at --

7  at FINRA, going through various cases where the Courts

8  have denied requests for an injunctive action, whether

9  it's respect to *Schwab* or *Hayden* or some of the other --

10 some of the other cases mentioned there, they do not and

11 did not involve this question as to whether FINRA had

12 authority in the first instance.  So, we have said,

13 FINRA's grant of authority, and they could only act

14 pursuant to expressed acts of authority, is limited to

15 the Exchange Act and its rules, which can't go further

16 than the Exchange Act.

17      So, the -- the fact that nobody has ever called

18 them on it before is of no particular moment.  And the

19 cases they mentioned, none of those issues about the

20 authority to act and file in the first instance was at

21 issue.

22      *Hayden*, as you heard, had to do with an argument as

23 to whether the FINRA -- whether you could incorporate

24 the federal five-year statute of limitations.  There is

25 no particular rule.  That's a defense to the conduct

1  that's been alleged.  There is no allegation as to

2  whether FINRA had the authority to issue the types of

3  charges in that particular case.

4       With respect to *Schwab*, what you heard about in

5  there, if you read through that opinion, there is

6  actually a dispute as to whether the -- the rule at

7  issue, as you interpret it, could reach to class action

8  waivers.  There wasn't an issue as to, you know, whether

9  there was a rule in place or FINRA had the authority to

10 prosecute actions based upon that rule.

11      Instead, it's a challenge about the contours of

12 that rule, given the particular circumstances of that

13 case, and what that meant and whether certain

14 interpretations might ultimately conflict with the

15 Federal Arbitration Act.

16      The same thing with *Pyramid*, with respect to those

17 rules there, as to how that would apply to the net

18 capital scheme.  Those are all unique to the particular

19 circumstances in those cases and don't address what is

20 the core fundamental issue, that, was there, is there

21 authority to act in the first instance?  Does FINRA even

22 get out of the gate?  And given the disparate grants of

23 authority to the SEC and to FINRA, we say no.

24      FINRA, in its briefs, doesn't even take issue with

25 -- with how we have laid out the disparate grants of

1    authority in 19(h) and 15A.

2         Instead, it's this reflexive action:  Hey, when

3    there have been challenges before, we have been

4    permitted to go forward even though nobody has raised

5    this argument.  That ought to give you pause for

6    concern.

7         So, we think that if you look at the expressed

8    grants of authority, the only reasonable way to look at

9    that is Congress had a reason for doing what it did;

10   that they -- that you must presume, a Court must presume

11   that Congress, in using certain types of language for

12   the authority being granted to FINRA, in a different

13   set, and, frankly, more expansive set of statutes given

14   to FINRA -- I'm sorry, given to the SEC to do the same

15   type of thing, that's a distinction with a difference,

16   and would point you back to *Fiero Brothers* in the Second

17   Circuit that said exactly the same thing.

18        Thank you.

19             MR. MOUNTZ:  Your Honor, may I just make one

20   point?

21             THE COURT:  All right.

22             MR. MOUNTZ:  I believe that most of the issues

23   addressed by Mr. Harnisch have been addressed in the

24   briefs.  I don't intend to address those.

25        There is just one matter that I did want to

1  mention, and that is his reliance on Judge Motz's

2  opinion in the *Morgan Keegan* case.

3      The *Morgan Keegan* case, Your Honor, is an

4  arbitration case, and there is a -- of course, it's

5  fundamental under the law that a party cannot be

6  compelled to arbitrate a dispute unless they have agreed

7  to arbitrate.  And *Morgan Keegan* was taking -- took the

8  position that it had not agreed to arbitrate with the

9  third party that was seeking to compel it to arbitrate

10 in that case.  So -- so -- and because the Court found

11 that there was no contract, it did enter an injunction

12 providing that it did not -- Morgan Stanley (sic) did

13 not have to submit to arbitration in that case.

14     It has nothing to do, Your Honor, with the

15 exclusive review process under the Securities Exchange

16 Act.  I just wanted -- I just wanted to make that --

17 that clear.

18     I think the other points have been adequately

19 addressed in the parties' briefing.

20     Thank you, Your Honor.

21         THE COURT:  Any other final words?

22         MR. HARNISCH:  If I may?

23         THE COURT:  Go ahead.

24         MR. HARNISCH:  The only point I would make in

25 rebuttal to that is the plaintiffs are members of FINRA.

1  Of course, that, what they have agreed to is FINRA

2  potentially bringing actions that they are authorized to

3  bring in the first instance.

4       Nobody could look at the agreement with FINRA,

5  becoming a FINRA member, where, somehow, we have agreed

6  for FINRA to do anything beyond the bounds of its

7  statutory authority.  If they wanted to start handing

8  out littering tickets when it sees a broker on the

9  sidewalk on the way to a meeting to say, You have now

10 violated littering laws and have acted unethically, I

11 don't think anybody would be saying that that's

12 something that they have agreed to; nor have -- have our

13 clients agreed to submit the claims, the one expresser

14 causes of action expressly granted to FINRA in the

15 Exchange Act.

16       Thank you.

17          THE COURT:  All right.  I intend to dismiss the

18 plaintiffs' complaint, and, obviously, deny the request

19 for preliminary injunctive relief.

20       The question I think is squarely whether the

21 Exchange Act provides an exclusive avenue for review,

22 and that plaintiffs may not come to this Court as an end

23 run against the process that is underway.

24       Plaintiffs are the respondents, the subjects of an

25 ongoing disciplinary proceeding brought by FINRA under

its rules.  The question that plaintiffs here want to
raise has been raised expressly in that proceeding, and,
that is, whether some or all of the allegations of
misconduct arise under only the Securities Act and are
beyond the authority of FINRA to attempt to enforce?

The administrative scheme would entail further
hearings before FINRA if dissatisfied with that result.
SEC follows on, and must, for itself, decide the
question, if raised, or maybe even sua sponte, whether
what FINRA did was beyond their authority.

A party dissatisfied with that result then obtains
review in the appropriate Court of Appeals of the
circuit either in the District of Columbia or where the
respondent resides.

I, because of the speed with which we were planning
to come into court, I was reading papers as they came in
rather than as is perhaps more typical, waiting until
they are all briefed and then having them to read all at
once.  And when I have that luxury, I often start with
the reply and work my way backwards the first time
through because that gives me a better clue as to what's
really at issue.

Obviously, I didn't do that here, but I read the
plaintiffs' and then the motion to dismiss, and I kept
thinking, There is something wrong with calling this a

1    problem of exhaustion of administrative remedies.

2        Then I got the SEC amicus, and I said, Good, I am

3    not the first one who has said there is just something

4    not quite feeling right with calling this exhaustion.

5        We deal with exhaustion of administrative remedies

6    when ultimately we are the right forum, or may be, but

7    the plaintiff must do something beforehand, whether it's

8    a Title 7, going to the EEO, whether it's a prisoner who

9    must go through the grievance proceeding, that kind of

10   thing.  So it wasn't quite sitting right to contemplate

11   this as an exhaustion of administrative remedies.

12       And I believe I -- well, I agree with the SEC, that

13   it is more a question of lawyer and in what sequence and

14   under what circumstances judicial review will follow a

15   disciplinary proceeding.

16       I am delighted that my colleague, Judge Grimm, has

17   already charted this path, so to speak, and I have been

18   helped quite a lot in understanding the issue through

19   his most recent *Bennett* opinion.  I understand it is on

20   appeal to the Fourth Circuit, and we will find out

21   whether he got it right.

22       I do note that the Fourth Circuit has denied

23   expedited treatment of that case, so it's -- we are

24   going to have to wait a little while to find that out.

25       But I do believe that it is discernable, that what

1   the plaintiffs want to have reviewed is to be had within
2   the statutory scheme.
3        Frankly, I think this case is even less compelling
4   than those where constitutional challenges are raised.
5   Here, while plaintiffs strive mightily to make this into
6   a case of first impression or a significant challenge to
7   the authority of FINRA to bring these charges, it
8   doesn't strike me as anything so drastic.
9        There are lots of defenses people can raise to
10  charges in a variety of forum, and this is one.  To say
11  that it's beyond their authority to do it, if this were
12  the kind of challenge that could justify evading the
13  normal administrative and judicial statutory scheme, the
14  exceptions would overtake that statutory scheme,
15  frankly.
16       So, I do find that it is clear to me that the --
17  that Congress intended to channel judicial review
18  through this comprehensive scheme.
19       The questions under *Thunder Basin* and the progeny
20  also support dismissing this.  The action here doesn't
21  fall outside of that review scheme.  Frankly, it's
22  square in the middle of it.
23       The question of whether the rules were properly
24  applied, whether the FINRA rules that are involved here
25  are within their authority and appropriate, are clearly

1 within that -- that review scheme.  The meaningful

2 review can be had in the Court of Appeals, and there are

3 sometimes people want to avoid district courts and go

4 right to the Four -- well, in our Circuit, the Fourth

5 Circuit.  They are clearly the experts in the judicial

6 arena on this sort of issue, and its meaningful judicial

7 review is available through that avenue.

8        The plaintiffs' suit is not wholly collateral to

9 the review scheme.  It's, again, it's squarely within

10 it.  This one almost dovetails with the first.  I don't

11 think I need to say any more.

12        And the final factor about the Commission's

13 expertise, I think, again, is satisfied here.  Whether

14 there is ultimately statutory interpretation or not,

15 there certainly are aspects of what needs to come before

16 that final question that are within the SEC's expertise.

17 And I think that was amply stated here by the simple

18 solution, I suppose, that Mr. Freda mentioned:  That it

19 is the SEC's job, and, in this sequential review, to

20 review and determine whether what FINRA has done is

21 consistent with the Exchange Act, and that will inform

22 if not resolve the statutory construction question that

23 the plaintiffs claim is so central to their position

24 here.

25        Having to go through the administrative procedure

1  is simply not the kind of problem that I think overcomes

2  what Congress has set in place for resolving this type

3  of dispute.

4       I am, frankly, not inclined to write a fuller

5  opinion because I think this is, quite frankly, a very

6  straightforward issue; that it's beyond the subject

7  matter jurisdiction of this Court to consider the

8  challenge plaintiffs have raised to the ongoing

9  disciplinary proceeding.

10      I will mention that I have been raising with

11  counsel all along, I question whether, even if there

12  were some sort of subject matter jurisdiction generally,

13  which, under some statutes, there might be, whether the

14  plaintiffs even have a cause of action that's viable.

15      There are no private rights of action under most of

16  these statutes that are at issue here.  There is not a

17  constitutional claim being raised, as I understand it.

18  And whether challenged or questioned by Courts or not, I

19  would suggest that one of the first steps always needs

20  to be defining what the cause of action is so that you

21  can then properly analyze what Court has jurisdiction

22  over it and at what time and under what circumstances.

23      So, for all of those reasons, I am going to sign an

24  order dismissing the complaint.

