**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1497

SCOTTSDALE CAPITAL ADVISORS CORPORATION; JOHN J. HURRY; TIMOTHY B. DIBLASI; DARREL MICHAEL CRUZ,

        Plaintiffs – Appellants,

    v.

FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,

        Defendant – Appellee.

-----------------------------------

SECURITIES AND EXCHANGE COMMISSION,

        Amicus Supporting Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.  Deborah K. Chasanow, Senior District Judge. (8:16-cv-00860-DKC)

Argued:  October 28, 2016        Decided:  December 20, 2016

Before MOTZ, KING, and DUNCAN, Circuit Judges.

Affirmed by published opinion.  Judge Duncan wrote the opinion, in which Judge Motz and Judge King joined.

**ARGUED:** Jonathan S. Franklin, NORTON ROSE FULBRIGHT US LLP, Washington, D.C., for Appellants.  Timothy Wilson Mountz, FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., Washington, D.C., for Appellee.  Martin V. Totaro, SECURITIES AND EXCHANGE

COMMISSION, Washington, D.C., for Amicus Curiae. **ON BRIEF:** John W. Akin, NORTON ROSE FULBRIGHT US LLP, Washington, D.C., for Appellants. Terri L. Reicher, Office of General Counsel, FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., Washington, D.C., for Appellee. Anne K. Small, General Counsel, Sanket J. Bulsara, Deputy General Counsel, Michael A. Conley, Solicitor, Dominick V. Freda, Senior Litigation Counsel, Josephine T. Morse, Office of the General Counsel, SECURITIES AND EXCHANGE COMMISSION, Washington, D.C., for Amicus Curiae.

DUNCAN, Circuit Judge:

Scottsdale Capital Advisors Corporation and three of its current and former officers (collectively, "Scottsdale") are respondents in an ongoing disciplinary proceeding before the Financial Industry Regulatory Authority, Inc. ("FINRA") for allegedly selling unregistered securities in violation of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e ("Securities Act") and FINRA Rule 2010. Before FINRA completed its proceedings, Scottsdale sought an injunction in federal district court, claiming the FINRA proceeding is unauthorized because FINRA may only discipline members for violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, et seq. ("Exchange Act"). The district court dismissed for lack of subject-matter jurisdiction and Scottsdale appeals. For the reasons that follow, we affirm.

I.

A.

Congress, through the Exchange Act, delegated the power to register national securities associations ("RSAs" or "associations") to the Securities and Exchange Commission ("SEC"). Pursuant to this authority, the SEC registered FINRA

3

as an RSA.[1] FINRA, comprised of financial brokers and dealers, promulgates rules to enforce broker-dealer compliance with the Exchange Act, "the rules and regulations thereunder . . . and the rules of the association." 15 U.S.C. § 78o-3(b)(2).

Despite FINRA's seemingly broad power, Congress mandated that the SEC exercise close supervision over the association. Before any FINRA rule goes into effect, the SEC must approve the rule and specifically determine that it is consistent with the purposes of the Exchange Act. Id. §§ 78o-3(b)(6), 78s(b)(2)(C). The SEC may also amend any existing rule to ensure it comports with the purposes and requirements of the Exchange Act. Id. § 78s (b)(1), (c).

### B.

The Exchange Act sets out the process by which FINRA may initiate disciplinary proceedings, which is codified in FINRA's Code of Procedure. 15 U.S.C. § 78o-3(h); FINRA Rule 9000, et

---

[1] FINRA, a private not-for-profit corporation, is the successor organization to the National Association of Securities Dealers, Inc. ("NASD"). In 2007, NASD merged with the New York Stock Exchange's regulation committee to form FINRA. See Notice, 72 Fed. Reg. 42169, 42170 (Aug. 1, 2007). FINRA is the only RSA. FINRA is also a self-regulatory organization ("SRO") by virtue of the fact that is an RSA. 15 U.S.C. § 78c(a)(26).