25      Copies will go out, of course, electronically as

1   soon as I have had a chance to do that.

2          Is there anything further?  Anybody?  Nope?

3              MR. HARNISCH:  No.

4              MR. MOUNTZ:  No, Your Honor.

5              THE COURT:  All right.  Thank you.

6          (The proceedings were concluded at 10:36 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3              I, Renee A. Ewing, an Official Court Reporter for

4    the United States District Court for the District of Maryland,

5    do hereby certify that the foregoing is a true and correct

6    transcript of the stenographically reported proceedings taken

7    on the date and time previously stated in the above matter;

8    that the testimony of witnesses and statements of the parties

9    were correctly recorded in machine shorthand by me and

10   thereafter transcribed under my supervision with computer-aided

11   transcription to the best of my ability; and that I am neither

12   of counsel nor kin to any party in said action, nor interested

13   in the outcome thereof.

14

15                 *Renee A. Ewing*

16

17                 Renee A. Ewing, RPR, RMR, CRR
                   Official Court Reporter
18                 May 4, 2016

19

20

21

22

23

24

25

**'** 

**'33** [2] - 11:9, 11:12

**1**

**100** [1] - 2:4
**10:36** [1] - 48:6
**1100** [1] - 1:16
**12(b)(6** [1] - 32:20
**1331** [3] - 32:9, 32:12, 33:6
**15** [1] - 29:4
**15A** [5] - 4:13, 8:24, 15:1, 16:12, 40:1
**15A(b)(6** [1] - 20:9
**1735** [1] - 1:21
**19(e** [2] - 30:24, 30:25
**19(g** [1] - 4:13
**19(h** [3] - 9:12, 15:1, 40:1
**1933** [3] - 4:7, 11:7, 20:13
**1934** [1] - 4:13

**2**

**20001-4501** [1] - 1:17
**20006** [1] - 1:22
**2007** [1] - 22:21
**2015** [1] - 19:21
**2016** [3] - 1:11, 19:22, 49:17
**202** [3] - 1:17, 1:22, 2:5
**20549-9040** [1] - 2:5
**2201** [2] - 17:14, 18:12
**25** [2] - 32:14, 33:7
**26** [1] - 1:11
**27** [1] - 10:18

**3**

**301** [1] - 1:24
**344-3227** [1] - 1:24

**4**

**4** [1] - 49:17

**5**

**5** [6] - 8:5, 8:7, 8:9, 8:10, 8:12, 8:13
**54** [1] - 17:13

**551-5143** [1] - 2:5

**6**

**662-0200** [1] - 1:17

**7**

**7** [1] - 44:8
**728-8967** [1] - 1:22
**799** [1] - 1:16

**9**

**9:30** [1] - 1:11
**9th** [1] - 1:16

**A**

**a.m** [1] - 48:6
**A.M** [1] - 1:11
**ability** [2] - 11:3, 49:11
**able** [1] - 35:17
**absolutely** [1] - 17:1
**accordance** [1] - 21:19
**Accounting** [1] - 6:25
**act** [5] - 5:12, 8:21, 38:13, 38:20, 39:21
**Act** [49] - 4:7, 4:12, 5:2, 5:10, 6:14, 7:23, 8:15, 8:24, 9:2, 9:3, 9:6, 9:17, 9:19, 10:18, 11:7, 11:9, 11:12, 12:10, 13:4, 14:9, 15:8, 16:10, 16:13, 16:15, 17:20, 17:23, 18:11, 20:8, 20:9, 20:13, 21:6, 21:10, 21:21, 23:11, 25:16, 26:1, 28:24, 30:24, 31:5, 32:13, 38:15, 38:16, 39:15, 41:16, 42:15, 42:21, 43:4, 46:21
**Act's** [2] - 20:24, 33:8
**acted** [1] - 42:10
**acting** [5] - 20:11, 28:25, 29:18, 30:21, 38:4
**ACTION** [1] - 1:4
**action** [38] - 4:9, 4:10, 4:22, 4:24, 5:4, 5:16, 5:18, 5:20, 6:5, 6:8, 6:9, 7:7, 17:7, 17:9,

17:25, 18:12, 18:13, 32:5, 32:7, 32:20, 33:7, 33:11, 33:24, 33:25, 34:3, 34:14, 34:17, 35:2, 38:8, 39:7, 40:2, 42:14, 45:20, 47:14, 47:15, 47:20, 49:12
**Action** [1] - 3:5
**actions** [7] - 12:6, 15:3, 19:2, 34:22, 39:10, 42:2
**Acts** [1] - 9:5
**acts** [1] - 38:14
**actual** [2] - 18:9, 34:17
**address** [5] - 11:21, 18:24, 25:8, 39:19, 40:24
**addressed** [6] - 10:25, 26:1, 26:4, 40:23, 41:19
**adequately** [1] - 41:18
**administrative** [26] - 12:6, 12:11, 12:12, 12:23, 13:5, 14:2, 14:11, 15:4, 15:13, 15:16, 15:21, 21:9, 22:14, 25:14, 25:18, 26:2, 26:12, 27:5, 29:9, 43:6, 44:1, 44:5, 44:11, 45:13, 46:25
**ADVISORS** [1] - 1:4
**Advisors** [1] - 3:6
**affirm** [1] - 28:1
**affirmed** [2] - 35:24, 36:3
**Age** [1] - 36:17
**agencies** [1] - 11:20
**agency** [5] - 7:5, 14:17, 22:10, 29:17, 36:20
**ago** [2] - 15:25, 27:10
**agree** [4] - 7:7, 31:11, 31:12, 44:12
**agreed** [9] - 19:6, 37:9, 37:14, 41:6, 41:8, 42:1, 42:5, 42:12, 42:13
**agreement** [1] - 42:4
**agreements** [1] - 28:23
**ahead** [2] - 7:6, 41:23

**AIDED** [1] - 1:25
**aided** [1] - 49:10
**al** [2] - 1:4, 3:6
**albeit** [1] - 34:4
**allegation** [3] - 8:8, 18:4, 39:1
**allegations** [6] - 8:9, 18:3, 19:12, 19:23, 30:20, 43:3
**alleged** [7] - 4:6, 8:5, 17:23, 20:3, 20:14, 29:17, 39:1
**alleging** [3] - 6:11, 8:11, 12:6
**allowing** [1] - 30:13
**allows** [1] - 29:5
**almost** [2] - 35:5, 46:10
**amicus** [3] - 3:21, 21:16, 30:1, 44:2
**amply** [1] - 46:17
**analysis** [3] - 14:22, 16:6, 30:22
**analytical** [1] - 22:6
**analyze** [1] - 47:21
**analyzed** [3] - 22:13, 22:18, 35:25
**AND** [2] - 2:2, 2:3
**anecdote** [1] - 36:18
**answer** [1] - 16:18
**apologies** [1] - 22:17
**appeal** [1] - 44:20
**Appeals** [12] - 20:23, 21:25, 22:3, 24:20, 25:21, 28:9, 29:24, 30:7, 32:15, 33:9, 43:12, 46:2
**appear** [1] - 30:13
**APPEARANCES** [1] - 2:1
**appellate** [2] - 14:10, 23:11
**application** [4] - 20:17, 28:23, 29:11, 31:4
**applied** [5] - 21:20, 23:12, 24:5, 26:6, 45:24
**applies** [1] - 37:25
**apply** [5] - 7:12, 16:5, 23:21, 31:24, 39:17
**appointed** [1] - 12:24
**appointment** [1] - 12:16

**approach** [2] - 18:18, 23:4
**approaches** [1] - 22:6
**appropriate** [3] - 31:20, 43:12, 45:25
**APRIL** [1] - 1:11
**arbitrate** [6] - 37:9, 37:14, 41:6, 41:7, 41:8, 41:9
**arbitration** [8] - 28:23, 37:5, 37:7, 37:11, 37:17, 41:4, 41:13
**Arbitration** [2] - 28:24, 39:15
**area** [4] - 20:18, 21:11, 28:5, 36:20
**arena** [1] - 46:6
**argue** [1] - 36:4
**argued** [1] - 30:14
**argument** [7] - 12:15, 12:18, 27:17, 27:22, 28:19, 38:22, 40:5
**arguments** [2] - 11:22, 14:8
**arise** [3] - 8:23, 32:8, 43:4
**articulating** [1] - 35:19
**aspects** [2] - 8:6, 46:15
**assertion** [1] - 4:20
**assistance** [1] - 10:13
**associated** [3] - 9:14, 17:21, 18:1
**associations** [1] - 8:19
**attempt** [1] - 43:5
**attempted** [1] - 34:4
**Authority** [1] - 3:7
**AUTHORITY** [2] - 1:8, 1:20
**authority** [59] - 4:11, 6:14, 7:2, 8:17, 9:8, 9:10, 9:12, 9:15, 9:21, 10:20, 10:23, 10:25, 11:2, 11:20, 12:11, 12:19, 13:7, 13:12, 13:25, 15:1, 15:6, 15:9, 15:12, 16:11, 17:19, 20:12, 27:21, 28:18, 28:21, 28:25, 29:1, 29:6, 29:12, 29:19, 29:20, 31:7, 34:19, 35:10, 35:11,

37:20, 38:1, 38:5, 38:12, 38:13, 38:14, 38:20, 39:2, 39:9, 39:21, 39:23, 40:1, 40:8, 40:12, 42:7, 43:5, 43:10, 45:7, 45:11, 45:25
**authorize** [1] - 5:12
**authorized** [3] - 13:4, 14:10, 42:2
**available** [2] - 30:17, 46:7
**avenue** [2] - 42:21, 46:7
**avoid** [1] - 46:3
**aware** [5] - 21:8, 22:1, 22:4, 24:3, 25:12

## B

**backwards** [1] - 43:20
**based** [8] - 5:7, 5:8, 6:20, 8:22, 20:2, 20:14, 27:18, 39:10
**basic** [1] - 9:22
**Basin** [12] - 7:15, 14:14, 16:6, 22:24, 23:1, 25:8, 25:10, 25:13, 25:22, 26:6, 28:14, 45:19
**basis** [2] - 4:19, 20:20
**become** [1] - 27:4
**becomes** [2] - 17:4, 22:2
**becoming** [1] - 42:5
**BEFORE** [1] - 1:10
**beforehand** [1] - 44:7
**beginning** [2] - 3:19, 22:24
**Bennett** [5] - 11:24, 12:4, 12:9, 13:11, 44:19
**best** [1] - 49:11
**better** [1] - 43:21
**between** [4] - 4:21, 11:20, 15:1, 31:16
**beyond** [9] - 6:12, 9:4, 9:5, 9:8, 42:6, 43:5, 43:10, 45:11, 47:6
**bit** [2] - 24:6, 34:15
**Bivens** [1] - 19:5
**Board** [1] - 6:25
**body** [1] - 31:12