4

seq.² When FINRA believes a member has violated "any rule, regulation, or statutory provision, including the federal securities laws and the regulations thereunder," FINRA Rule 9211, it begins a disciplinary proceeding by filing a complaint against the member.  Id. 9212.  If the respondent requests, FINRA will hold a hearing, after which a Hearing Panel will issue a written decision.  Id. 9221, 9268.  The respondent or FINRA may appeal the Hearing Panel's decision to the National Adjudicatory Council ("NAC"), a FINRA committee.  Id. 9311.  An appeal to the NAC acts as a stay of the Hearing Panel's decision.  Id. 9311(b).  The NAC may affirm, modify, reverse, dismiss, or remand the Hearing Panel's decision.  Id. 9349(a). The NAC's decision (or the Hearing Panel's decision if there was no appeal) is FINRA's final action unless FINRA's Board of Governors calls for review.  Id. 9351.

Review of final FINRA action invokes the SEC's role under the Exchange Act in overseeing FINRA's authority to discipline members.  FINRA must "promptly file notice" with the SEC when it "imposes any final disciplinary sanction" on any member and FINRA members may appeal adverse final FINRA actions to the SEC for review.  15 U.S.C. § 78s(d)(1), (2).  An appeal to the SEC

---

² FINRA Rules are not published in the Code of Federal Regulations but can be found at http://finra.complinet.com/en/display/display.html?rbid=2403&element_id=607.

5

"shall stay the effectiveness of any sanction, other than a bar or an expulsion." FINRA Rule 9370(a). The SEC, upon its own motion or by appeal from the member, "shall" then review FINRA's decision to ensure any rule allegedly violated was "applied in a manner[] consistent with the purposes" of the Exchange Act. 15 U.S.C. § 78s(e)(1)(A). The SEC can affirm, modify, or set aside FINRA's decision or remand for further proceedings. Id. § 78s(e)(1). If, after SEC review, a party remains "aggrieved," it "may obtain review" of the SEC's final order in the appropriate court of appeals. Id. § 78y(a)(1); see also Bennett v. SEC, No. 15-2584, slip op. at 3 (argued Oct. 28, 2016). With this judicial-review scheme in mind, we turn to the FINRA proceeding at issue here.

C.

On May 15, 2015, FINRA initiated a disciplinary proceeding against Scottsdale, alleging it had liquidated over 74 million shares of unregistered stocks in violation of Section 5 of the Securities Act, 15 U.S.C. § 77e(a). According to FINRA's complaint, Scottsdale's violation of the Securities Act also violated FINRA Rule 2010, which requires members to "observe high standards of commercial honor and just and equitable principles of trade." FINRA Rule 2010. Scottsdale filed a motion for summary disposition with the FINRA Hearing Panel, alleging, inter alia, that FINRA did not have jurisdiction to

6

bring the proceeding because it can only charge violations of the Exchange Act, not the Securities Act. The Hearing Panel denied the motion and scheduled a hearing for June 13–24, 2016.

Scottsdale then filed for declaratory and injunctive relief in the United States District Court for the District of Maryland, alleging, as it had before FINRA, that the disciplinary proceeding was <u>ultra vires</u>. FINRA filed a motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim.

On April 26, 2016, the district court held a hearing on the motion to dismiss. Assuming without deciding that Scottsdale had a cause of action under the Exchange Act, the district court nonetheless found it "clear" that "Congress intended to channel judicial review through th[e] comprehensive scheme" found in 15 U.S.C. §§ 78s and 78y. J.A. 176. "The question of whether the . . . FINRA rules that are involved here are within their authority and appropriate," the district court reasoned, is "clearly within" the review scheme outlined in the Exchange Act. J.A. 176–77. The district court relied on <u>Thunder Basin Coal Company v. Reich</u>, 510 U.S. 200 (1994), to dismiss the complaint, finding it "beyond the subject matter jurisdiction" of the court to consider a challenge "to the ongoing disciplinary proceeding." J.A. 178. Scottsdale appeals.

7

II.

A.

Scottsdale argues FINRA exceeded its authority by charging it with violations of the Securities Act and, therefore, the proceeding is ultra vires. FINRA counters that, as a threshold matter, Scottsdale must first press its claim through the administrative process and then seek review in the appropriate court of appeals. We review a district court's dismissal of a complaint for lack of subject-matter jurisdiction de novo. Nat'l Taxpayers Union v. U.S. Soc. Sec. Admin., 376 F.3d 239, 241 (4th Cir. 2004).