**bona** [1] - 28:10
**bootstrap** [1] - 36:20
**bounds** [1] - 42:6
**brazen** [1] - 29:18
**breach** [1] - 33:21
**brief** [7] - 3:21, 8:4, 12:4, 13:23, 21:16, 30:2, 31:25
**briefed** [3] - 6:23, 23:24, 43:18
**briefing** [3] - 28:3, 30:1, 41:19
**briefly** [1] - 25:8
**briefs** [9] - 8:16, 8:25, 21:10, 34:21, 35:3, 35:18, 37:3, 39:24, 40:24
**bring** [13] - 7:3, 9:15, 12:11, 13:8, 15:12, 17:7, 17:20, 19:4, 31:20, 37:24, 38:1, 42:3, 45:7
**bringing** [3] - 7:3, 7:24, 42:2
**broad** [1] - 18:5
**broker** [8] - 5:13, 9:1, 9:13, 10:12, 11:1, 11:8, 11:15, 42:8
**broker-dealer** [1] - 10:12
**broker-dealers** [6] - 5:13, 9:1, 9:13, 11:1, 11:8, 11:15
**Brothers** [3] - 10:8, 10:12, 40:16
**brought** [5] - 17:16, 18:1, 20:20, 34:17, 42:25
**Brown** [1] - 36:17
**built** [1] - 14:9
**burden** [1] - 17:6
**business** [2] - 27:17, 27:18
**BY** [7] - 1:14, 1:15, 1:15, 1:20, 1:21, 2:3, 2:4

## C

**cannot** [2] - 10:13, 41:5
**CAPITAL** [1] - 1:4
**Capital** [1] - 3:6
**capital** [2] - 29:11, 39:18
**cart** [2] - 33:15
**case** [50] - 4:5, 6:15, 6:19, 6:22,

6:24, 7:15, 10:6, 10:7, 10:9, 10:12, 10:16, 10:19, 12:19, 12:22, 13:25, 14:13, 18:9, 18:22, 23:14, 23:15, 23:17, 23:18, 24:9, 25:13, 25:25, 26:13, 26:15, 27:23, 28:12, 28:15, 29:8, 30:15, 31:8, 31:12, 32:2, 34:23, 35:16, 37:3, 37:4, 39:3, 39:13, 41:2, 41:3, 41:4, 41:10, 41:13, 44:23, 45:3, 45:6
**cases** [31] - 5:22, 7:15, 12:5, 12:10, 13:11, 14:14, 15:15, 15:18, 16:1, 17:24, 18:17, 21:11, 22:7, 22:13, 22:15, 22:22, 23:11, 25:8, 26:6, 33:18, 33:19, 34:20, 35:3, 35:22, 36:3, 38:7, 38:10, 38:19, 39:19
**causes** [1] - 42:14
**Cayman** [1] - 20:4
**central** [1] - 46:23
**certain** [6] - 8:16, 11:10, 19:1, 19:2, 39:13, 40:11
**certainly** [13] - 5:17, 5:22, 9:19, 10:24, 12:3, 14:8, 14:12, 15:23, 17:11, 22:23, 22:24, 26:3, 46:15
**certify** [1] - 49:5
**challenge** [17] - 7:8, 9:11, 19:14, 24:13, 25:20, 26:20, 26:21, 26:22, 26:25, 29:8, 36:25, 39:11, 45:6, 45:12, 47:8
**challenged** [2] - 25:3, 47:18
**challengers** [1] - 27:13
**challenges** [10] - 7:18, 22:9, 26:7, 26:11, 28:10, 28:13, 28:17, 35:14, 40:3, 45:4
**chance** [1] - 48:1
**channel** [1] - 45:17
**channelling** [2] - 7:14, 14:8
**charge** [1] - 8:1
**charges** [12] - 8:3,

8:6, 12:11, 12:20, 13:4, 13:8, 13:12, 13:13, 39:3, 45:7, 45:10
**charted** [1] - 44:17
**CHASANOW** [1] - 1:10
**check** [1] - 32:18
**choose** [1] - 27:3
**choosing** [1] - 24:20
**chose** [2] - 9:24, 11:11
**Circuit** [14] - 6:2, 7:13, 10:17, 13:21, 13:24, 15:15, 15:18, 23:16, 23:18, 40:17, 44:20, 44:22, 46:4, 46:5
**circuit** [1] - 43:13
**Circuit's** [1] - 10:7
**circuits** [1] - 7:13
**circumstances** [4] - 39:12, 39:19, 44:14, 47:22
**circumvention** [1] - 23:13
**cite** [1] - 36:10
**cited** [3] - 22:16, 26:8, 28:3
**cites** [1] - 22:17
**citing** [2] - 15:25, 35:3
**Civil** [1] - 3:5
**CIVIL** [1] - 1:4
**claim** [16] - 4:22, 4:23, 5:4, 6:20, 19:3, 19:4, 26:3, 31:7, 31:9, 31:20, 33:24, 37:23, 38:1, 38:2, 46:23, 47:17
**claimed** [1] - 29:10
**claiming** [1] - 33:20
**claims** [17] - 7:3, 13:1, 13:2, 14:10, 14:16, 14:21, 14:22, 14:23, 15:7, 15:11, 25:14, 27:9, 27:15, 29:14, 37:14, 42:13
**clarification** [2] - 30:16, 31:11
**class** [1] - 39:7
**clean** [1] - 21:2
**clear** [14] - 7:16, 7:22, 8:7, 15:6, 15:24, 16:10, 16:18, 19:12, 29:19, 36:18, 41:17, 45:16
**clearly** [3] - 29:6,

45:25, 46:5
**CLERK** [1] - 3:4
**client** [1] - 5:1
**clients** [5] - 5:13, 13:9, 16:22, 34:18, 42:13
**clock** [1] - 14:4
**close** [2] - 20:1, 20:2
**closely** [1] - 20:7
**closest** [1] - 6:22
**clue** [1] - 43:21
**Code** [1] - 17:15
**code** [2] - 5:5, 34:16
**collateral** [1] - 46:8
**colleague** [1] - 44:16
**colleagues** [1] - 38:6
**collection** [1] - 11:1
**Columbia** [2] - 24:22, 43:13
**coming** [1] - 33:4
**comments** [1] - 32:4
**commercial** [1] - 20:1
**COMMISSION** [2] - 2:2, 2:3
**commission** [1] - 25:18
**Commission** [8] - 3:16, 6:11, 8:20, 21:18, 21:22, 30:23, 31:1, 31:6
**Commission's** [1] - 46:12
**committing** [1] - 29:19
**communicating** [1] - 5:3
**Company** [1] - 6:25
**compel** [1] - 41:9
**compelled** [1] - 41:6
**compelling** [1] - 45:3
**complaining** [1] - 34:1
**complaint** [11] - 3:19, 4:16, 8:6, 17:14, 18:4, 18:19, 19:13, 32:24, 42:18, 47:24
**complete** [1] - 11:19
**completed** [1] -

14:5
**completely** [1] - 19:17
**compliance** [2] - 8:12, 8:13
**comprehensive** [2] - 23:9, 45:18
**comprise** [1] - 9:18
**COMPUTER** [1] - 1:25
**computer** [1] - 49:10
**COMPUTER-AIDED** [1] - 1:25
**computer-aided** [1] - 49:10
**conceivable** [1] - 37:23
**concern** [1] - 40:6
**concerning** [1] - 4:5
**concluded** [1] - 48:6
**conclusion** [3] - 15:5, 15:14, 16:10
**conduct** [10] - 6:12, 11:15, 20:3, 20:12, 20:15, 20:21, 27:19, 29:21, 31:3, 38:25
**conflict** [1] - 39:14
**confusing** [1] - 31:20
**confusion** [1] - 31:21
**Congress** [19] - 8:16, 8:25, 9:12, 9:24, 10:19, 10:24, 11:6, 14:23, 15:2, 15:11, 16:17, 27:16, 30:8, 30:23, 31:6, 40:9, 40:11, 45:17, 47:2
**Congress'** [1] - 11:19
**consider** [4] - 17:1, 19:10, 28:7, 47:7
**consideration** [1] - 35:20
**considered** [4] - 23:9, 25:19, 30:6, 35:14
**considering** [1] - 36:7
**consistent** [4] - 15:14, 21:21, 31:5, 46:21
**constitution** [2] - 19:2, 19:5
**constitutional** [14]

- 5:23, 12:7, 12:21, 13:14, 18:17, 18:20, 18:23, 19:3, 19:11, 19:14, 27:9, 28:22, 45:4, 47:17
**constitutionally** [1] - 6:20
**constitutionally-based** [1] - 6:20
**construction** [4] - 9:23, 15:20, 15:24, 46:22
**contemplate** [1] - 44:10
**contemplated** [1] - 7:3
**contention** [1] - 13:3
**context** [2] - 22:21, 26:6
**Continental** [1] - 13:23
**continue** [2] - 17:17, 27:1
**Continued** [1] - 2:1
**continuing** [1] - 22:24
**contours** [1] - 39:11
**contract** [3] - 33:21, 41:11
**contrary** [1] - 37:22
**contrast** [1] - 9:10
**contravention** [2] - 4:11, 5:1
**controls** [1] - 8:12
**controversial** [1] - 10:5
**controversy** [2] - 18:9, 34:17
**copies** [1] - 47:25
**core** [1] - 39:20
**CORPORATION** [1] - 1:4
**Corporation** [1] - 3:6
**correct** [5] - 4:18, 8:1, 17:1, 25:5, 49:5
**correctly** [1] - 49:9
**corresponding** [1] - 36:16
**Counsel** [1] - 3:2
**counsel** [4] - 3:10, 16:25, 47:11, 49:12
**couple** [2] - 21:13, 35:12
**course** [15] - 3:19, 9:6, 9:22, 17:5, 17:24, 19:9, 19:19,