B.

Article III courts are "courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "Congress may, in its discretion, grant, withhold, or otherwise limit the jurisdiction of the lower federal courts." Wade v. Blue, 369 F.3d 407, 410 (4th Cir. 2004). We are bound by those limitations unless they offend the Constitution. See Bowles v. Russell, 551 U.S. 205, 212 (2007).

Notwithstanding the exclusive grant of jurisdiction to the courts of appeals in the Exchange Act, Scottsdale argues the district court had jurisdiction to consider its claim because FINRA lacked authority to initiate the disciplinary proceeding.

8

Scottsdale believes it need not, as it describes it, exhaust administrative remedies before seeking review in this court for two reasons.[3] First, Scottsdale claims the limited exception to jurisdiction-stripping recognized in Leedom v. Kyne, 358 U.S. 184 (1958), applies because FINRA is allegedly acting outside of its statutory authority. Alternatively, Scottsdale asserts its claim is not of the type Congress intended to remove from district court jurisdiction under the framework articulated in Thunder Basin. We discuss each claim in turn.

C.

1.

Scottsdale first argues the district court had jurisdiction under Leedom. Leedom involved a challenge to the National Labor Relations Board's ("NLRB") decision--in direct violation of the National Labor Relations Act ("NLRA")--to include both

---

[3] Scottsdale incorrectly frames the issue as one of exhaustion. We agree with the district court and the SEC as amicus that the district court is not the proper forum for Scottsdale's claim. Exhaustion is a temporal concern--the inquiry is when, not whether, a plaintiff may bring a claim. Requiring a plaintiff to first exhaust administrative remedies avoids the "premature interruption of the administrative process." McKart v. United States, 395 U.S. 185, 193 (1969). However, when Congress creates a statutory scheme that unambiguously vests judicial review of agency action in the courts of appeals, "those procedures 'are to be exclusive'" unless a plaintiff can show its claims are not of the type Congress intended to limit. Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 489 (2010) (quoting Whitney Nat. Bank in Jefferson Parish v. Bank of New Orleans & Trust Co., 379 U.S. 411, 420 (1965)).

9

professional and nonprofessional employees in a collective bargaining unit. 358 U.S. at 184–86. Before the Court, the NLRB conceded that it "had acted in excess of its powers and had thereby worked injury to the statutory rights" of the petitioners. Id. at 187. Even though the NLRA precluded district court jurisdiction of such an action, the Supreme Court held that the district court had jurisdiction because the NLRB had acted "in excess of its delegated powers and contrary to a specific prohibition in the Act."[4] Id. at 188 (emphasis added). In such a case, the Court reasoned, the suit is not to "review" as the term is used in the governing statute because the agency has acted without authority. Id.

Scottsdale contends that, similar to the action in Leedom, FINRA has exceeded its delegated authority, thereby removing the statutory bar to jurisdiction. However, such a reading extends Leedom beyond its "painstakingly delineated procedural boundaries." Boire v. Greyhound Corp., 376 U.S. 473, 481 (1964). Leedom relied on the presumption that when "Congress

---

[4] The NLRA provision at issue stated "the Board shall not (1) decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit." Leedom, 358 U.S. at 185. The NLRB included professional and nonprofessional employees in the unit and refused to hold a vote to allow professional employees to agree to inclusion. Id. at 186.

10

has given a 'right' . . . it must be held that it intended that right to be enforced" and that intention supersedes congressional jurisdiction-stripping provisions. 358 U.S. at 191. If the district court in Leedom did not exercise jurisdiction, petitioners would have "no other means, within their control, . . . to protect and enforce" a congressionally given right. Id. at 190. By contrast, Scottsdale does not identify a congressionally authorized right of action.[5]

Leedom is also factually distinguishable in that FINRA does not concede that it acted in excess of its statutory authority. Before the district court and on appeal, FINRA maintains it has authority to sanction members for violations of all federal securities laws, including the Securities Act. Finally, and crucial to the decision in Leedom, Scottsdale has ultimate recourse to the federal courts through 15 U.S.C. § 78y. Leedom is a narrow exception, used only when "but for the general jurisdiction of the federal courts there would be no remedy" for a congressionally authorized private right of action. Id.[6]

---

[5] We share the district court's doubt that Scottsdale has identified a private right of action to bring this claim. See Alexander v. Sandoval, 532 U.S. 275, 293 (2001).