21:24, 22:20, 24:23, 28:15, 29:24, 41:4, 42:1, 47:25
**Court** [66] - 3:5, 3:8, 6:19, 6:22, 9:23, 10:9, 10:13, 10:14, 10:22, 11:25, 16:25, 17:1, 17:6, 19:10, 20:23, 21:2, 21:8, 21:17, 21:25, 22:1, 22:3, 22:4, 22:16, 23:6, 23:16, 23:17, 24:2, 24:4, 24:19, 25:12, 25:21, 25:22, 26:8, 26:18, 27:13, 28:9, 28:22, 28:25, 29:1, 29:8, 30:6, 30:15, 30:17, 32:3, 32:15, 33:9, 35:8, 35:20, 36:1, 36:5, 36:11, 36:13, 36:17, 36:19, 37:1, 40:10, 41:10, 42:22, 43:12, 46:2, 47:7, 47:21, 49:3, 49:4, 49:17
**court** [11] - 10:20, 11:4, 22:11, 23:11, 31:18, 31:20, 32:17, 33:20, 33:23, 34:5, 43:16
**COURT** [45] - 1:1, 1:24, 3:1, 3:3, 3:17, 4:3, 4:8, 4:15, 4:19, 5:3, 5:7, 5:11, 5:15, 5:23, 6:1, 6:4, 6:7, 6:19, 7:6, 7:25, 8:14, 11:21, 11:24, 12:15, 13:15, 16:23, 17:8, 18:7, 18:15, 19:1, 19:7, 24:25, 25:3, 30:10, 32:4, 32:17, 33:10, 33:13, 33:18, 34:9, 40:21, 41:21, 41:23, 42:17, 48:5
**Court's** [2] - 22:25, 36:14
**Courts** [11] - 6:17, 13:17, 14:19, 22:6, 22:13, 22:17, 23:2, 23:8, 29:23, 38:7, 47:18
**courts** [4] - 7:18, 23:19, 35:4, 46:3
**create** [1] - 18:12
**creature** [1] - 8:20
**critical** [1] - 18:8
**CRR** [2] - 1:24, 49:16

**customer** [2] - 37:5, 37:6

# D

**D.C** [3] - 1:17, 1:22, 2:5
**damages** [1] - 5:20
**date** [1] - 49:7
**de** [1] - 21:18
**deal** [1] - 44:5
**dealer** [1] - 10:12
**dealers** [6] - 5:13, 9:1, 9:13, 11:1, 11:8, 11:15
**dealing** [11] - 4:23, 7:19, 7:21, 11:5, 12:8, 13:18, 13:24, 15:19, 18:17, 25:15, 32:5
**dealt** [1] - 10:8
**DEBORAH** [1] - 1:10
**decades** [1] - 22:16
**decide** [3] - 33:14, 35:8, 43:8
**decided** [1] - 10:1
**decision** [7] - 11:25, 21:17, 21:19, 22:25, 26:8, 26:9, 28:8
**decisions** [4] - 28:1, 28:5, 28:22, 29:23
**declaratory** [10] - 4:17, 17:12, 17:15, 17:18, 18:5, 34:16, 35:1, 35:7
**Declaratory** [1] - 18:11
**deduct** [1] - 26:18
**DEFENDANT** [1] - 1:19
**Defendant** [2] - 1:9, 3:14
**defendants** [1] - 12:21
**defense** [4] - 24:13, 27:1, 30:3, 38:25
**defenses** [3] - 27:3, 27:6, 45:9
**defiance** [1] - 29:18
**defined** [2] - 24:6, 24:8
**defining** [1] - 47:20
**definition** [2] - 7:4,

16:3
**delegation** [1] - 11:19
**delighted** [1] - 44:16
**demonstrate** [1] - 14:20
**denied** [2] - 38:8, 44:22
**deny** [1] - 42:18
**DEPUTY** [1] - 3:4
**derivative** [1] - 8:7
**describe** [2] - 17:8, 17:22
**described** [1] - 17:13
**describing** [1] - 28:13
**detail** [4] - 12:4, 19:19, 23:10, 24:1
**detailed** [1] - 21:8
**determination** [1] - 21:18
**determinations** [1] - 21:22
**determine** [4] - 27:13, 31:7, 32:2, 46:20
**difference** [2] - 18:22, 40:15
**different** [11] - 9:25, 12:8, 13:6, 18:18, 18:24, 24:9, 25:11, 25:15, 31:23, 31:24, 40:12
**difficult** [1] - 29:16
**difficulty** [1] - 25:23
**direct** [1] - 32:1
**directly** [1] - 8:10
**discernable** [1] - 44:25
**disciplinary** [20] - 4:14, 6:10, 6:16, 7:24, 17:16, 17:20, 19:20, 20:7, 20:19, 21:4, 22:9, 23:22, 24:9, 29:22, 30:21, 34:22, 35:24, 42:25, 44:15, 47:9
**discussing** [1] - 14:25
**discussions** [1] - 34:23
**dismiss** [6] - 3:20, 17:2, 23:17, 30:2, 42:17, 43:24
**dismissed** [1] - 23:7
**dismissing** [2] -

45:20, 47:24
**disparate** [3] -
14:25, 39:22, 39:25
**dispute** [3] - 39:6,
41:6, 47:3
**dissatisfied** [2] -
43:7, 43:11
**distinct** [1] - 8:17
**distinction** [2] -
31:16, 40:15
**district** [5] - 7:17,
24:21, 24:22, 46:3
**District** [12] -
13:22, 14:19, 23:2,
23:6, 23:17, 23:19,
24:22, 37:10, 37:15,
43:13, 49:4
**DISTRICT** [3] - 1:1,
1:2, 1:11
**DIVISION** [1] - 1:3
**DKC-16-0860** [1] -
1:5
**DKC-16-860** [1] -
3:5
**Doctrine** [3] - 23:8,
23:12, 23:23
**Dominick** [1] -
3:15
**DOMINICK** [1] -
2:3
**done** [1] - 46:20
**dovetails** [1] -
46:10
**drastic** [1] - 45:8
**due** [3] - 20:25,
28:19, 38:6

### E

**EEO** [1] - 44:8
**effectively** [1] - 9:8
**either** [4] - 23:4,
24:21, 35:22, 43:13
**electronically** [1] -
47:25
**emphasize** [2] -
21:13, 30:20
**enabling** [1] - 9:9
**end** [2] - 11:19,
42:22
**ended** [1] - 20:22
**endorsed** [1] -
9:23
**endure** [1] - 16:1
**enforce** [5] - 4:6,
10:9, 27:18, 36:14,
43:5
**enforcement** [2] -
10:21, 11:4
**engaged** [1] - 6:12

**enjoin** [4] - 5:18,
22:19, 34:22, 37:11
**ensure** [2] - 8:11,
8:13
**entail** [1] - 43:6
**enter** [3] - 16:21,
35:8, 41:11
**Enterprise** [4] -
6:23, 26:13, 26:15,
27:12
**entity** [2] - 20:5,
29:17
**enumerated** [1] -
24:5
**equitable** [1] - 20:2
**ESQUIRE** [7] -
1:14, 1:15, 1:15,
1:20, 1:21, 2:3, 2:4
**essentially** [1] -
11:13
**establish** [1] - 17:6
**established** [1] -
18:2
**establishing** [1] -
30:8
**et** [2] - 1:4, 3:6
**evading** [1] - 45:12
**evaluate** [1] -
32:21
**Ewing** [4] - 1:24,
49:3, 49:15, 49:16
**exact** [1] - 28:2
**exactly** [8] - 7:19,
18:14, 18:21, 19:9,
23:5, 30:22, 31:10,
40:17
**example** [2] -
13:21, 13:23
**exceeded** [4] -
6:13, 28:17, 28:20,
29:11
**exception** [2] -
15:22, 25:11
**exceptions** [8] -
15:16, 16:9, 23:23,
23:25, 24:5, 24:8,
31:23, 45:14
**excess** [1] - 29:6
**Exchange** [40] -
3:16, 4:12, 5:2,
5:10, 6:11, 6:14,
7:23, 8:15, 8:20,
8:24, 9:2, 9:3, 9:6,
9:17, 10:18, 12:10,
13:4, 14:9, 16:10,
16:13, 16:15, 17:20,
20:8, 20:9, 20:24,
21:6, 21:10, 21:21,
23:10, 25:16, 30:24,
31:5, 32:13, 33:8,

38:15, 38:16, 41:15,
42:15, 42:21, 46:21
**EXCHANGE** [2] -
2:2, 2:3
**exclusive** [14] -
10:20, 11:17, 11:18,
20:24, 22:2, 23:20,
31:9, 31:16, 31:19,
32:13, 32:14, 33:8,
41:15, 42:21
**excuse** [4] - 4:6,
11:17, 15:7, 35:10
**exercise** [1] -
32:12
**exercising** [1] -
23:2
**exhaust** [1] - 15:22
**Exhaustion** [2] -
23:8, 23:12
**exhaustion** [14] -
7:12, 15:16, 16:7,
16:19, 22:14, 22:21,
30:16, 31:16, 31:18,
31:23, 44:1, 44:4,
44:5, 44:11
**exhaustion-**
**related** [1] - 16:19
**exist** [4] - 7:2, 7:5,
9:7, 28:10
**existed** [1] - 12:13
**existence** [1] -
14:15
**existing** [1] - 26:23
**expansive** [1] -
40:13
**expedited** [1] -
44:23
**expertise** [3] -
25:19, 46:13, 46:16
**experts** [1] - 46:5
**explicit** [1] - 11:19
**explicitly** [2] -
11:6, 12:10
**expressed** [3] -
8:17, 38:14, 40:7
**expresser** [1] -
42:13
**expressly** [3] -
8:22, 42:14, 43:2
**extensively** [1] -
25:10

### F

**fact** [9] - 21:3,
25:23, 26:14, 31:10,
35:21, 36:2, 36:23,
37:21, 38:17
**factor** [1] - 46:12
**facts** [2] - 4:15,

19:16
**failure** [2] - 8:9,
8:12
**failures** [1] - 8:11
**fair** [1] - 23:19
**fairly** [1] - 18:5
**fall** [3] - 16:8,
16:20, 45:21
**falls** [1] - 31:9
**far** [2] - 15:2, 30:15
**farm** [1] - 26:19
**favor** [1] - 16:22
**federal** [14] - 4:20,
5:5, 5:6, 7:17, 9:18,
11:11, 11:13, 16:16,
23:11, 23:19, 23:21,
25:15, 29:2, 29:4,
32:8, 32:9, 33:22,
33:24, 34:5, 35:7,
38:24
**Federal** [4] - 14:19,
26:1, 28:24, 39:15
**few** [5] - 15:25,
34:11, 34:12, 36:10
**fide** [1] - 28:10
**Fiero** [3] - 10:8,
10:12, 40:16
**Fifth** [1] - 23:18
**file** [6] - 12:20,
13:4, 13:12, 13:25,
15:9, 38:20
**filed** [9] - 3:18,
3:21, 4:13, 4:25,
6:10, 13:13, 14:16,
19:20, 22:2
**filing** [1] - 12:20
**filings** [1] - 23:25
**final** [3] - 41:21,
46:12, 46:16
**Financial** [3] - 3:7,
26:9, 29:10
**FINANCIAL** [2] -
1:7, 1:20
**fine** [1] - 10:10
**fines** [3] - 10:14,
10:21, 11:1
**FINRA** [84] - 3:14,
3:21, 4:6, 4:11,
4:25, 5:12, 5:16,
7:23, 8:17, 8:19,
8:20, 8:25, 9:11,
10:10, 10:13, 10:14,
10:15, 10:23, 11:3,
11:11, 11:14, 13:8,
15:1, 15:3, 15:6,
15:8, 15:12, 17:16,
17:19, 18:1, 18:2,
19:20, 19:24, 20:11,
20:14, 22:19, 22:20,
23:21, 24:8, 24:10,