[6] Further, the Supreme Court foreclosed Scottsdale's expansive interpretation of Leedom in Board of Governors of the Federal Reserve System v. MCorp Financial, Inc., 502 U.S. 32 (1991). In MCorp, the Fifth Circuit exercised jurisdiction over a claim despite a jurisdiction-stripping provision because it
(Continued)

11

2.

In addition to being procedurally and factually dissimilar to Leedom, Scottsdale cannot satisfy this court's two-pronged test to invoke the Leedom exception. To do so, a petitioner must make (1) a "strong and clear demonstration that a clear, specific and mandatory [statutory provision] has been violated," Long Term Care Partners, LLC v. United States, 516 F.3d 225, 234 (4th Cir. 2008) (quoting Newport News Shipbuilding & Dry Dock Co. v. NLRB, 633 F.2d 1079, 1081 (4th Cir. 1980)), and (2) "the absence of federal court jurisdiction over an agency action 'would wholly deprive' the aggrieved party 'of a meaningful and adequate means of vindicating its statutory rights.'" Id. at 233 (quoting Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 43 (1991)). After considering these criteria, we conclude that the Leedom exception does not apply.

First, FINRA has not violated a clear statutory prohibition. "When a party invokes Leedom as the basis for this court's jurisdiction, we conduct a 'cursory review of the

---

read Leedom to "authoriz[e] judicial review of any agency action that is alleged to have exceeded the agency's statutory authority." Id. at 43. The Supreme Court reversed, rejecting such a broad reading of Leedom because the statute at issue in MCorp--like the Exchange Act--provided "meaningful and adequate opportunity for judicial review." Id. The Court further clarified that the lack of judicial review--and not the agency's alleged actions--was the "central" factor in Leedom. Id.

12

merits' to determine if the agency acted 'clearly beyond the boundaries of its authority.'" Id. at 234 (quoting Champion Int'l Corp. v. EPA, 850 F.2d 182, 186 (4th Cir. 1988)). So long as the agency's interpretation of the statute is "'plausible' . . . we will find that it did not 'violate a clear statutory mandate.'" Id. (quoting Hanauer v. Reich, 82 F.3d 1304, 1311 (4th Cir. 1996)).[7]

Scottsdale points to numerous references in the Exchange Act that limit the authority of FINRA to discipline members for violations of "this chapter," that is, the Exchange Act. See, e.g., 15 U.S.C. § 78o-3(b)(2). Scottsdale argues these provisions delimit FINRA's authority to charge only violations of the Exchange Act. FINRA counters that the Exchange Act also authorizes it to enact its own rules and enforce compliance. See id. ("Such association is so organized . . . to enforce compliance . . . with the provisions of this chapter . . . and

---

[7] Although we style our application of Leedom in terms of agency interpretation, FINRA is not an agency. The SEC participated in this litigation as amicus but declined to take a position on the merits since Scottsdale raises the same claim in the ongoing FINRA proceedings, which the SEC will likely review. Amicus Br. at 4. However, the SEC has implicitly adopted FINRA's interpretation of its authority to sanction members for violations of the Securities Act. See, e.g., In re ACAP Fin., Inc., Exchange Act Release No. 70046, 2013 WL 3864512, at *7 (July 26, 2013) (affirming FINRA's decision to charge a member who sold unregistered securities in violation of the Securities Act with violating NASD Rule 2110, the predecessor rule to FINRA Rule 2010).