24:14, 24:17, 26:7,
26:11, 28:13, 28:17,
28:20, 29:3, 29:6,
29:17, 30:21, 31:12,
34:17, 35:17, 35:22,
35:24, 36:23, 37:22,
37:23, 38:3, 38:7,
38:11, 38:23, 39:2,
39:9, 39:21, 39:23,
39:24, 40:12, 40:14,
41:25, 42:1, 42:4,
42:5, 42:6, 42:14,
42:25, 43:5, 43:7,
43:10, 45:7, 45:24,
46:20
**FINRA's** [12] -
20:18, 21:17, 21:19,
27:2, 28:1, 29:11,
30:2, 30:3, 35:3,
38:13
**firms** [1] - 17:21
**First** [1] - 23:14
**first** [20] - 4:5,
13:2, 13:9, 13:17,
14:1, 14:11, 15:9,
16:2, 18:10, 25:19,
38:2, 38:12, 38:20,
39:21, 42:3, 43:20,
44:3, 45:6, 46:10,
47:19
**fit** [2] - 16:5, 34:15
**fits** [1] - 35:9
**five** [2] - 29:5,
38:24
**five-year** [2] - 29:5,
38:24
**follow** [1] - 44:14
**following** [1] - 12:9
**follows** [1] - 43:8
**FOR** [4] - 1:2, 1:13,
1:19, 2:2
**forced** [3] - 13:19,
14:2, 16:1
**foregoing** [1] -
49:5
**form** [1] - 28:18
**forth** [2] - 23:10,
30:1
**forum** [6] - 12:6,
12:12, 13:5, 14:11,
44:6, 45:10
**forward** [9] - 6:17,
7:19, 22:12, 22:25,
34:24, 35:22, 37:12,
37:17, 40:4
**Four** [1] - 46:4
**Fourth** [6] - 7:13,
15:15, 15:18, 44:20,
44:22, 46:4
**framed** [1] - 23:1

**framework** [2] - 31:10, 31:24
**frankly** [6] - 40:13, 45:3, 45:15, 45:21, 47:4, 47:5
**Freda** [3] - 3:15, 30:11, 46:18
**FREDA** [8] - 2:3, 3:15, 30:12, 32:6, 33:3, 33:12, 33:17, 34:8
**FredaD@sec.gov** [1] - 2:6
**Free** [4] - 6:22, 26:13, 26:14, 27:12
**front** [1] - 5:9
**FULBRIGHT** [1] - 1:14
**Fulbright** [1] - 3:12
**fuller** [1] - 47:4
**Fund** [2] - 26:13, 26:15, 27:12
**fundamental** [2] - 39:20, 41:5
**fundamentally** [2] - 12:7, 13:6
**funneled** [2] - 14:17, 14:24

## G

**Gardner** [1] - 36:17
**gate** [2] - 13:10, 39:22
**generally** [1] - 47:12
**given** [8] - 4:12, 9:10, 18:8, 35:6, 39:12, 39:22, 40:13, 40:14
**governs** [1] - 31:24
**grant** [7] - 9:21, 10:23, 10:25, 13:7, 15:6, 33:8, 38:13
**granted** [8] - 8:22, 10:20, 11:1, 17:4, 20:15, 30:3, 40:12, 42:14
**grants** [6] - 8:17, 15:1, 16:11, 39:22, 39:25, 40:8
**grappling** [1] - 18:15
**great** [2] - 4:4, 23:10
**GREENBELT** [1] - 1:12
**grievance** [1] - 44:9
**Grimm** [2] - 11:25,

44:16
**grounds** [1] - 35:5
**guess** [2] - 18:7, 32:17

## H

**handing** [1] - 42:7
**hang** [1] - 5:8
**hard** [1] - 32:17
**harm** [5] - 14:3, 14:5, 15:20, 16:3, 37:19
**Harnisch** [4] - 3:11, 4:3, 34:9, 40:23
**HARNISCH** [28] - 1:14, 3:11, 4:1, 4:4, 4:10, 4:18, 4:24, 5:6, 5:8, 5:12, 5:17, 5:21, 5:25, 6:2, 6:6, 6:9, 6:21, 7:10, 8:3, 8:15, 11:23, 12:2, 12:18, 13:16, 34:10, 41:22, 41:24, 48:3
**Hayden** [4] - 26:8, 29:2, 38:9, 38:22
**head** [1] - 6:21
**headquarters** [1] - 25:1
**hear** [2] - 7:9, 7:18
**heard** [5] - 34:12, 34:20, 35:13, 38:22, 39:4
**HEARING** [1] - 1:10
**hearing** [9] - 3:9, 12:24, 12:25, 13:1, 13:20, 14:2, 19:21, 35:24
**hearings** [1] - 43:7
**held** [4] - 13:17, 23:12, 23:20, 26:10
**helped** [1] - 44:18
**helps** [1] - 32:20
**hereby** [1] - 49:5
**highest** [1] - 19:25
**highlighted** [1] - 21:16
**history** [1] - 22:18
**hold** [1] - 11:13
**Honor** [43] - 3:2, 3:14, 3:25, 4:2, 4:4, 7:11, 17:10, 17:24, 18:14, 18:21, 19:16, 19:23, 20:10, 20:25, 22:13, 23:4, 23:15, 24:1, 24:21, 25:5, 25:7, 26:5, 26:14, 26:15, 27:3, 27:10,

27:17, 27:23, 28:5, 28:12, 29:13, 29:25, 30:9, 30:12, 30:19, 33:3, 34:8, 34:10, 40:19, 41:3, 41:14, 41:20, 48:4
**honor** [1] - 20:1
**HONORABLE** [1] - 1:10
**hope** [1] - 3:24
**horse** [1] - 33:15

## I

**identical** [1] - 23:5
**identify** [1] - 3:10
**impinging** [1] - 27:21
**implicate** [1] - 13:13
**implicated** [1] - 21:6
**implication** [1] - 8:23
**important** [3] - 20:10, 21:14, 33:2
**importantly** [1] - 31:4
**imposed** [1] - 24:17
**impression** [2] - 4:5, 45:6
**improper** [2] - 6:12, 7:4
**IN** [1] - 1:1
**Inc** [1] - 3:7
**INC** [2] - 1:8, 1:20
**inclined** [1] - 47:4
**include** [1] - 11:12
**included** [1] - 34:21
**including** [4] - 9:19, 11:17, 12:22, 15:15
**inconsistency** [1] - 36:18
**inconsistent** [1] - 36:8
**incorporate** [1] - 38:23
**incur** [1] - 26:17
**INDUSTRY** [2] - 1:7, 1:20
**Industry** [1] - 3:7
**inform** [1] - 46:21
**inherently** [1] - 29:15
**initiated** [3] - 6:17, 37:5, 37:6
**injunction** [9] -

3:20, 5:18, 5:19, 6:16, 17:4, 22:11, 35:2, 37:16, 41:11
**injunctive** [4] - 4:17, 6:18, 38:8, 42:19
**instance** [13] - 13:2, 13:9, 13:17, 14:1, 14:12, 15:9, 16:3, 16:8, 38:2, 38:12, 38:20, 39:21, 42:3
**instances** [1] - 36:11
**instead** [2] - 39:11, 40:2
**institute** [1] - 28:1
**instructive** [2] - 10:6, 10:7
**intend** [4] - 23:25, 27:16, 40:24, 42:17
**intended** [3] - 15:11, 30:7, 45:17
**intent** [3] - 14:21, 14:23, 15:2
**interested** [1] - 49:12
**interesting** [1] - 25:9
**interference** [1] - 33:21
**interpret** [1] - 39:7
**interpretation** [6] - 16:18, 24:10, 25:25, 27:2, 30:4, 46:14
**interpretations** [1] - 39:14
**introductory** [1] - 18:11
**invested** [1] - 30:23
**invoked** [1] - 29:2
**involve** [1] - 38:11
**involved** [3] - 25:25, 34:25, 45:24
**involves** [2] - 7:25, 24:10
**involving** [1] - 28:23
**irrelevant** [1] - 33:5
**irreparable** [5] - 14:3, 15:21, 16:3, 37:19
**Islands** [1] - 20:4
**issue** [34] - 6:24, 7:21, 10:4, 10:5, 10:8, 11:5, 12:8, 14:21, 14:22, 15:19, 15:23, 17:2, 20:6,

21:1, 22:19, 23:1, 27:4, 27:25, 28:8, 31:8, 36:1, 38:4, 38:21, 39:2, 39:7, 39:8, 39:20, 39:24, 43:22, 44:18, 46:6, 47:6, 47:16
**issued** [1] - 23:16
**issues** [11] - 12:22, 13:14, 16:20, 18:17, 18:24, 25:19, 25:24, 25:25, 26:17, 38:19, 40:22
**itself** [6] - 7:5, 9:8, 14:6, 31:21, 36:20, 43:8

## J

**Jersey** [1] - 23:14
**job** [1] - 46:19
**Judge** [3] - 11:25, 41:1, 44:16
**JUDGE** [1] - 1:11
**judges** [3] - 12:12, 12:23, 13:1
**judgment** [8] - 17:12, 17:15, 17:19, 18:5, 34:16, 35:1, 35:8
**Judgment** [1] - 18:11
**judicial** [10] - 21:9, 21:25, 26:2, 26:12, 27:5, 44:14, 45:13, 45:17, 46:5, 46:6
**Judicial** [1] - 17:15
**June** [1] - 19:21
**jurisdiction** [29] - 4:20, 4:21, 7:9, 7:11, 7:18, 11:8, 11:10, 11:18, 14:20, 16:21, 17:6, 18:10, 23:3, 23:6, 29:7, 31:14, 32:9, 32:10, 32:12, 32:14, 32:19, 32:22, 33:6, 33:8, 36:21, 47:7, 47:12, 47:21
**jurisdictional** [1] - 17:3
**justify** [1] - 45:12

## K

**Keegan** [10] - 13:22, 37:4, 37:7, 37:10, 37:18, 41:2, 41:3, 41:7
**kept** [1] - 43:24

Kevin [1] - 3:11
KEVIN [1] - 1:14
kevin.harnisch@
nortonrosefulbright
.com [1] - 1:18
kin [1] - 49:12
kind [6] - 22:23,
25:8, 34:3, 44:9,
45:12, 47:1
KIRTLAND [1] -
1:15