13

the rules of the association."). According to FINRA, if Congress did not intend for it to have authority to enact rules for securities violations beyond the Exchange Act, it would be unnecessary for the statute to also mention both the rules of the statute and the association (i.e., FINRA). FINRA further asserts that grounding violations of the Securities Act in its Rule 2010 is an exercise of its statutory authority to "promote just and equitable principles of trade [and] foster cooperation and coordination with persons engaged in regulating, clearing, settling . . . and facilitating transactions in securities." Id. § 78o-3(b)(6). We find this interpretation plausible. Long Term Care, 516 F.3d at 235. Moreover, the Exchange Act provisions that Scottsdale cites do not clearly proscribe FINRA's actions in the same way that the NLRB acted contrary to a direct prohibition of the NLRA in Leedom. Therefore, we conclude FINRA has not violated a clear statutory mandate.

Scottsdale also cannot satisfy the second criterion because the Exchange Act provides Scottsdale a "meaningful and adequate opportunity for judicial review" of its claims. MCorp, 502 U.S. at 43. Congress established a comprehensive system whereby Scottsdale can appeal an adverse FINRA decision to the SEC and a final adverse SEC decision in the appropriate court of appeals. 15 U.S.C. §§ 78s, 78y; see also Bennett, No. 15-2584, slip op. at 20–26.

14

Because FINRA's interpretation of its authority to charge its members with violations of the Securities Act is plausible and the Exchange Act provides for meaningful judicial review, the Leedom exception does not apply. In so holding, we have not decided the "ultimate merits," Long Term Care, 516 F.3d at 234–35, of FINRA's position, but simply conclude that Scottsdale's claim does not fall within the "narrow limits" of Leedom. Boire, 376 U.S. at 481.

D.

Scottsdale next argues that, even if Leedom does not apply, and notwithstanding the comprehensive judicial-review provisions, Congress did not intend to strip district courts of jurisdiction over this particular type of claim. When deciding whether a particular claim falls outside of the congressionally enacted review scheme, we employ the two-step analysis outlined in Thunder Basin. First, we ask whether Congress's intent to divest district courts of jurisdiction is "fairly discernible" from the statute's text, structure, and purpose. Thunder Basin, 510 U.S. at 207 (quoting Block v. Cmty. Nutrition Inst., 467 U.S. 340, 351 (1984); see also Bennett, No. 15-2584, slip op. at 19). Neither party disputes that it is "fairly discernible" that Congress intended to preclude district court jurisdiction. See Appellant's Br. at 27.

15

We therefore turn to step two of Thunder Basin and ask whether Scottsdale's "claims are of the type Congress intended to be reviewed within this statutory structure." 510 U.S. at 212. This claim-specific analysis considers three factors: (1) whether "adjudication of petitioner's claims through the statutory-review provisions will violate due process by depriving petitioner of meaningful judicial review"; (2) whether the claims are "wholly collateral" to the statute's review provisions; and (3) whether the claims are "outside of the agency's expertise." Id. at 212–14. Applying each of these factors to Scottsdale's claim, we agree with the district court that the Exchange Act's "administrative structure was intended to preclude district court jurisdiction over petitioner's claims and that those claims can be meaningfully reviewed through that structure consistent with due process." Id. at 218.

First, Scottsdale can obtain meaningful judicial review. The Exchange Act sets out a comprehensive review scheme through which Scottsdale could have ultimate judicial review in this court. 15 U.S.C. § 78y. Scottsdale contends post-proceeding judicial review is inadequate for two reasons: (1) forcing it to submit to an allegedly unauthorized proceeding before seeking Article III judicial review will cause irreparable harm; and (2) there will be no appeal to this court if it prevails. Neither contention has merit.

16

Scottsdale's desire to "prevent the per se irreparable harm of being forced to submit to the orders of an organization acting beyond the limits of its statutory authority," Appellant's Br. at 28-29, conflicts with the long-standing principle that "the expense and annoyance of litigation is 'part of the social burden of living under government.'" Bennett, slip op. at 22 (quoting FTC v. Standard Oil of Cal., 449 U.S. 232, 244 (1980)). The same is true of Scottsdale's allegations of potential reputational harm. See Sampson v. Murray, 415 U.S. 61, 89 (1974).