## L

lacks [1] - 17:19
laid [3] - 8:16,
21:10, 39:25
language [8] -
9:24, 9:25, 10:1,
10:18, 20:6, 20:8,
22:1, 40:11
larger [1] - 28:15
last [1] - 34:12
law [9] - 12:12,
12:23, 17:5, 18:23,
31:12, 31:22, 34:23,
36:9, 41:5
lawfully [1] - 17:17
laws [7] - 9:18,
11:11, 11:13, 11:16,
16:16, 23:21, 42:10
lawyer [1] - 44:13
leaves [1] - 16:20
legal [2] - 28:10,
34:19
legion [1] - 17:25
legislation [1] - 9:9
lends [1] - 31:21
less [1] - 45:3
level [1] - 35:24
leveled [1] - 13:8
Lexecon [1] -
36:13
license [1] - 11:16
light [1] - 30:14
limitations [3] -
29:3, 29:5, 38:24
limited [1] - 38:14
limiting [2] - 16:12
line [3] - 14:14,
22:15, 25:8
Lines [1] - 36:19
lines [1] - 15:14
list [1] - 9:17
lists [1] - 9:16
litany [1] - 34:20,
35:3
literally [1] - 22:15
littering [2] - 42:8,
42:10

LLP [1] - 1:14
long-standing [1] -
36:15
look [10] - 9:14,
10:17, 13:20, 13:22,
16:9, 16:16, 32:24,
40:7, 40:8, 42:4
looking [2] - 7:11,
7:14
luxury [1] - 43:19
Lynch [1] - 23:17

## M

machine [1] - 49:9
mandamus [1] -
23:15
mandate [1] -
36:22
mandates [1] - 5:1
manner [1] - 21:20
MARTIN [1] - 2:4
Martin [1] - 3:15
Maryland [6] -
13:21, 13:22, 24:24,
37:11, 37:15, 49:4
MARYLAND [2] -
1:2, 1:12
matter [14] - 3:4,
3:8, 16:7, 16:21,
23:3, 30:13, 31:14,
32:11, 32:19, 32:21,
40:25, 47:7, 47:12,
49:7
matters [1] - 31:14
MATTHEW [1] -
1:15
mean [4] - 19:5,
28:18, 32:18, 37:23
meaning [1] - 9:6
meaningful [2] -
46:1, 46:6
meant [2] - 15:3,
39:13
mechanism [1] -
12:17
mechanisms [1] -
35:23
meeting [1] - 42:9
member [2] -
17:21, 42:5
members [4] -
10:11, 18:1, 19:25,
41:25
mention [7] - 8:4,
11:24, 12:2, 12:3,
28:13, 41:1, 47:10
mentioned [6] -
15:25, 28:12, 37:3,
38:10, 38:19, 46:18

Merrill [1] - 23:17
middle [1] - 45:22
might [2] - 39:14,
47:13
mightily [1] - 45:5
Milberg [1] - 36:13
millions [1] - 20:3
mind [3] - 6:22,
32:22, 33:10
mine [1] - 25:19
Mine [1] - 26:1
minute [1] - 18:25
minutes [1] - 34:13
misconduct [1] -
43:4
mistake [1] - 25:1
moment [4] -
27:10, 36:4, 36:25,
38:18
moments [1] -
15:25
moot [2] - 17:4,
27:4
Morgan [11] -
13:22, 37:4, 37:7,
37:10, 37:17, 41:2,
41:3, 41:7, 41:12
morning [2] - 3:1,
3:2
most [6] - 31:3,
32:1, 40:22, 44:19,
47:15
motion [6] - 3:20,
17:1, 17:3, 30:2,
43:24
MOTIONS [1] -
1:10
motions [1] - 3:8
Motz's [1] - 41:1
MOUNTZ [15] -
1:20, 3:13, 3:25,
4:2, 16:25, 17:10,
18:14, 18:21, 19:6,
19:9, 25:2, 25:5,
40:19, 40:22, 48:4
Mountz [2] - 3:13,
16:24
MR [48] - 3:11,
3:13, 3:15, 3:25,
4:1, 4:2, 4:4, 4:10,
4:18, 4:24, 5:6, 5:8,
5:12, 5:17, 5:21,
5:25, 6:2, 6:6, 6:9,
6:21, 7:10, 8:3,
8:15, 11:23, 12:2,
12:18, 13:16, 16:25,
17:10, 18:14, 18:21,
19:6, 19:9, 25:2,
25:5, 30:12, 32:6,
33:3, 33:12, 33:17,

34:8, 34:10, 40:19,
40:22, 41:22, 41:24,
48:3, 48:4
must [13] - 10:3,
10:24, 15:11, 31:1,
31:2, 32:18, 37:24,
40:10, 43:8, 44:7,
44:9

## N

N.E [1] - 2:4
N.W [1] - 1:16, 1:21
NASD [2] - 22:20,
23:18, 23:22, 26:7
nature [2] - 21:4,
23:9
necessarily [1] -
19:7
necessary [1] -
8:23
need [6] - 32:15,
33:1, 33:14, 37:11,
37:16, 46:11
needs [3] - 14:22,
46:15, 47:19
net [2] - 29:11,
39:17
never [4] - 13:3,
13:9, 37:9, 37:13
nevertheless [1] -
15:12
new [4] - 10:4,
21:1, 26:22, 29:15
next [1] - 21:24
NO [1] - 1:5
nobody [7] - 25:3,
35:25, 36:4, 36:24,
38:17, 40:4, 42:4
none [2] - 24:24,
38:19
normal [1] - 45:13
Norton [1] - 3:11
NORTON [1] - 1:14
notably [1] - 26:5
note [1] - 44:22
NOTES [1] - 1:25
notes [1] - 5:9
nothing [1] - 44:14
noting [2] - 37:16
notion [1] - 15:10
novel [3] - 10:4,
21:1, 29:15
novo [1] - 21:18
number [2] - 9:17,
29:24
numerous [2] -
7:13, 29:22

## O

objections [1] -
5:24
observe [1] - 19:25
obtained [1] -
10:10
obtains [1] - 43:11
obviously [3] -
34:4, 42:18, 43:23
occurred [1] - 31:3
OF [3] - 1:2, 1:10,
1:25
offer [1] - 30:14
OFFICIAL [1] -
1:24
Official [1] - 49:3
official [1] - 49:17
often [1] - 43:19
once [3] - 14:5,
22:2, 43:19
one [21] - 6:1, 9:23,
9:25, 10:10, 21:15,
21:22, 24:5, 26:21,
27:6, 30:16, 31:25,
35:7, 36:8, 37:2,
40:19, 40:25, 42:13,
44:3, 45:10, 46:10,
47:19
ongoing [4] - 8:13,
19:19, 42:25, 47:8
opening [1] - 12:4
opinion [5] - 24:3,
39:5, 41:2, 44:19,
47:5
opportunity [3] -
24:19, 28:7, 36:6
opposite [1] - 15:5
order [6] - 10:14,
16:22, 26:17, 31:2,
32:21, 47:24
organization [1] -
38:4
organizations [3] -
8:18, 9:11, 16:13
ought [2] - 28:7,
40:5
outcome [2] - 23:5,
49:13
outside [4] - 20:11,
28:25, 31:9, 45:21
overcomes [1] -
47:1
Oversight [1] -
6:25
overtake [1] -
45:14
own [3] - 9:2, 9:4

## P

**papers** [4] - 3:18, 19:18, 38:1, 43:16
**paragraph** [1] - 17:13
**part** [3] - 12:12, 15:13, 20:22
**particular** [21] - 9:15, 10:19, 12:19, 12:21, 13:1, 13:20, 14:17, 14:23, 14:24, 16:9, 35:5, 35:18, 35:25, 36:3, 36:25, 37:8, 38:18, 38:25, 39:3, 39:12, 39:18
**parties** [3] - 3:18, 23:24, 49:8
**parties'** [1] - 41:19
**party** [5] - 37:8, 41:5, 41:9, 43:11, 49:12
**pass** [2] - 9:7, 11:14
**past** [1] - 36:3
**path** [2] - 21:3, 44:17
**pause** [1] - 40:5
**pay** [1] - 10:14
**payment** [2] - 10:10, 10:21
**pending** [3] - 3:4, 19:20, 26:24
**penny** [1] - 20:4
**people** [3] - 34:1, 45:9, 46:3
**per** [2] - 14:3, 37:18
**peremptory** [1] - 22:8
**perfect** [1] - 9:7
**perfectly** [1] - 19:12
**perhaps** [7] - 17:18, 18:23, 21:16, 35:21, 36:2, 36:23, 43:17
**period** [1] - 36:24
**permitted** [2] - 6:18, 40:4
**person** [2] - 37:13, 37:14
**personnel** [1] - 11:9
**persons** [4] - 9:14, 17:21, 17:22, 18:2
**pertain** [1] - 15:15
**pertaining** [2] - 15:7, 15:8
**Peterson** [2] -

23:18
**phrase** [2] - 18:10, 18:11
**pick** [1] - 26:19
**place** [4] - 8:13, 16:20, 39:9, 47:2
**plaintiff** [3] - 24:11, 37:6, 44:7
**Plaintiffs** [2] - 1:5, 3:12
**plaintiffs** [25] - 3:22, 6:3, 6:15, 6:24, 17:5, 19:15, 19:24, 20:11, 24:11, 24:23, 25:9, 25:13, 26:16, 26:24, 28:16, 32:7, 41:25, 42:22, 42:24, 43:1, 45:1, 45:5, 46:23, 47:8, 47:14
**PLAINTIFFS** [1] - 1:13
**plaintiffs'** [8] - 3:19, 27:22, 29:14, 30:3, 30:20, 42:18, 43:24, 46:8
**planning** [1] - 43:15
**pleading** [1] - 33:2
**pled** [1] - 33:13
**plenty** [2] - 5:22, 37:20
**point** [16] - 8:5, 13:7, 18:3, 20:10, 22:5, 27:11, 28:11, 28:15, 30:16, 31:15, 35:12, 36:12, 37:2, 40:16, 40:20, 41:24
**points** [1] - 41:18
**portion** [2] - 9:25, 10:2
**portions** [2] - 11:10, 11:12
**portrayed** [1] - 21:1
**position** [6] - 26:16, 32:6, 35:4, 37:21, 41:8, 46:23
**possibly** [2] - 10:16, 27:5
**potential** [1] - 14:16
**potentially** [1] - 42:2
**power** [1] - 8:25
**powers** [1] - 8:21
**practice** [1] - 36:15
**precisely** [2] - 27:15, 31:7
**precluded** [1] -