Scottsdale's concern that it will be unable to press its claims if it prevails before FINRA also lacks merit. Federal regulations "specifically provide[]" mechanisms by which Scottsdale could challenge FINRA Rule 2010 outside of the disciplinary proceeding. Standard Oil, 449 U.S. at 245. Scottsdale could petition the SEC--apart from any disciplinary action--to amend or repeal FINRA Rule 2010. See 17 C.F.R. § 201.192. The SEC's decision on FINRA's rule would be final agency action of which Scottsdale could then seek review in the appropriate court of appeals. 15 U.S.C. § 78y. And Scottsdale's position is wholly unlike that of the petitioners in Free Enterprise: Scottsdale is not required to "'challenge a Board rule at random' or 'bet the farm' by voluntarily incurring a sanction in order to trigger § 78y's mechanism for

17

Appeal: 16-1497    Doc: 44    Filed: 12/20/2016    Pg: 18 of 20
Case 8:16-cv-00860-DKC   Document 29-1   Filed 12/20/16   Page 18 of 20

administrative and judicial review." Bennett, No. 15-2584, slip op. at 10 (quoting Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 490 (2010)).

Turning to the second Thunder Basin factor, Scottsdale's claims are not wholly collateral to the Exchange Act. In Bennett, we explained that a claim is not wholly collateral when it is "'the vehicle by which [petitioners] seek to reverse' agency action." Bennett, No. 15-2584, slip op. at 26 (quoting Elgin v. Dep't of Treasury, 132 S. Ct. 2126, 2139 (2012)). Scottsdale challenges "FINRA's statutory authority to prosecute disciplinary actions premised on alleged violations of the Securities Act." Appellant's Br. at 30. As Scottsdale's claim arises out of the proceeding against it and provides an affirmative defense, it is not wholly collateral to the statute.

Finally, Congress has expressly determined the SEC's expertise is relevant to the claim at issue here. Scottsdale argues its claim, like the petitioners' claim in Free Enterprise, is outside of the SEC's "competence and expertise." 561 U.S. at 491. In Free Enterprise, the Supreme Court permitted a petitioner to bring a pre-enforcement constitutional challenge to the existence of the Public Company Accounting Oversight Board despite Congress's intent to channel claims through the statutory scheme laid out in § 78y. Id. at 490. The Free Enterprise Court held that agency expertise was not

18

required because the claims did "not require 'technical considerations of [agency] policy,'" id. at 491 (quoting Johnson v. Robinson, 415 U.S. 361, 373 (1974)), but were "standard questions of administrative law, which the courts are at no disadvantage in answering." Id.

Scottsdale's argument that this claim lies outside of the agency's expertise is belied by the text of the Exchange Act. Section 19 of the Exchange Act lays out a comprehensive oversight scheme whereby Congress gives the SEC the authority to supervise FINRA's rules, including approving or modifying FINRA rules in any way the agency deems appropriate or necessary. 15 U.S.C. § 78s. As part of the SEC's oversight of FINRA, Congress vested authority in the SEC to review "a final disciplinary sanction imposed by" FINRA and determine whether its rules "were applied in a manner[] consistent with the purposes" of the Exchange Act. 15 U.S.C. § 78s(e)(1). Thus, Congress unambiguously channeled Scottsdale's claim--whether FINRA has exceeded its authority in charging Scottsdale--to the SEC for determination in the first instance. Considering all three Thunder Basin factors, we conclude that the district court lacked jurisdiction over Scottsdale's claim.

19

III.

When Congress provides a comprehensive review scheme our judicial review must comport with those statutory provisions unless doing so would violate the Constitution. Congress, through the Exchange Act, intended to channel objections to FINRA's authority through the agency and the courts of appeals. In so doing, it is clear Congress sought to preclude federal district-court jurisdiction. Because Scottsdale can obtain meaningful judicial review of its claim in this court following the appeal process outlined in the Exchange Act, we hold its challenge to FINRA's authority is the type of claim Congress intended to be reviewed within the statutory scheme. Accordingly, the district court properly dismissed for lack of subject-matter jurisdiction. For these reasons, the judgment of the district court is

AFFIRMED.