32:12
**precludes** [1] - 36:6
**predicate** [2] - 20:15, 27:19
**predicated** [1] - 17:22
**preliminary** [2] - 3:20, 42:19
**premised** [2] - 8:4, 8:10
**presiding** [1] - 12:23
**presumably** [5] - 24:14, 24:17, 27:21, 27:23, 28:6
**presume** [1] - 9:24, 40:10
**presupposes** [1] - 38:3
**prevent** [1] - 23:13
**prevents** [1] - 23:2
**previously** [1] - 49:7
**primary** [1] - 8:8
**principles** [4] - 7:12, 9:22, 16:7, 20:2
**prisoner** [1] - 44:8
**private** [4] - 5:16, 17:25, 33:25, 47:15
**problem** [2] - 44:1, 47:1
**procedure** [1] - 46:25
**procedures** [1] - 23:13
**proceeding** [42] - 4:14, 4:25, 6:10, 6:13, 6:16, 6:18, 7:24, 7:25, 13:19, 14:5, 14:6, 16:1, 17:2, 17:16, 19:17, 19:20, 19:23, 20:7, 20:13, 20:16, 20:17, 21:4, 21:7, 22:12, 23:6, 24:9, 24:12, 24:14, 24:15, 26:24, 26:25, 27:7, 30:4, 30:5, 30:22, 30:25, 37:18, 42:25, 43:2, 44:9, 44:15, 47:9
**PROCEEDINGS** [1] - 1:10
**proceedings** [14] - 17:20, 20:19, 22:10, 22:20, 23:22, 26:7, 26:11, 28:2, 28:14, 29:22, 34:22, 48:6, 49:6

**process** [21] - 15:21, 20:22, 21:5, 21:13, 21:25, 22:1, 25:11, 25:14, 25:18, 26:2, 26:4, 26:12, 26:20, 27:6, 27:14, 27:16, 29:9, 30:7, 30:8, 41:15, 42:23
**processes** [1] - 21:9
**professional** [1] - 6:12
**progeny** [2] - 7:15, 45:19
**prohibiting** [1] - 6:16
**prompted** [1] - 33:18
**proper** [1] - 35:2
**properly** [4] - 12:24, 14:11, 45:23, 47:21
**prosecute** [2] - 9:1, 9:13, 39:10
**provide** [1] - 31:25
**provides** [2] - 32:1, 42:21
**providing** [1] - 41:12
**provision** [2] - 5:5, 5:15
**provisions** [3] - 5:10, 5:14, 16:15
**Public** [1] - 6:25
**published** [1] - 24:3
**purposes** [3] - 9:5, 21:21, 31:5
**pursuant** [3] - 20:13, 20:23, 38:14
**pursue** [1] - 25:14
**put** [6] - 11:17, 13:23, 26:16, 35:18, 35:19, 36:1
**Pyramid** [3] - 26:9, 29:10, 39:16

## Q

**questioned** [1] - 47:18
**questions** [4] - 16:20, 30:17, 32:3, 45:19
**quibble** [1] - 34:6
**quite** [5] - 29:24, 44:4, 44:10, 44:18, 47:5
**quote** [4] - 19:25, 20:1, 20:2

## R

**raise** [9] - 24:18, 24:19, 26:17, 26:18, 27:1, 27:3, 33:23, 43:2, 45:9
**raised** [17] - 6:4, 6:7, 12:21, 19:15, 24:12, 24:14, 26:25, 30:5, 35:15, 36:5, 36:24, 40:4, 43:2, 43:9, 45:4, 47:8, 47:17
**raises** [1] - 18:24
**raising** [4] - 5:23, 34:25, 36:7, 47:10
**RAO** [1] - 1:15
**rather** [4] - 10:6, 10:7, 34:5, 43:17
**reach** [2] - 16:10, 39:7
**read** [6] - 3:18, 8:24, 18:16, 39:5, 43:18, 43:23
**reading** [2] - 18:3, 43:16
**real** [1] - 24:1
**realize** [1] - 27:8
**really** [6] - 12:7, 16:7, 19:17, 25:23, 32:15, 43:22
**reason** [6] - 10:2, 12:9, 16:12, 16:17, 24:2, 40:9
**reasonable** [1] - 40:8
**reasons** [4] - 14:25, 29:25, 47:23
**rebuttal** [1] - 41:25
**received** [2] - 3:18, 3:23
**recent** [3] - 11:25, 22:22, 44:19
**reconcile** [1] - 15:10
**record** [3] - 3:10, 19:13, 22:2
**recorded** [1] - 49:9
**reflexive** [1] - 40:2
**registered** [1] - 8:18
**regulating** [1] - 20:12
**regulations** [1] - 36:16
**regulator** [1] - 9:7
**REGULATORY** [2] - 1:7, 1:20
**regulatory** [4] - 8:18, 9:11, 16:13,

38:3
**Regulatory** [1] - 3:7
**REICHER** [1] - 1:21
**Reicher** [1] - 3:13
**relate** [1] - 19:19
**related** [1] - 16:19
**relates** [3] - 20:15, 20:16, 20:17
**relating** [1] - 19:16
**relation** [1] - 34:12
**relationship** [2] - 37:8, 37:12
**relevant** [1] - 8:6
**reliance** [1] - 41:1
**relief** [5] - 4:17, 18:6, 35:6, 37:10, 42:19
**rely** [1] - 25:10
**remedies** [5] - 15:17, 22:14, 44:1, 44:5, 44:11
**remedy** [1] - 5:19
**removal** [1] - 33:19
**removed** [2] - 33:22, 34:5
**Renee** [4] - 1:24, 49:3, 49:15, 49:16
**repeatedly** [1] - 36:21
**reply** [6] - 3:2, 3:22, 8:4, 12:1, 12:3, 43:20
**reported** [1] - 49:6
**REPORTER** [1] - 1:24
**Reporter** [2] - 49:3, 49:17
**request** [4] - 17:4, 30:2, 37:15, 42:18
**requests** [1] - 38:8
**required** [3] - 21:23, 23:7, 25:13
**requirements** [1] - 23:21
**requiring** [2] - 19:24, 23:16
**reside** [2] - 24:23, 24:24
**resides** [1] - 43:14
**resolve** [1] - 46:22
**resolving** [1] - 47:2
**respect** [20] - 9:3, 11:2, 11:6, 11:9, 14:7, 14:25, 16:11, 16:19, 20:25, 25:7, 28:19, 29:13, 34:14, 37:4, 37:13, 38:6, 38:9, 39:4, 39:16

**respected** [2] - 10:3, 10:24
**respectfully** [1] - 35:15
**respondent** [2] - 29:10, 43:14
**respondents** [4] - 22:9, 24:12, 24:23, 42:24
**result** [4] - 25:12, 31:13, 43:7, 43:11
**results** [1] - 31:11
**retain** [2] - 7:18, 14:19
**reverses** [1] - 36:15
**review** [46] - 14:3, 14:10, 14:15, 14:18, 14:24, 15:4, 15:13, 20:21, 20:24, 21:9, 21:24, 21:25, 23:9, 23:20, 26:2, 26:12, 27:5, 28:9, 29:9, 30:7, 30:22, 30:25, 31:2, 31:9, 31:16, 31:19, 32:13, 35:23, 36:6, 37:21, 37:24, 37:25, 38:2, 41:15, 42:21, 43:12, 44:14, 45:17, 45:21, 46:1, 46:2, 46:7, 46:9, 46:19, 46:20
**reviewed** [2] - 21:17, 45:1
**reviews** [1] - 31:1
**revisit** [1] - 34:15
**rights** [2] - 28:22, 47:15
**RMR** [2] - 1:24, 49:16
**role** [1] - 36:14
**Rose** [1] - 3:11
**ROSE** [1] - 1:14
**Ross** [2] - 6:2, 13:20
**RPR** [2] - 1:24, 49:16
**rule** [15] - 6:13, 11:14, 16:21, 24:10, 24:16, 26:19, 29:11, 31:3, 31:4, 35:11, 38:25, 39:6, 39:9, 39:10, 39:12
**rules** [21] - 9:2, 9:4, 9:7, 16:14, 19:24, 20:14, 20:18, 21:19, 21:20, 26:22, 26:23, 27:2, 27:18, 30:4, 38:15, 39:17, 43:1, 45:23, 45:24

**run** [2] - 11:19, 42:23

# S

**safety** [1] - 25:19
**Safety** [1] - 26:1
**sale** [1] - 20:16
**sanction** [5] - 9:13, 11:8, 11:14, 26:17, 31:1
**sanctions** [5] - 9:16, 21:5, 24:16, 35:23, 35:25
**sand** [1] - 24:7
**satisfied** [1] - 46:13
**scheme** [27] - 14:3, 14:10, 14:15, 14:18, 14:24, 15:4, 15:13, 20:24, 23:2, 23:10, 31:9, 31:17, 31:19, 32:13, 37:22, 37:24, 37:25, 38:2, 39:18, 43:6, 45:2, 45:13, 45:14, 45:18, 45:21, 46:1, 46:9
**Schwab** [4] - 28:15, 28:20, 38:9, 39:4
**scope** [1] - 9:8
**Scottsdale** [1] - 3:6
**SCOTTSDALE** [1] - 1:4
**se** [2] - 14:3, 37:18
**seated** [1] - 3:3
**Seatrain** [1] - 36:19
**SEC** [34] - 3:21, 6:13, 6:17, 9:12, 9:15, 10:19, 10:20, 11:2, 11:7, 11:18, 11:25, 12:5, 12:11, 13:4, 15:2, 16:14, 20:21, 21:18, 24:18, 27:20, 27:24, 27:25, 28:1, 28:6, 29:23, 30:6, 35:13, 35:17, 37:22, 39:23, 40:14, 43:8, 44:2, 44:12
**SEC's** [5] - 21:16, 27:21, 30:1, 46:16, 46:19
**Second** [5] - 6:2, 10:7, 10:17, 13:21, 40:16
**section** [1] - 34:16
**Section** [15] - 8:5, 8:7, 8:9, 8:10, 8:12,

8:13, 9:11, 10:18, 17:14, 18:12, 20:9, 30:23, 30:25, 32:14, 33:7
**Sections** [1] - 4:13
**SECURITIES** [2] - 2:2, 2:3
**Securities** [16] - 3:16, 4:7, 4:12, 5:2, 6:11, 6:14, 8:20, 9:19, 11:7, 11:12, 15:8, 17:23, 20:13, 25:16, 41:15, 43:4
**securities** [7] - 8:18, 9:18, 11:11, 11:13, 11:16, 16:16, 23:21
**see** [3] - 17:18, 18:4
**seek** [6] - 5:18, 10:13, 10:21, 11:4, 17:7, 17:15
**seeking** [11] - 12:5, 17:11, 17:13, 18:5, 22:11, 29:4, 34:22, 35:1, 35:6, 41:9
**seeks** [1] - 22:19
**seem** [1] - 25:9
**sees** [1] - 42:8
**self** [4] - 8:18, 9:11, 16:13, 38:3
**self-regulatory** [4] - 8:18, 9:11, 16:13, 38:3
**selling** [1] - 20:3
**seminal** [1] - 23:15
**SENIOR** [1] - 1:11
**sense** [3] - 9:7, 10:16, 36:8
**sequence** [1] - 44:13
**sequential** [1] - 46:19
**set** [6] - 19:21, 23:10, 30:1, 40:13, 47:2
**Seventh** [1] - 13:24
**several** [1] - 26:5
**shape** [1] - 28:18
**shares** [1] - 20:3
**shifting** [1] - 24:7
**shorthand** [1] - 49:9
**sic** [1] - 41:12
**side** [1] - 11:22
**sidewalk** [1] - 42:9
**sign** [1] - 47:23
**significant** [1] - 45:6
**silence** [1] - 10:24

**silent** [1] - 11:2
**similar** [7] - 10:1, 10:6, 10:8, 10:22, 12:9, 13:11, 25:17
**simple** [4] - 30:15, 30:19, 32:1, 46:17
**simply** [1] - 47:1
**single** [1] - 8:1
**sister** [1] - 7:13
**sitting** [1] - 44:10
**situation** [1] - 27:12
**slate** [1] - 21:2
**solution** [3] - 30:15, 30:19, 46:18
**someone** [2] - 22:19, 33:20
**sometimes** [3] - 22:10, 24:6, 46:3
**soon** [1] - 48:1
**sorry** [2] - 6:6, 40:14
**sort** [5] - 28:6, 32:22, 33:18, 46:6, 47:12
**sought** [3] - 6:15, 21:5, 37:10
**SOUTHERN** [1] - 1:3
**specialized** [1] - 25:18
**specific** [2] - 14:22, 16:1
**specifying** [1] - 16:14
**speed** [1] - 43:15
**spoken** [1] - 27:25
**sponte** [1] - 43:9
**square** [1] - 45:22
**squarely** [6] - 16:5, 16:8, 35:9, 35:14, 42:20, 46:9
**SRO** [2] - 15:3, 31:1
**SRO's** [3] - 9:2, 9:4, 31:3
**stand** [1] - 7:4
**standards** [1] - 19:25
**standing** [1] - 36:15
**Stanley** [1] - 41:12
**stark** [1] - 9:21
**start** [3] - 32:25, 42:7, 43:19
**state** [4] - 19:13, 33:20, 33:21, 33:23
**statements** [1] - 49:8
**STATES** [2] - 1:1,

1:11
**states** [1] - 30:25
**States** [5] - 20:23,
24:19, 25:20, 28:9,
49:4
**statute** [20] - 5:7,
7:17, 7:22, 8:21,
9:15, 9:25, 10:2,
12:13, 12:15, 21:23,
22:2, 25:16, 29:3,
29:4, 29:5, 32:8,
36:14, 36:16, 36:18,
38:24
**statutes** [4] - 9:18,
40:13, 47:13, 47:16
**statutory** [32] -
4:11, 5:4, 5:24,
9:22, 15:20, 15:23,
16:18, 17:19, 18:19,
18:23, 19:8, 20:8,
20:12, 23:1, 24:13,
25:25, 26:12, 27:14,
28:10, 29:6, 29:19,
29:20, 30:7, 31:10,
36:22, 38:4, 42:7,
45:2, 45:13, 45:14,
46:14, 46:22
**stay** [1] - 24:8
**stays** [1] - 12:5
**stenographically**
[1] - 49:6
**STENOTYPE** [1] -
1:25
**step** [3] - 21:12,
21:24
**step-by-step** [1] -
21:12
**steps** [2] - 21:13,
47:19
**stock** [2] - 20:4,
20:16
**stop** [1] - 22:11
**straightforward**
[1] - 47:6
**Street** [3] - 1:16,
1:21, 2:4
**stretch** [1] - 9:4
**strike** [1] - 45:8
**string** [2] - 22:17,
29:23
**strive** [1] - 45:5
**structure** [1] - 21:8
**sua** [1] - 43:9
**subject** [10] - 23:3,
28:8, 29:22, 31:14,
32:11, 32:19, 32:21,
35:7, 47:6, 47:12
**subjected** [2] -
14:1, 14:4
**subjecting** [1] -

37:17
**subjects** [1] -
42:24
**submit** [2] - 41:13,
42:13
**subsumed** [1] -
33:7
**sue** [1] - 5:16
**sues** [1] - 33:20
**sufficient** [1] - 32:8
**suggest** [1] - 47:19
**suggesting** [1] -
37:22
**suit** [2] - 7:19, 46:8
**Suite** [1] - 1:16
**supervise** [2] - 8:9,
8:11
**supervision** [1] -
49:10
**support** [1] - 45:20
**supported** [1] -
35:4
**supports** [1] -
37:21
**suppose** [5] -
17:10, 22:23, 23:14,
34:6, 46:18
**Supreme** [11] -
6:19, 6:22, 9:23,
22:25, 28:22, 28:25,
29:1, 36:11, 36:13,
36:17, 36:19
**surprisingly** [1] -
10:15
**sustain** [1] - 31:2
**Swirsky** [1] - 23:14

**T**

**terms** [4] - 7:23,
21:3, 22:14, 24:7
**Terri** [1] - 3:13
**TERRI** [1] - 1:21
**Terri.Reicher@**
**finra.org** [1] - 1:23
**testimony** [1] -
49:8
**text** [1] - 32:24
**THE** [51] - 1:1, 1:2,
1:10, 1:13, 1:19,
2:2, 3:1, 3:3, 3:4,
3:17, 4:3, 4:8, 4:15,
4:19, 5:3, 5:7, 5:11,
5:15, 5:19, 5:23,
6:1, 6:4, 6:7, 6:19,
7:6, 7:25, 8:14,
11:21, 11:24, 12:15,
13:15, 16:23, 17:8,
18:7, 18:15, 19:1,
19:7, 24:25, 25:3,

30:10, 32:4, 32:17,
33:10, 33:13, 33:18,
34:9, 40:21, 41:21,
41:23, 42:17, 48:5
**thereafter** [1] -
49:10
**therefore** [8] -
6:15, 8:21, 10:23,
11:3, 12:24, 15:10,
37:9, 37:13
**thereof** [1] - 49:13
**thinking** [2] -
33:19, 43:25
**third** [1] - 41:9
**threshold** [1] -
17:2
**Thunder** [12] -
7:15, 14:14, 16:6,
22:24, 22:25, 25:8,
25:10, 25:13, 25:22,
26:6, 28:14, 45:19
**tickets** [1] - 42:8
**TIMOTHY** [1] -
1:20
**Timothy** [1] - 3:13
**Title** [1] - 44:8
**today** [1] - 30:13
**took** [1] - 41:7
**top** [1] - 6:21
**TOTARO** [1] - 2:4
**Totaro** [1] - 3:16
**touch** [2] - 9:5,
34:11
**Touche** [2] - 6:2,
13:20
**track** [1] - 20:7
**trade** [1] - 20:2
**traditional** [1] -
16:6
**traditionally** [2] -
22:8, 22:12
**trampling** [1] -
28:21
**transcribed** [1] -
49:10
**TRANSCRIPT** [1] -
1:10
**transcript** [1] -
49:6
**TRANSCRIPTION**
[1] - 1:25
**transcription** [1] -
49:11
**treatment** [1] -
44:23
**trial** [1] - 32:17
**trident** [1] - 21:3
**true** [3] - 5:25,
35:16, 49:5
**trying** [3] - 18:16,

27:18, 36:4
**TUESDAY** [1] -
1:11
**turn** [1] - 14:4
**two** [5] - 8:2, 8:3,
11:20, 22:5, 31:21
**type** [14] - 7:14,
11:4, 14:15, 16:6,
16:7, 19:5, 26:3,
27:12, 28:2, 30:22,
35:6, 36:5, 40:15,
47:2
**types** [3] - 9:16,
12:10, 13:8, 13:11,
22:7, 22:8, 26:10,
27:15, 28:16, 35:14,
36:2, 39:2, 40:11
**typical** [1] - 43:17
**typically** [1] -
22:18

**U**

**ultimately** [3] -
39:14, 44:6, 46:14
**ultra** [5] - 4:25,
13:18, 14:5, 16:2,
30:21
**unambiguous** [1] -
29:20
**unauthorized** [1] -
16:2
**unconstitutional**
[2] - 7:1, 12:16
**under** [38] - 4:13,
5:5, 5:9, 5:10, 6:14,
7:11, 7:15, 8:15,
9:22, 17:5, 17:14,
17:19, 18:22, 19:2,
21:6, 21:23, 23:4,
23:8, 26:1, 27:22,
28:22, 28:23, 32:8,
33:6, 33:25, 36:16,
41:5, 41:15, 42:25,
43:4, 44:14, 45:19,
47:13, 47:15, 47:22,
49:10
**underlying** [12] -
18:13, 19:16, 20:7,
20:15, 20:20, 21:4,
22:9, 24:12, 27:7,
27:19, 29:21, 30:4
**underway** [1] -
42:23
**undisputed** [1] -
19:17
**undone** [1] - 16:4
**unethical** [1] -
11:15
**unethically** [1] -

42:10
**uniformly** [2] -
23:20, 26:10
**unique** [2] - 29:15,
39:18
**United** [5] - 20:23,
24:19, 25:20, 28:9,
49:4
**UNITED** [2] - 1:1,
1:11
**unlawfully** [1] -
27:21
**unless** [3] - 14:20,
41:6
**unregistered** [2] -
20:4, 20:16
**unsuccessful** [1] -
24:15
**up** [2] - 20:22,
28:14
**upheld** [2] - 35:23,
37:15
**urged** [1] - 21:2
**US** [1] - 1:14
**utilize** [1] - 32:9

**V**

**variety** [1] - 45:10
**various** [3] - 11:16,
13:17, 38:7
**venue** [1] - 25:3
**vested** [1] - 31:6
**vesting** [1] - 32:14
**viable** [1] - 47:14
**view** [3] - 27:24,
32:16, 33:5
**views** [1] - 27:24
**VIJAY** [1] - 1:15
**violated** [5] - 5:14,
19:24, 24:16, 31:3,
42:10
**violating** [2] - 19:4,
36:21
**violation** [6] - 7:16,
7:17, 7:22, 19:3,
19:8, 29:20
**violations** [9] - 4:6,
4:7, 8:5, 8:8, 9:1,
11:9, 12:7, 17:23,
20:14
**vires** [5] - 4:25,
13:18, 14:5, 16:2,
30:21
**void** [2] - 13:16,
13:18
**vs** [3] - 3:6, 11:24,
23:17

## W

**wait** [1] - 44:24
**waiting** [1] - 43:17
**waivers** [1] - 39:8
**Washington** [3] -
1:17, 1:22, 2:5
**Weiss** [1] - 36:13
**wholly** [1] - 46:8
**wish** [1] - 11:21
**WITNESS** [1] -
5:19
**witnesses** [1] -
49:8
**words** [2] - 24:15,
41:21
**works** [1] - 32:23
**write** [2] - 21:2,
47:4
**writing** [1] - 3:24
**written** [2] - 29:23,
36:15

## Y

**year** [2] - 29:5,
38:24
**years** [3] - 20:20,
29:4, 29:24
**yields** [1] - 25:11
**yourselves** [1] -
3:10